FILED
2014 Mar-21 PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# GOVERNMENT EXHIBIT A

# DECLARATION OF DAVID ICOVE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ACADIA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | CASE: 5:13-CV-00895-CLS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

EXPERT OPINION DISCLOSURE OF DAVID J. ICOVE, Ph.D., P.E., SUBMITTED
ON BEHALF OF THE DEFENDANT, THE UNITED STATES OF AMERICA

March 19, 2014

TABLE OF CONTENTS

I. EXECUTIVE SUMMARY ........................................................................................ 3
II. DISCLOSURE .......................................................................................................... 5
III. PROFESSIONAL BACKGROUND AND QUALIFICATIONS .......................... 8
IV. APPLICABLE FIRE INVESTIGATION METHODOLOGY ............................. 10
    A. *NFPA 921* -- The Standard for Fire and Explosion Investigation ................... 11
    B. *NFPA 1033* – Professional Qualifications for Fire Investigator .................... 13
V. THE FIRE INVESTIGATION ............................................................................... 16
    A. Introduction ..................................................................................................... 16
    B. Timeline of Events .......................................................................................... 19
    C. The City of Huntsville Fire Investigation ....................................................... 31
    D. The EFI Global, Inc. Fire Investigation .......................................................... 32
    E. The February 20, 2014 Inspection .................................................................. 35

VI. CASE ANALYSIS AND PROFESSIONAL OPINIONS ....................................................... 38
   A.      Sufficiency of Facts or Data............................................................................................ 38
        1.      Failure to Properly Collect, Interpret, and Preserve Fire Debris Evidence ................. 40
        2.      Failure to Notify Interested Parties ............................................................................. 46
        3.      Allowing for Spoliation of Evidence .......................................................................... 49
        4.      Liability for Spoliation of Evidence............................................................................ 54
        5.      Impact of the Untimely Destruction of the Fire Scene................................................ 56
   B.      Use of Reliable Principles and Methods by the Investigator ............................................ 59
        1.      Lack of Emphasis on Witness Interviews .................................................................. 60
        2.      Incorrect Interpretations of Fire Patterns and Scene Evidence .................................. 62
        3.      Improper Application of Fire Dynamics .................................................................... 64
        4.      Failure to Use Arc Mapping........................................................................................ 70
   C.      Reliably Applying the Principles and Methods to the Facts of the Case ........................ 72
VII.  Conclusion................................................................................................................................ 76
VIII. Certification ............................................................................................................................ 77
IX.   Verification ............................................................................................................................. 77
APPENDIX A – LIST OF DOCUMENTS, INFORMATION, AND DATA REVIEWED ......... 79
APPENDIX B – EXPERT QUALIFICATIONS AND PUBLICATIONS ................................... 84
APPENDIX C – EXPERT WITNESS TESTIMONY—PAST FOUR YEARS .......................... 93
APPENDIX D – EXHIBITS.......................................................................................................... 95

I.      **EXECUTIVE SUMMARY**

Country Inn and Suites was owned and operated by Yedla Management and Hospitality Enterprises of Huntsville, Inc. ("Yedla") and is located at 4880 University Drive in Huntsville, Alabama 35816. The motel complex consists of three separate buildings containing approximately 170 individual guest rooms. Among other lodging services, Yedla provided housing for federal employees on temporary assignment at the nearby Redstone Arsenal in Huntsville, Alabama[1] (Plaintiff's Original Complaint, pp. 3-4).

On September 22, 2010 at approximately 10:40 p.m., a fire occurred in Building 2 of the motel. The Huntsville Fire Department responded and extinguished the fire. Subsequent investigations by the Huntsville Fire Department and EFI Global, Inc. ("EFI"), a private forensic investigation firm, both concluded that the fire occurred on the second floor balcony of Room 2207, and asserted the cause of the fire was careless use of smoking materials by the occupant of that room.

