FILED

2014 Mar-21  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# GOVERNMENT EXHIBIT A

## PART 2

# DECLARATION OF DAVID ICOVE

cause of the fire was careless use of smoking materials. Acadia's lawsuit in this action alleges that a negligent act of a federal employee residing in Room 2207 caused this fire.

Since the fire incident that is the basis of this lawsuit occurred on September 22, 2010, all of the investigations, both public and private, at the time of issuing their reports should have followed the operational procedures and protocols within the 2009 Edition of *NFPA 1033*. There are presently 2014 Editions of *NFPA 1033* and *NFPA 921* as approved by the NFPA Standards Council[18] and those most recent editions supersede all previous editions.

According to accepted principles and practice in the field of fire investigations, these newly published 2014 editions should now be relied upon for purposes of expert disclosures and testimony in present and future proceedings, since they now supersede the previous editions of these standards.

### B.      Timeline of Events

*NFPA 921* states that the careful study and analysis of a sequence of events during a fire can be useful in determining facts that can support or refute witness statements, identify gaps or inconsistencies in information, and provide support in the analysis, reconstruction, and progression of the fire (NFPA 921, 2014 Edition, Ch. 18.4.6). The events in timelines may include those occurring before, during, or after the fire incident (NFPA 921, 2014 Edition, Ch. 22.2.1.1). The relevant events in this incident are detailed below and summarized in Table 3:

------

[18] *NFPA 921* approved by the NFPA Standards Council on November 12, 2013 with an effective date of December 2, 2013; *NFPA 1033* approved by the NFPA Standards Council on May 28, 2013 with an effective date of June 17, 2013. Both NFPA 921 and *NFPA 1033* are American National Standards Institute (ANSI) approved documents.

**Table 3.** Summary of Events regarding the fire on September 22, 2010 at Country Inn and Suites, 4880 University Drive, Huntsville, Alabama, 35816.

| Date | Time | Event | Reference |
|------|------|-------|-----------|
| Sept. 22, 2010 | 10:40 p.m. | Huntsville Fire Department (HFD) received a fire alarm at the Country Inn and Suites, 4880 University Drive, Huntsville, Alabama. | YEDLA002966 |
| | 10:45 p.m. | First HFD unit, Engine 11, arrived to find smoke emerging from the courtyard. | |
| | | District Chief Michael D. Dodson observed upon arrival that the balconies of the second and third floors of one of the buildings were completely engulfed in flames. | |
| | | Fire extinguished using a 1¾ inch fire hose, salvage and overhaul conducted, and the building checked for any fire extensions. | |
| | 10:50 p.m. | Chief Dodson requested Fire Investigator Daniel R. Wilkerson come to the scene. | |
| | 11:11 p.m. | Inv. Wilkerson arrived at the fire scene. | |
| | | Inv. Wilkerson requested Electrical Inspector Doug Smith, who in turn requested Building Inspector Skip Stinson. Inspectors Smith and Stinson declared building unsafe to occupy | FBI000081<br><br>FBI000080 |
| | | Inv. Wilkerson interviewed and took statement from Michael K. Siegling, the occupant of Room 2207. | YEDLA000917-000918 |
| Sept. 23, 2010 | 2:44 a.m. | Inv. Wilkerson left the fire scene | |
| | 3:00 p.m. | Inv. Wilkerson returned to inspect the fire scene. He interviewed Wanda Morgan, an employee who had received a suspicious telephone call that morning. | YEDLA000915-000916, FBI-000078 |
| | | Phil Yarbrough, representing Acadia Insurance Company, assigned the fire loss to Cook Claims Service. Specific File Requirement No. 8 in the assignment letter to Cook Claims Service was *Thoroughly address subrogation and salvage.* | YEDLA002912 |
| | | Jim Gowder, Adjuster, Cook Claims Service, requested an origin and cause investigation of fire, to be conducted by EFI Global, Inc. | EFI Report, p.2; YEDLA002943 |
| Sept. 27, 2010 | | Jim Gowder, Adjuster, Cook Claims Service, issued his First Report on the Country Inn and Suites fire to Phil Yarbrough, Union Standard Insurance, Irving, Texas. | YEDLA000468 |

