# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# <u>NORTHEASTERN DIVISION</u>

| | |
|---|---|
| ACADIA INSURANCE CO., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 5:13-CV-00895-CLS |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## **<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 37, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56</u>**

The Defendant United States of America, in the above-styled cause, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama, and Jack Hood, Assistant U.S. Attorney, and pursuant to Rules 37 and 56 of the Federal Rules of Civil Procedure respectfully submits the following reply brief in support of Defendant's Motion to Dismiss or in the alternative for Summary Judgment against Plaintiff, and shows as follows:

## **TABLE OF CONTENTS**

I. DEFENDANT'S RESPONSES TO PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS……………………………………………………….…..2

II. DEFENDANT'S RESPOSNSES TO PLAINTIFF'S DISPUTED FACTS……………………………………………………………………....9

1

III. ARGUMENT AND CITATION OF AUTHORITIES………………....….9

    1. The Defendant Asserts There Was Important Evidence to Collect From the Area of Origin of the Fire and That Plaintiff's Defined Area of Origin Was Too Restrictive……………………………………….…...9

    2. The Defendant Does Have the Burden of Proof in this Matter and Evidence Should Have Been Documented, Photographed, and Preserved…………………………………………………………..…...15

    3. There Is Evidence That the Plaintiff's Destruction of Evidence was at Least Negligent or "Culpable"…………………………....…………..16

    4. Defendant Does Not Need to Show That Plaintiff Acted in Bad Faith but Only That Plaintiff is "Culpable."……..…………………………….......17

    III.    CONCLUSION…………………………………………………...19

    CERTIFICATE OF SERVICE…………………………………………..20

**I.    Defendant's Response to Plaintiff's Additional Undisputed Facts**

The Defendant contends that paragraphs 1 through 16 are mostly background facts that are incomplete and thus irrelevant to the issues raised in Defendant's motion.

As to paragraphs 17 through 19, Defendant would clarify and dispute Plaintiff's assertions by showing the following narrative and relevant citations to evidence:

2

This case concerns a $1 million fire claim regarding Building 2 of the Country Inn and Suites, 4880 University Drive in Huntsville, Alabama, previously owned and operated by Yedla Management and Hospitality Enterprises of Huntsville, Inc. ("Yedla"). The September 22, 2010 10:40 p.m., fire was extinguished by the Huntsville Fire Department ("HFD"). (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 16-17, 20; YEDLA002966).

Subsequent investigations by the HFD and EFI Global, Inc. ("EFI"), a private forensic investigation firm who often specializes in subrogation claims, both concluded that the fire occurred on the second floor balcony of Room 2207, and asserted the cause of the fire was careless use of smoking materials by the occupant of that room, FBI agent Michel Siegling. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 21; YEDLA002966 and EFI. p. 5; YEDLA002946)

FBI agent Michael Siegling stated to the HFD investigator Daniel R. Wilkerson that he had smoked several cigarettes on the balcony one or two days prior to the fire, but not on the date of the fire.  FBI agent Michael Siegling maintained he always extinguished his cigarettes in a water-filled Styrofoam cup. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, Plaintiff's Rule 26(a)(2) Disclosure,

Exhibit 3, Written statement of Michael K. Siegling, YEDLA000917-YEDLA000918).

EFI's fire investigator Roderick S. "Rod" Williams conducted a scene examination. The examination included destructive disassembly of electrical wiring and debris, and it occurred in the alleged area of fire origin, on the second floor balcony of Room 2207. The wiring and debris were discarded at the scene without regards to further competent laboratory and forensic examinations. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59)

The field examination of electrical wiring and fixtures is a task best deferred to electrical engineers in a competent forensic laboratory. The conscious abandonment of evidence by EFI seriously deprived third parties' ability to pursue alternative causation as to potential sources of ignition through electrical failures or malfunctions. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59)

Although Acadia's insurance adjuster recognized early in his investigation that the fire could create a subrogation claim, Acadia failed to notify the United States of America that it would be a target. Furthermore, investigators for the United States, as an interested party in the fire scene examination, were unable to investigate the scene. Acadia's adjuster, who was also responsible for the salvage,

allowed the building to be repaired, thus destroying all of the physical evidence abandoned by EFI. The evidence is clear that Acadia's adjuster did not take any affirmative steps to protect the evidence. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 46-49; 72-76).