The occupant of Room 2207 was a federal employee, who admitted to an investigator from the Huntsville Fire Department that he had smoked several cigarettes on the balcony one or two days prior to the fire, but not on the date of the fire. The employee maintained he always extinguished his cigarettes in a water-filled Styrofoam cup.

---

[1] Plaintiff's Original Complaint, Acadia Insurance Co., As Subrogee of Yedla Management Co., Inc. & Hospitality Enterprises of Huntsville, Inc., d/b/a Country Inn & Suites, Plaintiff, v. United States of America and Michael Siegling, Defendants, United States District Court of the Northern District of Alabama, Huntsville Division, Case Number 5:13-cv-00895-CLS, Document 1, Filed May 10, 2013.

On August 1, 2012, almost two years after the fire, legal counsel for the Plaintiff, Acadia Insurance Company ("Acadia") as subrogee of Yedla, filed a damages claim[2] for $1,119,536.93 against the United States Government, alleging the federal employee who occupied Room 2207 that evening negligently caused the fire. Subsequently, on May 10, 2013 attorneys for Acadia followed up their claim by filing a lawsuit[3] under the Federal Tort Claims Act against both the United States of America and the employee individually, seeking damages for the alleged negligence of the employee in causing the fire. Since the filing of the lawsuit, the federal employee has been dismissed as a Defendant and the matter is now pending only as to the claims against the United States of America ("United States").

On October 25, 2013, the Defendant United States retained the services of Dr. David J. Icove, a court-recognized expert in the field of fire investigation and a Registered Professional Engineer licensed to practice in the State of Alabama. His professional services were retained to conduct a technical peer review of this case, provide a forensic engineering analysis of the fire sequence, and assess the validity and accuracy of the experts' reports, opinions, and methodology under the professional standards of the applicable scientific field.

Dr. Icove's analysis and review ultimately concluded that the investigations conducted by the Huntsville Fire Department and EFI Global both failed to meet the minimum accepted

---

[2] Standard Form 95, Claim for Damage, Injury, or Death, submitted to the Federal Bureau of Investigation, 935 Pennsylvania Avenue, NW Washington, DC, by Acadia Insurance Company a/s/o Yedla Management Co. c/o McCathern Mooty Grinke, LLP, Paul A. Grinke, 3710 Rawlins Street, Suite 1600, Dallas, Texas 75219, Legal Counsel for Claimant, signed by Paul A. Grinke on August 1, 2012 (YEDLA000919-000929).

[3] Acadia Insurance Company, as Subrogee of Yedla Management Company, Inc. & Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, Plaintiff, v. United States of America and Michael Siegling, Defendants, United States District Court of the Northern District of Alabama, Huntsville Division, Case Number 5:13-cv-00895-CLS, filed May 13, 2013.

scientific standards in the field of fire investigation, resulting in improper, invalid, and unreliable opinions.

Furthermore, Dr. Icove uncovered significant issues regarding both investigations, including but not limited to the fact that they failed to pursue critical data through available witnesses; failed to properly document their observations and conclusions; failed to collect relevant evidence and thereby committed spoliation; failed to identify, consider and test alternative hypotheses for the cause of the fire, resulting in "expectation bias"; and otherwise failed to employ a scientifically valid and reliable forensic investigation methodology whose results and conclusions can be considered scientifically valid and reliable. These actions, among others, undermine the conclusions and opinions of the Plaintiff's experts and place the Defendant United States at a significant disadvantage in terms of its ability to conduct an independent forensic investigation and establish a proper defense in this case. These actions were contrary to the generally accepted professional standards of forensic fire scene investigation and reconstruction required of fire investigators.

## II.   DISCLOSURE

This report discloses the expert opinions of David J. Icove, Ph.D., P.E., CFEI, as submitted to Assistant United States Attorney Jack B. Hood, United States Attorney's Office, 1801 Fourth Avenue North in Birmingham, Alabama 35203-2101. Retained on October 25, 2013 by the Defendant US, his role as an expert witness in this case is to provide a forensic engineering analysis of the fire sequence, and to peer review the validity and accuracy of the other experts' reports and opinions. Dr. Icove visited the site of the fire incident on February 20, 2014 before completing and submitting this formal expert report under the Federal Rules of Civil Procedure, Rule 26(a)(2)(B).