| | | | |
|---|---|---|---|
| | | Mr. Growder's First Report declares *"SUBROGATION: There appears to be the possibility of subrogation."* | YEDLA000470 |
| | | Rod Williams, EFI Global, Franklin, Tennessee, commenced his fire investigation into the fire's origin and cause. | YEDLA002942-002986 |
| | | Rod Williams, inspected an external lighting fixture and concluded damage to the lighting fixture and wiring was external due to the fire. | YEDLA002946 |
| | | Rod Williams concluded that discarded cigarettes ignited the fire. | YEDLA002947 |
| Oct. 5, 2010 | 12:42 p.m. | Inv. Wilkerson filed his investigation report and concluded that the point of fire origin was on the second floor balcony of Room 2207 in Building 2. | YEDLA002966 |
| Oct. 11, 2010 | | HFD's Fire Prevention Bureau inspected and cited the motel for numerous fire code violations. | FBI-000070 |
| Oct. 11, 2010 | | HFD's Fire Prevention Bureau inspected and granted the motel an occupancy load of 50 persons for the Common Room. | FBI-000071 |
| Oct. 11, 2010 | | HFD's Fire Prevention Bureau inspected and granted the motel an occupancy load of 100 persons for the Breakfast Room. | FBI-000073 |
| Oct. 12, 2010 | | Rod Williams, EFI Global, submitted his report to Jim Gowder, Cook Claims Service, for Union Standard Insurance Company. | YEDLA002942-002986 |
| | | EFI Global report stated "There were no items collected during the investigation of this fire" and "There were no safety code violations noted" | EFI. p. 5; YEDLA002946; EFI, p. 3; YEDLA002944. |
| Oct. 21, 2010 | | Second report to Phil Yarbrough, Union Standard Insurance, by Jim Gowder of Cook Claims Service, Inc. mentioned wiring not compliant with the electrical code was found damaged on the third floor. | YEDLA002525 |
| Jun. 3, 2011 | | HFD's Fire Prevention Bureau inspected and cited the motel for numerous fire code violations. Present are inspectors from other City of Huntsville organizations. | FBI-000063 |
| Jun. 3, 2011 | | City of Huntsville inspected and declared 4880 University Drive, NW, Buildings 1 & 3, as unsafe due to numerous building, electrical, and fire code violations. | YEDLA000344-000345, FBI-000119, FBI-000127. |

| Jun. 10, 2011 | | City of Huntsville Dept. of Community Development and Code Enforcement issued official notices and declared 4880 University Drive, NW, Buildings 1 & 3, as unsafe. The Notice ordered corrections before Aug. 9, 2011. | FBI-000118, FBI-000126 |
|---|---|---|---|
| Aug. 25, 2011 | | HFD's Fire Prevention Bureau inspected and and found smoke detectors satisfactory in sleeping rooms. | FBI-000062 |
| Aug. 31, 2011 | | HFD's Fire Prevention Bureau inspected and and found a re-inspection is necessary after compliance with concessions made by the Plans Examiner for the City of Huntsville. | FBI-000060 |
| Aug. 31, 2011 | | HFD's Fire Prevention Bureau inspected and and cited numerous fire code violations. | FBI-000061 |
| Oct. 12, 2011 | | HFD's Fire Prevention Bureau inspected and and found Building 3 satisfactory. | FBI-000051 |
| Aug. 1, 2012, | | Plaintiff, Acadia Insurance Company, as subrogee of Yedla, filed a damage claim for $1,119,536.93 against the United States Government alleging the federal employee who occupied Room 2207 that evening caused the fire. | YEDLA000919-000929 |
| Apr. 23, 2013 | | HFD's Fire Prevention Bureau inspected and granted the motel an occupancy load of 50 persons for the Common Room. | FBI-000049 |
| May 10, 2013 | | Plaintiff, Acadia followed up their claim by filing a federal lawsuit against both the United States of America and the employee under the Federal Tort Claims Act seeking damages for the alleged negligence of the Government employee | |
| Oct, 2013 | | The motel's ownership doing business as the Country Inn & Suites is changed from K.R. Yedla, a sole proprietorship, to Utsav, LLC., a domestic limited liability company. | |
| Oct. 31, 2013 | | HFD's Fire Prevention Bureau inspected and cited the motel for numerous fire code violations. | FBI-000048 |
| Feb. 20, 2014 | | Plaintiff, Acadia allows for an inspection by the Defendant's expert of the motel. | |
| Mar. 3, 2014 | | Plaintiff's FRCP 26(A)(2) expert disclosures | |

On September 22, 2010 at 10:40 p.m., the Huntsville Fire Department received an alarm notification and report of a fire at the Country Inn and Suites, 4880 University Drive, Huntsville, Alabama, 35816.

On September 22, 2010 at 10:45 p.m., the first Huntsville Fire Department unit, Engine 11, arrived to find smoke emerging from the courtyard. District Chief Michael D. Dodson, in command of the firefighting suppression units, observed that the balconies of the second and third floors of one of the buildings were completely engulfed in flames. The fire was extinguished using a single 1¾ inch fire hose. Salvage and overhaul were then conducted, and the building was checked for any extension of the fire.

On September 22, 2010 at 10:50 p.m., Chief Dodson requested Fire Investigator Daniel R. Wilkerson come to the scene.

On September 22, 2010 at 11:11 p.m., Investigator Wilkerson arrived at the fire scene.

On September 22, 2010, Investigator Wilkerson requested Electrical Inspector Doug Smith to come to the fire scene. Upon arrival, Inspector Smith requests Building Inspector Skip Stinson to come to the fire scene. Due to the fire damage, Inspectors Smith and Stinson state to Investigator Wilkerson that the building was unsafe to occupy (Acadia Insurance Company v. United States of America, Document 1, filed May 10, 2013, p. 32; YEDLA002966).

On September 22, 2010 Investigator Wilkerson conducted his investigation, and interviewed Michael K. Siegling, the occupant of Room 2207. The transcript of Mr. Siegling's statement follows (Acadia Insurance Company v. United States of America, Document 1, filed May 10, 2013, pp. 40-41;YEDLA000917-000918):

**Figure 3**. Transcript of the short statement taken by Investigator Daniel Wilkerson, Huntsville Fire Department, regarding the fire on September 22, 2010 at the Country Inn and Suites, 4880 University Drive, Huntsville, Alabama. This is the only witness statement found in Investigator Wilkerson's file.