The EFI fire investigator also had a responsibility to recognize his role to preserve evidence he examined, avoid destructive disassembly, and minimize potential for spoliation of evidence. He also had a responsibility to recognize and notify his client of potential interested parties, temporarily cease his scene investigation, protect the scene, and await further instructions for later joint inspections of the scene. Interested parties in this case would have included, but not be limited to, the United States, the manufacturers of lighting and electrical equipment, and persons responsible for past renovations. The evidence is clear that EFI's investigator did not take any affirmative steps to protect the evidence. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-54; 56-59)

On June 3, 2011, the evidentiary value of the electrical wiring in walls and lighting fixtures became clearly significant. The wiring and lighting were found to be potential sources of ignition and thus were improper and dangerous installations throughout the entire Yedla motel complex. During a June 3, 2011, routine permit

inspection by the City of Huntsville Codes Enforcement, the inspectors found serious fire, electrical, and building code violations throughout the entire Yedla motel complex (Buildings 1, 2, and 3). These electrical violations included, for example, incorrectly installed lighting fixtures, open electrical splices in the walls of all of the occupied rooms, and open slices in electrical boxes wallpapered over. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, Exhibit 10, City of Huntsville Fire, Electrical, and Building Inspection Reports)

    The investigative findings of the City of Huntsville Codes Enforcement officials showed that significant codes violations existed in all of the Yedla buildings, but were not detected the evening of the fire or immediately thereafter by the fire or other inspectors. There is no mention of findings of code violations by the City of Huntsville Electrical Inspector Doug Smith. Mr. Smith was called out to rule out any electrical malfunctions and/or electrical components as the cause of the fire. Mr. Smith inspected electrical panels, electrical wiring connected to a wall hung light fixture, and concluding that none of these caused the fire. However, he did not note the very obvious violations which were later found by City of Huntsville Codes Enforcement officials. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59).

Both the HFD and EFI's fire investigators and the Electrical Inspector failed to note in their reports the discovery of fire code violations. However, based upon the June 3, 2011 findings, it is reasonable to deduce that the HFD and EFI investigators along with Electrical Inspector Smith either did not take the time to thoroughly inspect the property or they simply lacked the prerequisite knowledge of how to conduct proper codes assessments. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59).

On September 23, 2010, Plaintiff directed its claim service to investigate the fire and *"[t]horoughly address subrogation and salvage."* (Emphasis added) Plaintiff was looking for potential litigants for recovery of fire losses on the very day its experts began their investigations. Defendant was not given notice of a claim against it until August of 2012, almost two years after the fire. The first notice came when Plaintiff submitted its Administrative Claim for damages totaling $1,119,536.93 under the Federal Tort Claims Act, ("FTCA") 28 U.S.C. §§ 1346(b)(1) and 2671- 2680. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31; 46-48; Exhibit 4, YEDLA 000919-000920; Government Exhibit B, Declaration of Lori Lee Holland, FBI Supervisory Paralegal Specialist).

On May 13, 2013, attorneys for Acadia followed up their claim by filing the instant lawsuit against the United States and Michael Siegling. Since the filing of the lawsuit, Michael Siegling has been dismissed as a Defendant, and the matter is now pending only as to the claims against the United States of America. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31; 46-48)

The Defendant's fire causation expert, David J. Icove, Ph.D., P.E., is an experienced, credentialed, and published expert in the field of forensic fire scene reconstruction and analysis, professional standards of care, and spoliation of evidence. His expert testimony record include appearances before U.S. Congressional committees seeking guidance and recommended legislation in arson, bombing, and other violent crimes. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 5-11) Dr. Icove's professional opinion in this case is that the investigations conducted by Investigator Daniel Wilkerson (City of Huntsville Fire Department) and Investigator Roderick Williams (EFI Global, Inc.) are not the product of reliable scientific principles and methods; are based upon insufficient facts or data; fail to reliably apply the proper principles and methods of forensic fire investigation to the facts of this case; and fail to meet the generally accepted standard of care for conducting a proper and reliable scientific fire investigation as

set forth in *NFPA 921 (*2014 Edition), *NFPA 1033* (2014 Edition), and all other recognized professional standards for conducting a proper fire investigation. These failings defeat the validity and reliability of both Investigators Wilkerson's and Williams' opinions rendered in this case. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 75-76).