This report provides a forensic engineering and investigative analysis of the origin, cause, development, and responsibility for the fire on September 22, 2010 at the Country Inn and Suites located at 4880 University Drive in Huntsville, Alabama 35816 insured by Plaintiff/Subrogee Acadia Insurance Company. This will also assess the reports, materials, evidence and professional conclusions developed by the Huntsville Fire Department and EFI Global to establish whether the methodologies of their fire investigations and their professional opinions and conclusions resulting from those investigations (upon which the Plaintiff's claims in this action are based) are scientifically valid and reliable, and complied with the applicable professional standards of the forensic fire investigation field.

These standards include the National Fire Protection Association (NFPA) "*Guide for Fire and Explosion Investigations*" (*NFPA 921*[4]), the "*Standard for Professional Qualifications for Fire Investigator*" (*NFPA 1033*[5]), and other recognized and generally accepted standards and authoritative sources in the field.

Specifically, this report: (1) performed technical peer reviews of written reports of the Plaintiff's expert witnesses; (2) determined whether the expert opinions in those reports adequately identify, document, validate and verify their findings as to the origin, cause, and effects of this fire; and (3) assessed whether the investigations conducted by the Plaintiff's expert witnesses establish relevance and reliability in their methodology, the application of their methodology to the facts and data, and the conclusions derived from their investigations.

---

[4] NFPA 921. (2014 Edition). *NFPA 921 – Guide for Fire and Explosion Investigations*. Quincy, MA: National Fire Protection Association.

[5] NFPA 1033 (2014 Edition), *NFPA 1033 – Professional Qualifications for Fire Investigator*, National Fire Protection Association, Quincy, MA.

The analysis performed and the opinions expressed herein are established to a reasonable degree of scientific and engineering certainty, conform to the generally accepted principles of forensic fire scene reconstruction and investigation, and are based upon the relevant facts, evidence and data available as of the date of this report. The recognized principles and methods of forensic fire scene investigation and the standards of professional care in conducting forensic fire investigations cited within this report serve as the basis for the opinions rendered in this report.

This forensic engineering analysis is based upon the referenced empirical data and facts established in the investigation of this fire at this time. This analysis and report may be amended or revised should additional information become known in the form of first-hand observations, further analysis, facts presented to experts prior to trial through depositions or other disclosures, or facts established in court proceedings that have a bearing on this analysis. Such information may affect the opinions rendered in this analysis and in the event such new information becomes known, this report may be revised accordingly. In the absence of such new or additional information, the expert opinions and conclusions expressed herein stand as presented.

Appendix A lists the documents, information, and data reviewed in the preparation of this report. Appendix B lists my expert qualifications and publications for the preceding ten years. Appendix C lists my expert testimony in other cases for the preceding four (4) years.

Also included after the appendices of this report in the Exhibit Section are the pertinent discovery documents this expert reviewed and formed the underlying bases for opinions in this case. These documents are referenced by the sequential YEDLA and other numbered markings that appear at the bottom of the pages and are referenced in this report.

Compensation for consulting in this matter has been billed at the rate of $200.00 per hour.

### III. PROFESSIONAL BACKGROUND AND QUALIFICATIONS

I am a court-recognized expert witness in the fields of forensic fire engineering and fire scene analysis, fire origin and cause investigation, and forensic fire scene reconstruction. My formal education includes a B.S. degree in Fire Protection Engineering from the University of Maryland, along with B.S. and M.S. degrees in Electrical Engineering and a Ph.D. in Engineering Science and Mechanics from the University of Tennessee.