---

22 SEP 2010

I Michael K. Siegling was awakened by a fire alarm at the hotel at approximately 10:40 p.m. I went to the hallway and did not smell smoke nor see anyone vacating the building. Approximately five minutes later, another hotel guest knocked on my door and informed me there was a fire in our building. I then opened my balcony door, looked to the left and observed flame to the left of my balcony. End of statement.

Q  When was the last time that you smoked cigarettes on the balcony?
A. I don't remember (yesterday or the day before yesterday)

Q  How did you extinguish the cigarettes when you were done?
A. Styrofoam cup with water.

Q  Before the fire, when was the last time you were on the balcony?
A. Around 5 or 6 today

Q  What was on the balcony when you was [sic] last on the balcony?
A. Beer can

Michael Siegliy [sic]
180 Grand Avenue
Oakland, CA 94612
(510) 251-4022

Statement taken by Daniel Wilkerson /s/

---

On <u>September 23, 2010 at 2:44 a.m.</u>, Investigator Wilkerson left the fire scene.

On <u>September 23, 2010 at approximately 3:00 p.m.</u>, Investigator Wilkerson returned to the fire scene to examine and inspect the building. He interviewed Wanda Morgan, an employee of Country Inn and Suites, who had received a telephone call that morning from an individual named Mike LaGrange claiming to be from the Huntsville Fire Marshal's Office and leaving telephone number 678-615-7705. Investigator Wilkerson had Wanda Morgan call the individual back and he

spoke directly to Mr. LaGrange who then hung up the telephone (Acadia Insurance Company v. United States of America, Document 1, filed May 10, 2013, pp.38-39; YEDLA000915-000916; FBI-000078).

On September 23, 2010, Phil Yarbrough, Union Standard, a Berkley Company representing Acadia Insurance Company, assigned the Country Inn and Suites fire loss to Cook Claims Service. Specific File Requirement Number 8 listed in the assignment letter to Cook Claims Service was *"Thoroughly address subrogation and salvage"* (YEDLA002912).

On September 23, 2010, Jim Gowder, Adjuster for Cook Claims Service, requested an origin and cause investigation of the Country Inn and Suites fire. EFI Global, Nashville Service Center, 1880 General George Patton Drive, Building B, Suite 203, Franklin, Tennessee 37067 was contacted and assigned (EFI Global Investigation Report, p.2; YEDLA002943).

On September 27, 2010, Jim Gowder, Adjuster for Cook Claims Service, issued his First Report regarding the Country Inn and Suites fire to Phil Yarbrough, Union Standard Insurance, P.O. Box 152180, Irving, Texas 75015-2180. In his report, Mr. Gowder stated: *"According to the [Huntsville] Fire Marshall, the suspected perpetrator admitted smoking on the balcony [of Room 2207] but denied causing the fire. Per you instructions, we have engaged EFI Global to make a cause and origin determination and they will coordinate their investigation with the Fire Marshall."* (YEDLA000468).

On September 27, 2010, under a heading in Mr. Growder's First Report, he also declares *"SUBROGATION: There appears to be the possibility of subrogation since the origin can reportedly be determined and the individual who was smoking has been identified. We will report further upon receipt of the C & O Report and that of the Fire Marshall. The Fire Marshall stated*

*the FBI agent claims governmental immunity. We do not believe this will apply nor will it relieve the agent of personal responsibility.*" (YEDLA000470).

Of particular note is that this paragraph titled "*SUBROGATION*" only appears in Mr. Growder's First Report (September 27, 2010, YEDLA000470) while this paragraph caption appears with the text redacted from his Second Report (October 10, 2010, YEDLA002526).

On September 27, 2010, Roderick S. "Rod" Williams, Fire Investigator, EFI Global, Nashville Service Center, 1880 General George Patton Drive, Suite 203, Franklin, Tennessee 37067, commenced his investigation into the origin and cause of the fire at the Country Inn and Suites. He examined the fire scene and based upon the lowest burn damage along with fire patterns, concluded that the fire started in the northwest corner of the balcony to Room 2207.

During his examination of the fire scene, he came across an external lighting fixture on the porch which he examined, cut away the damaged wiring, removed an electrical outlet, discarded and then concluded that all the damage to the lighting fixture was external due to the fire. He stated in his report, "*The wiring was affected by the fire at a wall hung light fixture that was exposed to the fire spread on the balcony. As the fire spread away from the area of origin, the wiring was damaged consistent with random exposure damage*" (YEDLA002946).

He concluded that evidence from improperly discarded cigarettes ignited the fire. His report, filed October 12, 2010, states, "*There were no items collected during the investigation of this fire*" (EFI Report. P. 5; YEDLA002946). His file contains no sign-in sheet indicating that any potential interested parties were notified or attended this examination and subsequent discarding and abandonment of potential evidence.