## II.   Defendant's Response to Plaintiff's Disputed Facts

As to paragraph1, Defendant responds to Plaintiff's assertions by showing the same foregoing narrative and relevant citations to evidence contained in section I, *supra*.

## III. ARGUMENT AND CITATION OF AUTHORITIES

**1.   The Defendant Asserts There Was Important Evidence to Collect From the Area of Origin of the Fire and That Plaintiff's Defined Area of Origin Was Too Restrictive.**

The Defendant contends that Plaintiff's expert should have saved "evidence" from the fire scene. The Plaintiff incorrectly states that there were no electrical components, wiring, or equipment found in the area of origin of the fire scene. In fact, there were numerous several items of evidence on the balcony where HFD and EFI stated the fire originated. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31;

46-48, 70-72) Potential relevant artifact evidence generated by the fire included arc mapping of energized connectors and fixtures. *Id*.

The Defendant also asserts that EFI's "hide-the-ball" approach effectively discarded evidence. Assuming that HFD and EFI fire investigators correctly located the fire starting on the second floor balcony of Room 2207, the entire balcony of Room 2207 must be considered to be the area of fire origin. Thus, all debris on the second balcony would be considered evidence. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31; 46-48; 64-70) (*NFPA 921*, 2014 Edition, pt. 3.3.11, defines the "*area of origin*" as: "*A structure, part of a structure, or general geographic location within a fire scene, in which the 'point of origin' of a fire or explosion is reasonably believed to be located.*"

In particular, EFI excludes in its evaluation the existence and potential source of ignition of the lighting fixture and electrical wiring, although these items were examined, destructively disassembled, and discarded. This "hide- the-ball" approach to fire investigation is professionally frowned upon since it prevents other interested parties in obtaining the same evidentiary value from that evidence. There are many times that laboratories perform careful forensic examination of this evidence. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31; 40-48; 49-59)

The Defendant further asserts that incorrectly installed electrical wiring and lighting fixtures were in existence at the time of the fire. During a June 3, 2011 routine permit inspection by the City of Huntsville Codes Enforcement, inspectors found serious fire, electrical, and building codes violations common throughout the entire Yedla motel complex (Buildings 1, 2, and 3). These electrical violations included, for example, incorrectly installed lighting fixtures, open electrical splices in the walls of all of the occupied rooms, and open slices in electrical boxes wallpapered over. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59)

It should be specifically noted that a photograph from Room 2207 (FBI Agent Seigling's room) taken by EFI shows a telephone wire running underneath the carpet, an obvious electrical code violation.



**Figure 1.** Photo from Room 2207 (Michael K. Siegling's room) of a telephone junction box with cable running from under the carpet, behind the

baseboard, up the face of the wall, and into the junction box. (YEDLA003042). This same electrical code violation of "open wiring" and "Telephone cable run under carpet from wall to wall In rooms" was cited by the City of Huntsville Codes Enforcement, inspectors on June 3, 2011, in Buildings 1, 2, and 3. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachment, Exhibit 10; Building 1 (FBI000126), Building 2 (FBI000119), and Building 3 (FBI000118).)

    The photographs taken by EFI clearly (Figure 2, below) show evidence remaining in the form of fire debris, an electrical lighting fixture, and a self-documented destructive examination of the evidence within the area of fire origin. This evidence should have been documented, photographed, and secured. No evidence should have been subject to destructive examinations. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59).