I have been recognized by my peers as a Fellow in the Society of Fire Protection Engineers. I am a Certified Fire and Explosion Investigator (CFEI) by the National Association of Fire Investigators (NAFI). My background includes over 40 years of experience in the investigation of fire and explosion incidents, including over 27 years of public service as a full-time law enforcement investigator at the federal, state, and local levels. I am the Principal of Icove & Associates, LLC, a consulting engineering practice in Knoxville, Tennessee. As a registered Professional Engineer (P.E.) in the field of Fire Protection Engineering, I am licensed to practice in numerous states, including the State of Alabama.

I am a faculty member at three universities. I presently serve as a Research Professor in the College of Engineering at the University of Tennessee at its Knoxville, Tennessee main campus. Additionally, I teach graduate courses as an Adjunct Faculty member for the Professional Master of Science program in the Department of Fire Protection Engineering at the University of Maryland in College Park, Maryland. I am also an Adjunct Faculty member at the University of New Haven in the Henry C. Lee College of Criminal Justice and Forensic Sciences in New Haven, Connecticut.

Since 1992, I have participated and served as a Principal Member of the National Fire Protection Association's *Technical Committee on Fire and Explosion Investigations*, which is responsible for the publication of *NFPA 921*, widely known and universally accepted in the forensic fire investigation and reconstruction field. The role of this committee includes providing peer-reviewed standards of professional conduct for undertaking scientific fire and explosion investigations and for rendering expert opinions as to the origin, cause, development, responsibility, and prevention of such incidents.

I am a frequent lecturer and instructor on the methodologies, protocols, and scientific standards for investigating the origin, cause, and development of fires and explosions. I am the author and co-author of several leading peer-reviewed textbooks, textbook chapters, journal articles, and three expert treatises published in the field of forensic fire investigation.[6,7,8]

I serve on several national and international technical standards-making committees including the ASTM International Committee E05 on Fire Standards, Committee E30 on Forensic Sciences, and Committee E58 on Forensic Engineering. I also serve as a peer-reviewer for several leading academic journals in fire investigation, fire protection engineering, and field archaeology.

I am familiar with the legal requirements for the foundation of expert testimony and the standards of care and professional conduct by experts in this field. I have previously been qualified and have provided testimony as an expert witness in federal, state, and local court proceedings in

---

[6] DeHaan, J. D., & Icove, D. J. 2012. *Kirk's Fire Investigation* (7th Edition). Upper Saddle River, NJ: Pearson-Prentice Hall.

[7] Icove, D. J., DeHaan, J. D., & Haynes, G. A. 2013. *Forensic Fire Scene Reconstruction* (3rd Edition). Upper Saddle River, N.J.: Pearson/Prentice Hall.

[8] Icove, D. J., Wherry, V. B., & Schroeder, J. D. 1998. *Combating Arson-for-Profit: Advanced Techniques for Investigators* (Second Edition). Columbus, OH: Battelle Press.

both civil and criminal matters. My expert testimony also includes three appearances before United States Congressional Committees developing legislative initiatives on the crimes of arson and bombing.

IV.     APPLICABLE FIRE INVESTIGATION METHODOLOGY

Professions relying upon forensic-driven interpretations and expert conclusions require as their foundation accepted science-based and peer-reviewed methodologies. Over time, professional standards in the forensic sciences evolve to the point where the experts in their respective fields develop job performance requirements founded upon science and engineering-based methodologies. Examples in the forensic science and engineering community include the international standards-making committees of ASTM International's Committee E05 on Fire Standards, Committee E30 on Forensic Sciences, and Committee E58 on Forensic Engineering.

The leading organization involved in developing fire protection engineering standards nationally and internationally is the NFPA's Standards Council, which meets periodically throughout the year to review and approve standards developed by international committees of experts in a wide range of subjects. For example, in the field of fire[9] and explosion[10] investigations[11], two prevailing peer-reviewed standards exist: *NFPA 921* and *NFPA 1033*, which

---

[9] NFPA 921, 2014 Edition, Ch. 3.3.62, defines a *fire* as "A rapid oxidation process, which is a chemical reaction resulting in the evolution of light and heat in varying intensities."