On October 5, 2010 at 12:42 p.m., Investigator Wilkerson filed his half-page investigation report as the "Arson Narrative" in the Huntsville Fire Department Incident Report. After examining the scene, searching and finding a pack of cigarettes and a lighter on the television table just inside the door, and taking a short statement from the room's occupant Michal [sic] Siegling, he concluded that the point of fire origin was on the second floor balcony of Building 2, Room 2207. There is no indication in the report whether Investigator Wilkerson took any photographs, make any scene sketches, or secured evidence (Huntsville Fire Department Report, Section: Arson Narrative, (Acadia Insurance Company v. United States of America, Document 1, filed May 10, 2013, p. 32; YEDLA002966; Huntsville Fire Department Report, Arson Narrative Section).

**Figure 4**.  A transcription of the complete narrative report by Investigator Daniel R. Wilkerson, Huntsville Fire Department, regarding the fire on September 22, 2010 at the Country Inn and Suites, 4880 University Drive, Huntsville, Alabama.

---

Arson Narrative:

I was requested on scene by District Chief Kay. When I arrived on scene, I was told that there had been a fire.

During my exterior examination, I noted a hotel building that had fire damage to the one balcony on the second floor 2207 and two balconies on the third floor 2307 and 2309. The building had been evacuated.

During my interior examination, I noted heavy fire/smoke/heat damage to a room on the third floor 2307 that extended to the attic. In the second floor apartment 2207, there was a pack of cigarettes and a lighter on the tv table just inside the door. I requested Electrical Inspector Doug Smith. See Doug Smith's report. Building Inspector Skip Stinson, also, responded to the scene per Doug Smith's request. Due to the fire damage Doug Smith and Skip Stinson stated that the building was unsafe to occupy.

I interviewed the occupant of room 2207, Michal [sic] Siegling.

In conclusion, the point of origin was on the second floor balcony. The cause of the fire was careless use of smoking materials.

10/05/2010 12:42:22 PM DRW

---

On October 11, 2010, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and cited them for exits signs and emergency lighting, prohibited storage of combustibles in mechanical and electrical rooms, and the need for annual certification of the alarm system (FBI-000070).

On October 11, 2010, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and granted them an occupancy load of 50 persons for the Common Room (FBI-000071).

On October 11, 2010, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and granted them an occupancy load of 100 persons for the Breakfast Room (FBI-000073).

On October 12, 2010, Rod Williams, EFI Global, submitted his report[19] to Jim Gowder, Cook Claims Service, for Union Standard Insurance Company. The report listed as enclosures: 28 photographs, scene diagram, fire report, and an additional materials packet containing unmounted photographs. The report stated "*There were no items collected during the investigation of this fire*" (EFI Report. P. 5; YEDLA002946) and "*There were no safety code violations noted*" (EFI Report, p. 3; YEDLA002944). Furthermore, there is no mention in the report of any investigator's retention, storage, or submission of physical evidence for further forensic testing or evaluation.

---

[19] Fire Investigation Report One and Final, by EFI Global, Inc., Insured: Country Inn & Suites, 4880 University Drive, Huntsville, Alabama 35816, September 22, 2010, Claim Number 10070791, EFI File Number 94216-08709, prepared for Union Standard Insurance Company in care of Jim Gowder, Cook Claims, signed by Rod Williams and reviewed by Metts Hardy, October 12, 2010.

On October 21, 2010, in a report to Phil Yarbrough, Union Standard Insurance, Jim Gowder of Cook Claims Service, Inc. mentioned the existence of wiring not compliant with the electrical code which was found damaged on the third floor (YEDLA002525).

On June 3, 2011, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and cited them for storage in electrical rooms, open wiring noted throughout all the buildings including rooms and corridors, rated fire doors propped open, compromised fire ratings of egress corridors with penetrations in many locations. Present for the inspection were representatives from the Huntsville Police Department, Building Inspection, Electrical Inspection, and Community Development, and deemed the building unsafe and condemned (FBI-000063).

On June 3, 2011, the City of Huntsville, Alabama, Department of Community Development and Code Enforcement Division, inspected and declared Hospitality Enterprises of Huntsville, Inc., 4880 University Drive, NW, Building 1, as unsafe due to numerous building, electrical, and fire code violations. The building was ordered to be vacated immediately, until the violations were corrected. Electrical violations included open electrical splices in walls and corridors, improperly installed lighting fixtures, telephone cords run under carpets, and improperly sized junction boxes. The notice gave the property owners until August 8, 2011 to correct the deficiencies (YEDLA000344-000345).

On June 3, 2011, the City of Huntsville Inspection Department issued an Investigation Report at 2:00 p.m., by Inspectors Bruce Owens, James Campbell, and Eric Weber for property located at Country Inn & Suites, 4880 University Drive, Huntsville. The summary for the Investigation Report states, "*Renovations under permit have been taking place in building number two due to a fire that occurred In September of 2010. While making an inspection on the building*

*under permit, major code violations were identified to be throughout the entire complex. Records verification identified the work that was performed without permit or inspection and was a serious threat to the life, health, & safety of the building occupants.*" Fifteen major codes violations are cited by the report (FBI-000119, FBI-000127).