**Figure 2.** Remains of the exterior electrical lighting fixture on balcony of Room 2207 (left, YEDLA003053). Self-documented destructive examination of electrical evidence of unknown origin from the fire scene. (right, YEDLA003053)

Generally, in fire investigations, arc mapping itself is significant evidence. The Plaintiff incorrectly assumes that while activities such as product retention and arc mapping are certainly appropriate and necessary in some fire scenes, they are not required in every investigation. The Plaintiff also assumes that the Yedla fire was not a complex scene and would not require physical evidence be removed and processed. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59; 70-72) *(NFPA 921*, 2014 Edition, pt. 3.3.8, recommends the use of *arc mapping* since it is: "*The systematic evaluation of the electrical circuit configuration, spatial relationship of the circuit components, and identification of electrical arc sites to assist in the* **identification of the area of origin** *and analysis of the fire's spread.*" (emphasis added).

It should be noted that this fire may actually have been a products liability case. The Plaintiff incorrectly assumes that the Yedla motel fire was not caused by a defective product, and therefore collection and testing would be required to determine whether a defect in the product existed and caused the fire. Unfortunately, since EFI discarded the evidence and Acadia's adjuster allowed the

salvage to be disposed of, no one will never know the true nature of this fire. The June 3, 2011, permit inspection by the City of Huntsville Codes Enforcement revealed that numerous electrical violations existed in each one of the Yedla motel buildings, incorrectly installed lighting fixtures, open electrical splices in the walls of all of the occupied rooms, and open slices in electrical boxes wallpapered over. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59) This is ample evidence of other potential causes of the fire.

    It must be emphasized that Plaintiff's investigators, claims adjusters, and legal counsel should have been aware of the spoliation potential. Both parties agree that the prevailing professional standards include National Fire Protection Association (NFPA) "Guide for Fire and Explosion Investigations" (*NFPA 921*) and the "Standard for Professional Qualifications for Fire Investigator" (*NFPA 1033*). Fire investigators, insurance claims personnel, and insurance legal counsels are routinely advised through *NFPA 921* and *NFPA 1033* of their responsibility to recognize and minimize the potential for spoliation by halting fire scene examinations pending the proper notification and participation of interested parties. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 38-59)

Although both parties agree in this case that NFPA 921 establishes the recognized standards for fire investigation, the Defendant disputes whether *NFPA 921* was properly applied in this matter by the Plaintiff's experts, particularly with the issue of spoliation of evidence. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 49-54; 72-76)

**2.     The Defendant Does Have the Burden of Proof in this Matter and Evidence Should Have Been Documented, Photographed, and Preserved**.

The Defendant disagrees with Plaintiff's assertion that evidence need not have been kept and/or preserved since the Plaintiff has the burden of proof in this case. This is a flawed approach as the diversity of independent parallel investigations often reveals the true origin, cause, development, and responsibility for the fire. Parallel investigations rely upon unspoiled evidence to seek out the answer. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 31; 46-48; 64-70)

In *Story v. Raj Properties, Inc.*, 909 So. 2d 797, 802-803 (Ala. 2005), the Alabama Supreme Court set out the movant's burden to show spoliation and applied five factors in analyzing spoliation of evidence: (1) the importance of the evidence destroyed, (2) the culpability of the offending party, (3) fundamental fairness, (4) alternative sources of the information, and (5) the possible

effectiveness of other sanctions less severe than dismissal.  The Court concluded that "[t]here was evidence to support a conclusion by the trial court that Story was culpable in preventing the EIFS defendants from inspecting the house." *Id*. at 804

### 3. There Is Evidence That the Plaintiff's Destruction of Evidence was at Least Negligent or "Culpable".

The Plaintiff's supervision of the EFI investigation, allowing for the disposal of scene evidence, and failure to notify even one interested party was at least negligent or a basis for finding spoliation "culpability." *See Story v. Raj Properties, Inc.*, *supra*, at 804.

It should be noted that: (1) Acadia and EFI had the means to track down and notify the United States that it was an interested party before the scene was destroyed; (2) Acadia and EFI failed to document, collect, and preserve physical evidence that may have posed alternative and plausible hypotheses for the origin and cause of the fire; (3) Acadia and EFI showed no appreciation that a subrogation target would want the opportunity to inspect the scene before it was disturbed; and (4) there is no proof independent third-party investigated the fire, its origin, and its cause, thus, the only record that existed was created by the agents retained by Acadia. This loss of evidence is so prejudicial that it substantially denies the Defendant the ability to defend the claim.