[10] NFPA 921, 2014 Edition, Ch. 3.3.53, defines an *explosion* as "The sudden conversion of potential energy (chemical or mechanical) into kinetic energy with the production and release of gases under pressure, or the release of gas under pressure. These high-pressure gases then do mechanical work such as moving, changing, or shattering nearby materials.

[11] NFPA 921, 2014 Edition, Ch. 3.3.67, defines a *fire investigation* as "The process of determining the origin, cause, and development of a fire or explosion."

were developed, written, and peer-reviewed by a committee of international experts and approved by the NFPA Standards Council. *NFPA 921* and *NFPA 1033* address the methodology for conducting fire and explosion investigations. Both documents serve as the universally accepted and recognized professional standard in the field.

A.    *NFPA 921* -- **The Standard for Fire and Explosion Investigation**

The generally recognized scientific methods, standards and procedures for investigating all aspects of all types of fires are found in the 2014 Edition of *NFPA 921*, which has been published by the NFPA since its first edition in 1992. Federal investigation guides including the National Institute of Justice's **Fire and Arson, A Guide to Public Safety Personnel**[12] cite *NFPA 921* as the definitive source for the appropriate scientific methodologies to be used in forensic fire investigations and note it serves as *"a benchmark for the training and expertise of everyone who purports to be an expert in the origin and cause determination of fires."*

The methodology and opinions expressed in this expert report rely primarily upon the 2014 edition of *NFPA 921*, approved and issued by the NFPA Standards Council on November 12, 2013 with an effective date of December 2, 2013.

The primary purpose of *NFPA 921* is to assist individuals who are charged with the responsibility of investigating and analyzing fire and explosion incidents, and rendering opinions on the origin, cause, responsibility or prevention of such incidents (NFPA 921, 2014 Edition, Ch. 1.1). Its purpose is to establish guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents. It also maintains a comprehensive set of

---

[12] NIJ. 2000. Fire and Arson Scene Evidence: A Guide for Public Safety Personnel (Office of Justice Programs, Trans.) Technical Working Group on Fire/Arson Scene Investigation (TWGFASI) (pp. 48). Washington, DC: National Institute of Justice.

definitions for the terms commonly used by fire and explosion investigators, fire protection engineers, researchers, and scientists.

Each chapter and indeed each sentence in *NFPA 921* was prepared and peer reviewed by a technical committee of NFPA experts prior to its adoption. After its approval by the NFPA's Standards Council, it is then forwarded for approval by the American National Standards Institute (ANSI). The goals of ANSI include promoting and safeguarding the integrity of voluntary consensus standards in the U.S.

*NFPA 921* covers virtually all aspects of fire investigation. It includes chapters relevant to this case on Basic Methodologies (Ch. 4), Basic Fire Science (Ch.5) Fire Patterns (Ch. 6), Building Systems (Ch. 7), Fire Protection Systems (Ch.8), Electricity and Fire (Ch. 9), Building Fuel Gas Systems (Ch. 10), Fire-Related Human Behavior (Ch. 11), Legal Considerations (Ch. 12), Safety (Ch. 13), Sources of Information (Ch. 14), Planning the Investigation (Ch. 15), Documentation of the Investigation (Ch. 16), Physical Evidence (Ch. 17), Origin Information (Ch. 18), Cause Information (Ch. 16), Fire Cause Determination (Ch.19), Classification of the Fire Cause (Ch. 20), Analyzing the Incident for Cause and Responsibility (Ch. 21), Failure Analysis and Analytical Tools (Ch.22). Explosions (Ch. 23), Incendiary Fires (Ch. 24), Fire and Explosion Deaths and Injuries (Ch. 25), Appliances (Ch. 16), Motor Vehicle Fires (Ch. 27), Wildland Investigations (Ch. 28), Management of Complex Investigations (Ch. 29), and Marine Fire Investigations (Ch. 30). Although all of these chapters contain information pertinent to this case, the more important items relate to the use of the Scientific Method, basic fire science, fire patterns, origin and cause determination, and legal considerations

The underpinnings of forensic fire investigation/fire scene reconstruction are the use and application of relevant scientific principles and research in conducting a systematic examination of the relevant facts that gave rise to the incident. The *Scientific Method*,[13] which is the cornerstone principle that embraces sound fire protection engineering principles combined with approved methods of peer-reviewed research and testing, is the universal approach for conducting fire scene investigations, fire cause analysis, and fire scene reconstruction.