On June 10, 2011, the City of Huntsville, Alabama, Department of Community Development and Code Enforcement Division, based upon their inspection on June 3, 2011, issues Official Notice Number 11-4264UB and 11-4252US to Hospitality Enterprises of Huntsville, Inc., with numerous electrical, structural, building, and fire code violations in Building Nos. 1 and 3. The Notice orders violations corrected prior to August 9, 2011 (FBI-000118, FBI-000126).

On August 25, 2011, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and tested and found satisfactory the smoke detectors in sleeping rooms (FBI-000062).

On August 31, 2011, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and notes that a re-inspection is necessary after the fire inspector reads the concessions made by Eric Weber, Plans Examiner, City of Huntsville (FBI-000060).

On August 31, 2011, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, and it cited stops in rated doors, along with unsatisfactory conditions in laundries, maintenance shop, and trash collection areas (FBI-000061).

On October 12, 2011, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites, Building 3, and notes a final-satisfactory rating (FBI-000051).

On August 1, 2012, legal counsel for the Plaintiff, Acadia Insurance Company ("Acadia"), as subrogee of Yedla, submitted a damage claim for $1,119,536.93 against the United States Government alleging the federal employee who occupied Room 2207 that evening had caused the fire.

On April 23, 2013, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites and grants an occupant load permit for 50 persons in the Commons Area (FBI-000049).

On May 10, 2013, attorneys for Acadia followed up their claim by filing a lawsuit in this court against both the United States of America and the federal employee, under the Federal Tort Claims Act seeking damages for the alleged negligence act of the federal employee. Since the filing of the lawsuit, the federal employee has been dismissed as a party Defendant.

Sometime in late 2013, the motel's ownership doing business as the Country Inn & Suites is changed from K.R. Yedla, a sole proprietorship, to Utsav, LLC., a domestic limited liability company.

On October 31, 2013, Huntsville Fire Department's Bureau of Fire Prevention inspected the Country Inn & Suites reports unsatisfactory conditions for fire exit doors, obstructed, egress paths, and emergency lights (FBI-000048).

### C.    The City of Huntsville Fire Investigation

The official public sector investigation in this case was conducted by Daniel R. Wilkerson with the Huntsville Fire Department in Huntsville, Alabama. Investigator Wilkerson responded to the scene of the fire while the suppression operations were still continuing. He assessed the situation, concluded that the fire started on the balcony of Room 2207, and interviewed its

occupant. The only other statement ever taken by Investigator Wilkerson was of a motel employee who received a telephone call the next morning after the fire which was deemed "suspicious."

Investigator Wilkerson filed a half-page report as an addendum to the department's fire incident report. There is no indication in this case that Investigator Wilkerson took any photographs, prepared any diagram of the scene, interviewed any additional witnesses, or secured any physical evidence in the course of his investigation.

The discovery does not show that the curriculum vitae for Investigator Wilkerson has been produced as required for expert witnesses in federal litigation. However, the Plaintiff's expert designation[20] states that Investigator Wilkerson is *"an expert in the field of cause and origin fire analysis, fire pattern investigation analysis, fire prevention, evaluation of fire loss, and the National Fire Protection Association (NFPA) codes and standards."* The professional background information, educational history, training and experience of this witness is needed to more fully assess the understanding and application of his expert testimony.

### D.    The EFI Global, Inc. Fire Investigation

The private sector investigation in this case was conducted by Rod Williams, a Fire Investigator employed by EFI Global and based in Franklin, Tennessee. Investigator Williams spent only one day at the fire scene on September 27, 2010 conducting his investigation. He did not conduct any witness interviews, with the exception of contacting Huntsville Fire Investigator Wilkerson. He confirms in his report that he did not collect any evidence in this case (EFI Report,

---

[20] Plaintiff's Expert Designations Pursuant to Fed. R. Civ. P. 26(A)(2), Acadia Insurance Company, Plaintiff, v. United States of America, Defendant, United States District Court of the Northern District of Alabama, Huntsville Division, Case Number 5:13-cv-00895-CLS, March 3, 2014, pp. 3-4.

p. 5; YEDLA002946) or recommend to his client that any other potential interested parties be placed on notice and informed of available dates to participate in a joint fire scene inspection.

Investigator Williams' report had numerous shortcomings in documentation and evidence collection as required by *NFPA 921* and *NFPA 1033*. Investigator Williams drew only two scene diagrams consisting of a map/diagram of the Country Inn and Suites property and a second diagram showing the position of photographs taken of Room 2077.

Investigator Williams took 172 photographs (YEDLA002990-003161) yet failed to produce the standard narrative log describing each photo (See *NFPA 921*, 2014 Edition, Fig. A.16.3.2(f) Sample Form for Photograph Log). The photos of electrical circuit panels were blurred, were not contained in his report, and did not document the locations of and areas covered by the individual circuit breakers in each of the panels as required (See *NFPA 921*, 2014 Edition, Fig. A.16.3.2(g) Sample Form for Electrical Panel Data).

Investigator Williams located but failed to collect physical evidence to support his hypothesis of the fire (See EFI Report. P. 5; YEDLA002946, "*There were no items collected during the investigation of this fire*"). His report indicated (EFI Report, p. 8; YEDLA002949) the location of a beer can and discarded cigarette butts below the balcony on ground level, yet Investigator Williams failed to secure, collect, and preserve these items. He also failed to note and document the location of the electrical lighting fixture and wiring on the balcony that he subsequently examined and discarded.