Acadia's conduct was also "culpable" because in its supervision of the investigation and later salvage operations, it did not take any steps to preserve the fire scene or to seasonably notify even one potential subrogation target. This action could only be characterized as negligent or "culpable". The evidence is clear that Acadia and EFI's investigator did not take any affirmative steps to protect any evidence.

Moreover, the evidence of spoliation has irreparably prejudiced the Defendant's case. Specifically, if the Defendant had been put on reasonable notice of the fire, it would have been able to conduct a parallel and coordinated investigation to search the debris of the fire for the critical evidence that Acadia failed to find or claimed did not exist. In addition, the destruction of the fire scene deprived the Defendant of the opportunity to establish defenses such as the origin and cause of the fire may have been in an area above the balcony, or that the fire may have been caused one or more of the serious electrical problems that existed throughout the Yedla motel complex.

### 4.     Defendant Does Not Need to Show That Plaintiff Acted in Bad Faith but Only That Plaintiff is "Culpable."

The Plaintiff asserts that Defendant must show that Plaintiff acted in bad faith in order to prevail in Defendant's motion raising spoliation. However, "[the Eleventh Circuit] does not require a showing of *malice* in order to find bad faith,

[but] mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Silver v. Countrywide Home Loans, Inc.*, 483 F. App'x 568, 572 (11th Cir. 2012). (Emphasis added)

Under Alabama law, as demonstrated by *Story v. Raj Properties, Inc.*, *supra*, the spoliator's conduct must be found to be "culpable". *Id*. at 804.

The Eleventh Circuit has affirmed the imposition of sanctions short of dismissal where the plaintiff was the more "culpable" party and caused the defendant substantial prejudice. *Graff v. Baja Marine Corp.,* No. 08–10413, 2009 WL 226308 at *2 (11th Cir. Feb. 2, 2009). *See also Continental Casualty Company, a/s/o Downey Trees v. Peterson Pacific Corp*., Case No. 2:08-cv-0240-WCO, filed May 21, 2010 (U.S. District Court for the Northern District of Georgia, Gainesville Division)(defendant was unable to conduct further testing to rebut plaintiff expert's theories regarding cause and origin of fire, and therefore court excluded any and all testimony by plaintiff's expert). *See also Erie Insurance Exchange v. Davenport Insulation, Inc*., 659 F. Supp. 2d 701 (2009)(plaintiff's failure to notify defendant of fire scene before it was destroyed was negligent and justified a finding of spoliation and case dismissal, in part because defendant was deprived of the opportunity to show that he fire may have been caused by an electrical problem).

The Plaintiff's conduct, as demonstrated hereinabove, rises to the level of "culpable," and the Plaintiff has caused the Defendant substantial prejudice.

### III.   CONCLUSION

WHEREFORE, the Defendant respectfully moves the Court for an order dismissing this case pursuant to Rule 37 or granting summary judgment pursuant to Rule 56. In the alternative, Defendant is entitled to a negative inference against Plaintiff. The inference would be that the electrical wiring, fixtures, and furnishings at the fire scene were not preserved for inspection by Plaintiff's experts and would have provided favorable evidence to Defendant. Furthermore, the Plaintiff should not be permitted to produce any expert testimony on the cause and origin of the fire.

Respectfully submitted,

JOYCE WHITE VANCE
UNITED STATES ATTORNEY

<u>**s/ Jack Hood**</u>
Jack Hood
Assistant United States Attorney
U.S. Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

<u>Of Counsel</u>:

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>April 14, 2014</u>, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

> Carl L. Evans, Esq.
> Paul A. Grinke, Esq.
> Attorneys for Plaintiff
> McCathern, P.L.L.C.
> Regency Plaza
> 3710 Rawlins Street
> Suite 1600
> Dallas, TX  75219
> Phone: 214/741-2662
> Facsimile:  214/741-4717
> Email: cevans@mccathernlaw.com
>              pgrinke@mccathernlaw.com

> **s/ Jack Hood**
> Jack Hood
> Assistant United States Attorney