B.   *NFPA 1033* – **Professional Qualifications for Fire Investigator**

The methodology and opinions expressed in this report rely upon both *NFPA 921* and its companion standard, the 2014 Edition of *NFPA 1033*. Approved by the Standards Council on May 28, 2013 with an effective date of June 17, 2013, and superseding all previous editions, *NFPA 1033* specifically sets forth the minimum job performance requirements[14] to ensure compliance with all scientific standards in collecting and assessing evidence, determining responsibility, and rendering conclusions as to a fire's origin, cause, and development.

Tables 1 and 2 below lists the primary responsibilities and essential requirements specified in *NFPA 1033* for fire investigators in both the public and private sectors. These enumerated requirements are retroactively applicable to all investigators involved in the September 22, 2010 fire, as well as for future investigative activities conducted in this case.

---

[13] Per NFPA 921, 2014 Edition, Ch. **3.3.149** states the **Scientific Method** is "The systematic pursuit of knowledge involving the recognition and definition of a problem; the collection of data through observation and experimentation; analysis of the data; the formulation, evaluation and testing of a hypothesis; and, when possible, the selection of a final hypothesis.

[14] Per *NFPA 1033*, 2014 Edition, Ch. 1.2.2 states that "***Job performance requirements*** for each duty are the tasks an individual must be able to perform in order to successfully carry out that duty; however, they are not intended to measure a level of knowledge. Together, the duties and job performance requirements define the parameters of the job of fire investigator.

**Table 1.** Professional Levels of Job Performance for Fire Investigators as Cited in the Standard *NFPA 1033 – Professional Qualifications for Fire Investigator*, both 2009 and 2014 Editions.

| Category | Requirements |
|---|---|
| General Requirements for a Fire Investigator | 4.1.2 Employ all elements of the scientific method as the operating analytical process<br>4.1.3 Complete site safety assessments on all scenes<br>4.1.4 Maintain necessary liaison with other interested professionals and entities<br>4.1.5 Adhere to all applicable legal and regulatory requirements<br>4.1.6 Understand the organization and operation of the investigative team and incident management system |
| Scene Examination | 4.2.1 Secure the fire ground<br>4.2.3 Conduct an interior survey<br>4.2.4 Interpret fire patterns<br>4.2.5 Interpret and analyze fire patterns<br>4.2.6 Examine and remove fire debris<br>4.2.7 Reconstruct the area of origin<br>4.2.8 Inspect the performance of building systems<br>4.2.9 Discriminate the effects of explosions from other types of damage |
| Documenting the Scene | 4.3.1 Diagram the scene<br>4.3.2 Photographically document the scene<br>4.3.3 Construct investigative notes |
| Evidence Collection/ Preservation | 4.4.1 Utilize proper procedures for managing victims and fatalities<br>4.4.2 Locate, collect, and package evidence<br>4.4.3 Select evidence for analysis<br>4.4.4 Maintain a chain of custody<br>4.4.5 Dispose of evidence |
| Interview | 4.5.1 Develop an interview plan<br>4.5.2 Conduct interviews<br>4.5.3 Evaluate interview information |
| Post-Incident Investigation | 4.6.1 Gather reports and records<br>4.6.2 Evaluate the investigative file<br>4.6.3 Coordinate expert resources<br>4.6.4 Establish evidence as to motive and/or opportunity<br>4.6.5 Formulate an opinion concerning origin, cause, or responsibility for the fire |
| Presentations | 4.7.1 Prepare a written report<br>4.7.2 Express investigative findings verbally<br>4.7.3 Testify during legal proceedings<br>4.7.4 Conduct public informational presentations |

Sources: NFPA 1033, 2009 ed.; S. Sklar presentation, 2008.