The Plaintiff in this case listed Investigator Williams as a retained expert witness in its discovery filing[21] on December 20, 2013. In answer to Interrogatory Number 1, Part 2, Plaintiff represented that Investigator Williams followed *NFPA 921* and *NFPA 1033* in conducting his investigation. In Plaintiff's expert designations filed on March 3, 2014, Investigator Williams has produced what he considered to be a report dated February 18, 2014 containing all of the information required under Federal Rules of Civil Procedure, Rule 26(a)(2). In this report[22], Mr. Williams confirms that he followed *NFPA 921* and *NFPA 1033* in conducting his investigation, and states his systematic examination of the fire scene and adhered to "*the scientific method where the compilation of factual data, as well as an analysis of those facts, should be accomplished objectively, truthfully, and without expectation bias, preconception, or prejudice.*"

Investigator Williams' curriculum vitae was previously included as a three-page document summarizing his professional experience, licensures, court qualifications, education, affiliations, and specialized education (YEDLA002987-002989). Of particular note in the curriculum vitae is that Mr. Williams has received no specialized education of any kind in fire investigation issues since a class on expert witness testimony nearly eight (8) years ago in 2006.

---

[21] Plaintiff's Objections and Answers to Interrogatories, Acadia Insurance Company, Plaintiff, v. United States of America, Defendant, United States District Court of the Northern District of Alabama, Huntsville Division, Case Number 5:13-cv-00895-CLS, , filed December 20, 2013.

[22] Federal Rule 26 Statement of Rod Williams, EFI Global, Inc., Insured: Country Inn & Suites, 4880 University Drive, Huntsville, Alabama 35816, Date of Loss: September 22, 2010, Claim Number Not Given, EFI File Number 94216-08709, signed by Rod Williams, February 18, 2014, YEDLA003164-003169.

### E.    The February 20, 2014 Inspection

Your expert visited the site of the fire incident on February 20, 2014 before completing and submitting this formal expert report. Attending this inspection[23] representing the Plaintiff was their attorney, Carl L. Evans, Esq., McCathern, P.L.L.C., Regency Plaza, 3710 Rawlins Street, Suite 1600, Dallas, Texas 75219.

Representing the motel was Ms. Seyma Njubigbo, Assistant General Manager, Country Inn & Suites by Carlson, 4880 University Drive, Huntsville, Alabama 35816, telephone number (256) 837-4070. Ms. Njubigbo indicated that since late 2013 (possibly Oct. 2013) the motel is now under new ownership. Website searches through the Alabama Secretary of State's Office[24] and the City of Huntsville Business License Tax Office[25] search confirms that in 2013 the motel's ownership doing business as the Country Inn & Suites changed from K.R. Yedla, a sole proprietorship, to Utsav, LLC., a domestic limited liability company.

The inspection consisted of exterior and interior photographs of the repaired motel, specifically of Room 2207 and a view from Room 3209 directly across the courtyard. Both rooms were unoccupied at the time of the inspection. Also inspected were the stairwells, electrical panels, and the third floor attic access.

---

[23] Defendant's Third Request for Production or Inspection to Plaintiff, Acadia Insurance Company, Plaintiff, v. United States of America, Defendant, United States District Court of the Northern District of Alabama, Huntsville Division, Case Number 5:13-cv-00895-CLS, January 24, 2014.

[24] Business Entity Details for Utsav, LLC, doing business as Country Inn and Suites, Huntsville, Entity Identification Number 036-936, Website http://arc-sos.state.al.us, retrieved February 22, 2014.

[25] City of Huntsville, Business License Tax Search for Utsav, LLC, doing business as Country Inn and Suites, Huntsville, Website http://lictaxsearch.huntsvilleal.gov, retrieved February 22, 2014.

Since the fire damage to Room 2207, Room 2307, and the third floor attic space had already been repaired, the February 20, 2014 inspection did not produce any evidence of lead value in this case that could provide insight into the origin and cause of the fire on September 22, 2010. Also, any necessary destructive or evasive internal examinations behind the walls of the electrical, plumbing, and structural conditions could also not be accomplished to confirm that the repairs had remedied deficiencies which could have served as competent and accidental ignition sources or support alternative hypotheses for the fire on September 22, 2010.

However, several potential fire, building, and electrical code irregularities were noted during this inspection that are worth mentioning. These irregularities included, but were not limited to those documented in the following photographs (Figure 5).

The irregularities noted during were all in the presence of Ms. Seyma Njubigbo, the motel's Assistant General Manager. Figure 5 (Top left) shows a fire extinguisher missing which is missing from alarmed cabinet on the third floor down the hall from Room 2307. Figure 5 (Top right) documents a fire door leading to second floor which does not close properly due to it being too large for the Underwriters Laboratory listed frame.