Table 2.  Areas to be Addressed in a Peer Review of a Complex Fire Investigation using NFPA 1033, NFPA 921, and other Relevant Standards of Professional Conduct.

**Instructions**: Check the appropriate block (Yes or No) to indicate the presence or absence of the following information.

| YES | NO | |
|---|---|---|
| ☐ | ☐ | Scene secured (*NFPA 1033, 4.2.1*) |
| ☐ | ☐ | Scene safety assessment conducted (*OSHA, 29 CFR Section 1910*) |
| ☐ | ☐ | Exterior survey conducted (*NFPA 1033, 4.2.2; NFPA 906-2*) |
| ☐ | ☐ | Interior survey conducted (*NFPA 1033, 4.2.3; NFPA 906-2*) |
| ☐ | ☐ | Burn patterns interpreted (*NFPA 1033, 4.2.4; NFPA 906-2*) |
| ☐ | ☐ | Burn patterns correlated (*NFPA 1033, 4.2.5; NFPA 906-2*) |
| ☐ | ☐ | Fire debris examined and removed (*NFPA 1033, 4.2.6, ASTM 1188, ASTM E 1459*) |
| ☐ | ☐ | Area(s) of origin reconstructed (*NFPA 1033, 4.2.7*) |
| ☐ | ☐ | Building performance inspected (*NFPA 1033, 4.2.8*) |
| ☐ | ☐ | Effects of explosions discriminated from other damage (*NFPA 1033, 4.2.9*) |
| ☐ | ☐ | Scene diagrammed (*NFPA 1033, 4.3.1; NFPA 906-9*) |
| ☐ | ☐ | Scene photographed (*NFPA 1033, 4.3.2; NFPA 906-8, ASTM E 1188*) |
| ☐ | ☐ | Investigative notes taken and preserved (*NFPA 1033, 4.3.3; NFPA 906*) |
| ☐ | ☐ | Eyewitness evidence identified, preserved, collected, packaged (*NIJ Eyewitness Evidence Guide*) |
| ☐ | ☐ | Evidence (physical, electronic, digital) identified, preserved, collected, packaged (*NFPA 1033, 4.4.1, 4.4.2; NFPA 906-7; ASTM E 620; ASTM E 860; ASTM E 1188, ASTM E 1459; NIJ Electronic Crime Scene Investigation Guide; FBI Guidelines for Imaging Technologies*) |
| ☐ | ☐ | Evidence properly selected for analysis (*NFPA 1033, 4.4.3; NFPA 906-7; ASTM E 620, ASTM E 1492*) |
| ☐ | ☐ | Chain of custody documented (*NFPA 1033, 4.4.4; NFPA 906-7*) |
| ☐ | ☐ | Evidence properly disposed (*NFPA 1033, 4.4.5*) |
| ☐ | ☐ | Interview plan developed (*NFPA 1033, 4.5.1*) |
| ☐ | ☐ | Interviews/interrogations properly conducted (*NFPA 1033, 4.5.2; NFPA 906- 6*) |
| ☐ | ☐ | Investigative information properly inventoried (*NFPA 906-0*) |
| ☐ | ☐ | Investigative information properly analyzed/correlated (*NFPA 1033, 4.5.3; ASTM E 620*) |
| ☐ | ☐ | Investigative information properly obtained/documented (*NFPA 1033, 4.6.1; NFPA 906-1, 906-10, 906-11*) |
| ☐ | ☐ | Investigative information in file is interpreted/corroborated (*NFPA 1033,4.6.2*) |
| ☐ | ☐ | Investigative information on victims/casualties documented (*NFPA 906-5, NIJ Death Investigation Guide*) |
| ☐ | ☐ | Investigative information need for fire modeling documented (*NFPA 921, ASTM E 1355, ASTM E 1472, ASTM E 1591, ASTM E 1895*) |
| ☐ | ☐ | Investigative information need for determining occurrence of room flashover documented (*NFPA 555*) |
| ☐ | ☐ | Expert resources matched to needs, causation (*NFPA 1033, 4.6.3*) |
| ☐ | ☐ | Motive/opportunity evidence established (*NFPA 1033, 4.6.4*) |
| ☐ | ☐ | Person(s)/product(s) identified for responsibility (*NFPA 1033, 4.6.5*) |
| ☐ | ☐ | Concise written report prepared (*NFPA 1033, 4.7.1; ASTM E 620, ASTM E 678, ASTM E 1020. ASTM E 1188, ASTM E 1492, ASTM E 1459, ASTM E1546*) |
| ☐ | ☐ | Investigative findings verbally presented (*NFPA 1033, 4.7.2*) |
| ☐ | ☐ | Testimony clearly presented at legal proceedings (*NFPA 1033, 4.7.3*) |
| ☐ | ☐ | Public informational presentations are accurate (*NFPA 1033, 4.7.4*) |