Figure 5 (Bottom) shows the third floor attic space near Room 2307 where exposed unknown wiring emerges from a broken plastic pipe in the foreground as well as the existence of an unknown penetration opening through a firewall or partition in the rear background which is partially covered with a piece of plywood. Note also the piece of blue carpeting laying across the exposed electrical wiring. The cables in the front foreground appear to be those from the cable/video television installation. The green handle of a value, assumed to be controlling water is in the foreground.



**Figure 5**.  Irregularities noted during the February 20, 2014 inspection of the Country Inn & Suites by Carlson, 4880 University Drive, Huntsville, Alabama 35816. (Top left) Fire extinguisher missing from alarmed cabinet, (Top right) Fire door leading to second floor which does not close properly, and (Bottom) Third floor attic space showing exposed unknown wiring and penetration opening through a firewall or partition in background.

## VI.   CASE ANALYSIS AND PROFESSIONAL OPINIONS

Based upon my analysis of this case, along with my training, education, and professional experience, I reached several conclusions regarding the facts of this incident and the opinions expressed by the Plaintiff's experts. In establishing whether the opinions of those experts are the product of reliable principles and methods, I examined the following factors:

> **A.  Did the expert base the analysis upon sufficient facts or data?**
>
> **B.  Did the expert use reliable principles and methods?**
>
> **C.  Did the expert reliably apply the principles and methods to the facts of this case?**

Note that the primary purpose for the review of this case does not concern these investigators' knowledge, experience, training, and education, as that was not material to the analysis. Rather, the primary issue is the *reliability of their methodologies, the application of those methodologies to the facts, and the reliability of their opinions derived from their investigations.*

### A.    Sufficiency of Facts or Data

In applying *NFPA 921, NFPA 1033,* and other recognized professional standards that relate to fire and explosion investigations, there is an overarching duty to collect and preserve all information, data, and objects of evidentiary value.[26] In fact, the scientific method requires a

---

[26] Clinkinbeard, K. J., & King, G. A. (2008). *Spoliation: Can the Investigator by Sued for Destruction of Evidence?* Paper presented at the International Symposium on Fire Investigation Science and Technology, ISFI 2008, Cincinnati, OH., May 18 -21, 2008.

comprehensive collection of facts and data (see Figure 1, *supra*). Furthermore, a fire investigation report produced per *NFPA 1033* (2009 and 2014 Editions, Ch. 4.7.1) should be prepared so that it:

> ... *accurately reflects the investigative findings, is concise, expresses the investigator's opinion, contains facts and data that the investigator relies on in rendering an opinion, contains the reasoning of the investigator by which each opinion was reached, and meets the needs or requirements of the intended audience(s).*

In collecting this data, investigators are directed to describe, observe, and document the incident; photograph, sketch, and collect evidence; conduct tests and experiments; interview witnesses; and assemble historical loss histories of similar incidents (Figure 1(b)). This collected data and evidence should not consist of only the data and evidence which support the investigator's initial or assumed hypothesis, but should include *all* data and evidence so as to verify and validate that all other reasonable alternative hypotheses were considered and ruled out. To ignore the consideration of alternative hypotheses can only serve to undermine objectivity and improperly introduce "expectation bias" into the investigation.

An example of a viable alternative hypothesis in this case is a fire caused by an electrical failure in the vicinity of the area Mr. Williams considered the area of fire origin. Mr. Williams examined and claimed to eliminate as a potential cause the failure of an externally hung electrical lighting fixture and associated electrical wiring near the area of fire origin.

Other hypotheses included the possibility that the fire originated on a higher balcony or attic overhang and dropping debris made it appear that the fire started on the second floor balcony. No eyewitness testimony exists to support or deny that fact other than Chief Dodson's observation upon arrival that the balconies of the second and third floors were completely engulfed in flames at that time. No observations or evidence exists as to the conditions prior to the arrival of Chief Dodson.

This fire investigation, directed by both the City of Huntsville Fire Department and EFI Global, is deficient for failing to follow *NFPA 921*'s requirement calling for the comprehensive review and collection of all data. In this case, both experts failed to review and preserve all of the data and evidence directly relevant to the fire investigation, based many of their conclusions on suppositions rather than facts, and neglected to have their respective opinions constructively peer reviewed. This conclusion of an ***insufficiency of facts and data*** is based upon the following observations, which undermine the foundational reliability of the reports in this case:

### 1.   Failure to Properly Collect, Interpret, and Preserve Fire Debris Evidence

The basic tenet of evidence collection is the preservation and interpretation of fire debris evidence, a concept that was overlooked in this case. Failing to collect and preserve this fire debris evidence limits the facts and data available. *NFPA 1033* (2014 Edition, Ch. 4.4.2) outlines the requisite job task requirement for evidence collection and preservation where it states:

> *4.4.2\* Locate, document, collect, label, package, and store evidence, given standard or special tools and equipment and evidence collection materials, so that it is properly identified, preserved, collected, packaged, and stored for use in testing, legal, or other proceedings and examinations, ensuring cross-contamination and investigator-inflicted damage to evidentiary items is avoided and the chain of custody is established.*

The fundamental principles behind how and why fire scene evidence is so important to collect is based upon three major standards of practice:

- ***ASTM E860-07(2013)*** – *Standard Practice for Examining and Preparing Items that Are or May Become Involved in Criminal or Civil Litigation;*