The universally recognized and generally accepted methodology cited by both NFPA 921 and NFPA 1033 for conducting investigations into the determination of the origin and cause of fires, and related issues, is a systematic approach employing the *Scientific Method*. The basic concepts of the Scientific Method are to *observe*, *hypothesize*, *test*, and *conclude* using relevant and reliable scientific principles and methodologies. The Scientific Method is considered the proper approach for conducting any competent fire scene origin and cause determination, analysis, and reconstruction.

The process of the Scientific Method is recursive in that it takes *data*[15] and sources of information into consideration while it continuously refines and explores various "working" *hypotheses*[16] until arriving at a final validated and verified hypothesis, which becomes the professional conclusion or *opinion*.[17]

V.   **THE FIRE INVESTIGATION**

   A.   **Introduction**

This report presents a forensic engineering analysis of the investigations conducted by the Huntsville Fire Department and the private investigative firm, EFI Global, into the fire that occurred on September 22, 2010, at the Country Inn and Suites, 4880 University Drive, Huntsville, Alabama, 35816. The Country Inn and Suites was owned and operated by Yedla Management and

---

[15] Per *ASTM E1138-89*, ASTM International, *data* are "Facts or information to be used as a basis for discussion or decision."

[16] Per *ASTM E1138-89*, ASTM International, a *hypothesis* is "A supposition or conjecture put forward to account for certain facts, and used as a basis for further investigation by which it may be proved or disproved."

[17] Per *ASTM E1138-89*, ASTM International, an *opinion* is "A belief or judgment based on facts and logic, but without absolute proof of its truth."

Hospitality Enterprises of Huntsville, Inc. ("Yedla") and insured by Acadia Insurance Company ("Acadia"). Figure 2 shows an aerial view of the motel complex taken from a publically available Internet map site.



(a)

(b)

**Figure 1.** (a) Sources of information that may contribute to a working hypothesis; (b) Flowchart outlining the Scientific Method integral to *NFPA 921* as it applies to fire scene investigation and reconstruction.

Source: Icove, D. J.; DeHaan, J. D.; & Haynes, G.A. (2013). *Forensic Fire Scene Reconstruction* (3rd Edition). Upper Saddle River, N.J.: Pearson/Prentice Hall.



**Figure 2.** (Above) Country Inn and Suites owned and operated by Yedla Management and Hospitality Enterprises of Huntsville, Inc., 4880 University Drive, Huntsville, Alabama, 35816 (Bing Maps, http://www.bing.com/maps, retrieved February 22, 2014) and (Below) Room layout of the Country Inn and Suites as provided during the inspection on February 20, 2014.

Investigations by the Huntsville Fire Department and EFI Global, a private investigation firm, both concluded that the fire originated on the second floor balcony of Room 2207, and the