- ***ASTM E 1188-11*** – *Standard Practice for Collection and Preservation of Information and Physical Items by a Technical Investigator; and*

- ***NFPA 921*** – *Guide for Fire and Explosion Investigations.*

*NFPA 921* cites *ASTM E860* eight times (2014 Edition, Chs. 2.3.5, 12.3.5.7, 17.7.3, 17.10.1.6.2, 29.3.1, A.17.1, A.17.2.2,and A.17.5.1.2) and provides detailed guidelines to fire investigators when examining items of evidence that they anticipate could possibly be the subject of litigation, whether it be civil or criminal. Under *ASTM E860*, it is strongly advised that a person or entity collecting and examining evidence, or testing that evidence, should strictly adhere to the following standard of care[27]:

> *1) Document the condition of the evidence by photographs or other suitable methods prior to any examination or disassembly;*
>
> *2) If the intended procedure is likely to alter the evidence in a manner that limits additional examination and testing, then it is incumbent upon the examining or testing entity to*
>
> > *a) Notify its client that the proposed action is likely to alter the nature, state, or condition of the evidence;*
> >
> > *b) Recommend that the client notify other interested parties of the proposed action;*
> >
> > *c) Recommend that other interested parties be given an opportunity to participate in the procedure;*
> >
> > *d) If a compelling reason exists why the foregoing cannot be performed, then the examining party must draft and preserve all applicable information supporting what the compelling reason is.*

*NFPA 921* also cites *ASTM E1188* seven times (2014 Edition, Chs. 2.3.5, 12.3.5.7, 17.7, 17.7.3, A.17.1, A.17.2.2, and A.17.5.1.2) and addresses the issue of documenting destructive disassembly and testing of evidence, which occurred in this case. *ASTM E1188* states that:

> *if items involved in the incident are disassembled or subject to destructive testing, each step of the disassembly or testing shall be documented by contemporaneous photographs or videotaping.*

---

[27] Goldberg, N. A. and Freedenberg, J.P. (2003). *Spoliation—Avoiding Specious Claims by Plaintiffs*. Goldberg Segalla, L.L.P., New York. November 2003.

This documentation of scenes often establishes an investigator's hypothesis of when they believed the fire's origin and cause had been proved, but also serves to refute other reasonable alternative hypotheses. *NFPA 921* (2014 Edition, Ch. 12.3.5.2) provides the following documentation requirements:

> **12.3.5.2 Documentation.** *Efforts to photograph, document, or preserve evidence should apply not only to evidence relevant to an investigator's opinions, but also to evidence of reasonable alternate hypotheses that were considered and ruled out.*

With the early mention of subrogation in this fire loss, both the EFI Global investigator and the Cook Claims Service insurance adjuster should have been well aware that litigation was a probable, if not likely result. With this realization, *NFPA 921, ASTM E860*, and *ASTM E1188* certainly applied to the Country Inn and Suites fire investigation.

The actions of Investigator Williams and insurance adjuster Jim Gowder, working individually and in concert, show they failed to recognize, collect, and preserve evidence in this case, particularly evidence that later forensic examination might prove exculpatory in nature. The scene should have been better protected, interested parties should have been notified of the destructive inspections, steps should have been taken by which the fire scene examination was delayed, and the disassembly and destructive testing of critical evidence should have been halted pending the arrival of those other interested parties.

Of particular note is Mr. Gowder's reported background as an expert witness. The Plaintiff's witness designation dated March 3, 2014, pp. 4-5, describes Mr. Gowder as "**an expert in the field of forensic damages analysis and evaluation**." With this stated background and expertise, Mr. Growder and should have quickly recognized and taken the responsibility to halt any destructive evidence examinations, take measures to preserve the fire scene, and notify

interested parties in this matter. This decision should have been compounded with the very early notification the next day after the fire when he received his assignment to "thoroughly address subrogation and salvage" from Phil Yarbrough, representing Acadia Insurance Company. Mr. Growder even documented this realization of the potential for subrogation actions against the U.S. Government and others as stated in his First Report on September 27, 2010 (YEDLA000470).

Examples of critical evidence that should have been preserved include all electrical fixtures and wiring within the area the Plaintiff's investigators believed to be the room of fire origin. Their investigations both appeared to overlook or ignore the significant pre-existing fire code violations and electrical code violations in the wiring of electrical fixtures, junction boxes, and branch wiring in the walls and ceilings that were cited after the fire by City of Huntsville code enforcement officials. A comprehensive fire scene investigation and examination of the structure would have revealed these serious violations and would have posed additional hypotheses for the cause of this fire.

Both investigators noticed the presence of cigarettes in Room 2207, as well as on the ground beneath the balcony to that room, yet they failed to photograph the de-layering process which revealed that evidence and collect any of the debris containing those critical items. No fire debris at all was retained for follow-up forensic testing. Furthermore, no one inquired during the interview with the occupant of Room 2207 if he left the water-filled Styrofoam cup on the balcony.

It is likely that this cup and its contents of a few cigarette butts would have been blown off the decking by fire suppression efforts and onto the ground directly below the balcony. Photographs taken by Investigator Williams shows that there were cigarette butts on the ground,