FILED

2014 Jun-26  AM 10:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>NORTHEASTERN DIVISION</u>

| | |
|---|---|
| ACADIA INSURANCE CO., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 5:13-CV-00895-CLS |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DAVID J. ICOVE**

### <u>Table of Contents</u>

I.   INTRODUCTION ..................................................................................2

II.  AUTHORITIES ....................................................................................4

  A.  Standard of Admissibility Pursuant to *Daubert* and Fed. R. Evid. 702...........4

  B.  Prevailing Standards of Professional Care in the Field of Fire Investigation..4

III. EXPERT'S BACKGROUND AND QUALIFICATIONS ...........................6

IV.  ARGUMENTS ...................................................................................10

  A.  The Expert Opinions by Dr. David J. Icove Are Relevant.............................10

  B.  Dr. Icove's Opinions Regarding the Reliability of Mr. Wilkerson's and Mr. Williams' Methodologies and Opinions are Relevant........................................11

  C.  Dr. Icove's Opinions as to a Fire Investigator's Potential Liability for Spoliation of Evidence Are Relevant ................................................................13

  D.  Dr. Icove's Opinions Regarding Mr. Williams' Qualifications Are Relevant ............................................................................................................15

E.  Dr. Icove's Opinions Regarding Causation Are Not Speculative Based Upon His Report and Newly Revealed Sworn Testimonies ..........................................16

V.  CONCLUSION..................................................................................................20

## I.    INTRODUCTION

Defendant, United States of America, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama and Jack Hood, Assistant U.S. Attorney, files this Memorandum in Opposition to the Plaintiff's Motion (see Doc. 42)[1], to exclude the testimony of the Defendant's expert witness, David J. Icove, Ph.D., P.E., under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), and its progeny.

Plaintiff Acadia Insurance Co. ("Acadia") commenced this action on May 13, 2013 by filing a $1 million subrogation lawsuit against the United States of America and Federal Bureau of Investigation (FBI) Special Agent Michael K. Siegling, a government employee. (Siegling has subsequently been dismissed as a party defendant in this matter.) This action alleges liability for negligence in causing a fire on September 22, 2010 that substantially damaged Building 2 of the Country Inn and Suites, 4880 University Drive in Huntsville, Alabama. Acadia provided insurance coverage for Yedla Management and Hospitality Enterprises of

---

[1] Reference to a document number, ["Doc. __"], refers to the number assigned to each document as it is designated on the Clerk's docket for this case.

Huntsville, Inc. ("Yedla"), the owner and operator of the hotel. Insurance proceeds were paid by Acadia to Yedla for the fire loss damages and this subrogation action followed.

Acadia asserts that the fire started on the decking of the second floor balcony of Room 2207 as the result of a discarded cigarette. Acadia alleges the occupant of that room, Mr. Siegling, is the person who discarded the cigarette and caused the fire. Acadia's allegations in this case are set out in the deposition testimony (Doc. 29-1) of Daniel R. Wilkerson, a Fire Prevention Officer with the Huntsville Fire Department ("Wilkerson"), and a sworn declaration (Doc. 26-1) by Roderick S. "Rod" Williams ("Williams") of EFI Global, Inc. ("EFI"), a private forensic investigative firm which assists in identifying subrogation claims and was hired by Acadia in this case to pursue a subrogation recovery.

An undisputable fact in this case is that EFI's investigator, Williams, conducted a destructive fire scene investigation and allowed spoliation[2] to occur without instructing his client to notify other interested parties who might become targets of Acadia's anticipated subrogation claim. Mr. Williams' actions constituting spoliation included, *inter alia*, the destructive disassembly of an electrical lighting fixture and wiring on the deck of Room 2207 for the purpose of

---

[2] Per *NFPA 921* (2014 Edition, pt. 3.3.167) "spoliation" is defined as the "loss, destruction, or material alteration of an object or document that is evidence or potential evidence in a legal proceeding by one who has the responsibility for its preservation."

eliminating those items as potential sources of ignition for the fire. Mr. Williams examined this evidence and apparently satisfied himself that those items were not a factor in causing the fire. Without any consideration of the possibility other forensic experts might disagree or might require analysis and testing of the evidence by a forensic laboratory in order to determine if it was a factor in starting the fire, Williams simply discarded the wiring and debris at the scene without making any attempt to preserve and maintain this critical evidence for the benefit of others who might take issue with his conclusion that they were not a factor in causing the fire. (Doc. 21, Ex. A, pp. 40-45; 49-54; 56-59).

## II.   AUTHORITIES

### A.   Standard of Admissibility Pursuant to *Daubert* and Rule 702

The legal standard for the admissibility of expert testimony in this case is set forth in the United States Supreme Court cases of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), along with other cited authorities consistent with those decisions.

### B.   Standards of Professional Care in the Field of Fire Investigation

Both the Plaintiff and Defendant acknowledge the prevailing industry standards of care for forensic fire investigations are set out in the 2014 Editions of the National Fire Protection Association (NFPA) publications "*Guide for Fire and*

Explosion Investigations" (*NFPA 921*[3]) (Doc. 29-6) and "*Standard for Professional Qualifications for Fire Investigator*" (*NFPA 1033*[4]) (Doc. 29-7).

*NFPA 921* has long been recognized in published court decisions as the generally accepted methodology and acknowledged standard of care for conducting a science-based forensic investigation and analysis of fire and explosion incidents consistent with the mandates of *Daubert* and Rule 702. *See, Royal Ins. Co. of Am. v. Joseph Daniel Constr. Co.*, 208 F. Supp. 2d 423, 426-27 (S.D.N.Y. 2002) (citing *Travelers Prop. & Cas. Corp. v. GE*, 150 F. Supp. 2d 360, 366 (D. Conn. 2001)) (recognizing that *NFPA 921* is a "peer reviewed and generally accepted standard in the fire investigation community"); *Ledbetter v. Blair Corp.*, 2012 WL 2464000 at *12 (M. D. Ala.) ("The parties do not dispute that *NFPA 921* is an accepted methodology for the investigation and analysis of fires and explosions."); *Turner v. Liberty Mut. Fire Ins. Co.*, 2007 WL 2713062 at *3 (N. D. Ohio) ("The National Fire Protection Association 921 Guide for Fire and Explosion Investigations ('*NFPA 921*') is a 'recognized guide for assessing the reliability of expert testimony in fire investigations.'") (citing *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 849 (N. D. Ohio 2004)); *Travelers Indem.*

---

[3] NFPA 921. (2014 Edition). *NFPA 921 – Guide for Fire and Explosion Investigations*, National Fire Protection Association, Quincy, MA.

[4] NFPA 1033 (2014 Edition), *NFPA 1033 – Standard for Professional Qualifications for Fire Investigator*, National Fire Protection Association, Quincy, MA.

*Co. v. Ind. Paper & Packaging Corp*., 2006 WL 1788967 at *4 (E. D. Tenn.) ("The Court recognizes that *NFPA 921* is a peer reviewed and generally accepted standard in the fire investigation community.").

### III.   DR. ICOVE'S BACKGROUND AND EXPERT QUALIFICATIONS

On October 25, 2013, the Defendant United States retained the services of David J. Icove, Ph.D., P.E., a court-recognized and pre-eminent expert in the field of forensic fire investigation who is a Registered Professional Engineer licensed to practice in the State of Alabama. His professional services were retained to conduct a technical peer review of this case; provide a forensic engineering analysis of the fire sequence; assess the validity and accuracy of the plaintiffs' expert reports, opinions, and methodology under the professional standards of the applicable scientific field; and to provide expert and rebuttal testimony, as needed.

He is a court-recognized expert witness in the fields of forensic fire engineering and fire scene analysis; fire origin and cause investigation; and forensic fire scene reconstruction. He has been qualified and provided testimony as an expert witness in federal, state, and local court proceedings in both civil and criminal matters, including three appearances before United States Congressional Committees developing legislative initiatives on the crimes of arson and bombing.

His formal education includes a B.S. degree in Fire Protection Engineering from the University of Maryland, along with B.S. and M.S. degrees in Electrical

Engineering and a Ph.D. in Engineering Science and Mechanics from the University of Tennessee.

He has been recognized by his peers as a *Fellow* in the Society of Fire Protection Engineers and is a *Certified Fire and Explosion Investigator* (CFEI) by the National Association of Fire Investigators (NAFI). His background includes over 40 years of experience in the investigation of fire and explosion incidents, including 27 years of public service as a full-time law enforcement investigator at the federal, state, and local levels. He is the Founder and Principal Member of Icove & Associates, LLC, a consulting engineering practice in Knoxville, Tennessee specializing in forensic fire investigation and related activities nationwide and internationally.

He is a faculty member at three universities: He holds an Endowed Chair as UL Professor of Practice in the Department of Electrical Engineering and Computer Science at the University of Tennessee at its Knoxville, Tennessee campus; he teaches graduate courses as an Adjunct Faculty member for the Professional Master of Science program in the Department of Fire Protection Engineering at the University of Maryland in College Park, Maryland; and is an instructor at the University of New Haven in the Henry C. Lee College of Criminal Justice and Forensic Sciences in New Haven, Connecticut.

He is a frequent lecturer and instructor nationally and internationally on the methodologies, protocols, and scientific standards for investigating the origin, cause, and development of fires and explosions. He is the author and co-author of several leading peer reviewed textbooks, numerous textbook chapters and journal articles, and has authored three of the leading treatises published in the field of forensic fire investigation.[5,6,7]

Since its inception in 1992, he has participated and served as a Principal Member of the National Fire Protection Association's *Technical Committee on Fire and Explosion Investigations*, which is responsible for the publication of *NFPA 921*, widely known and universally accepted in the forensic fire investigation and reconstruction field. The role of this committee includes providing peer reviewed standards of professional conduct for undertaking scientific fire and explosion investigations and for rendering expert opinions as to the origin, cause, development, responsibility, and prevention of such incidents.

---

[5] DeHaan, J. D., & Icove, D. J. 2012. *Kirk's Fire Investigation* (7th Edition). Upper Saddle River, NJ: Pearson-Prentice Hall.

[6] Icove, D. J., DeHaan, J. D., & Haynes, G. A. 2013. *Forensic Fire Scene Reconstruction* (3rd Edition). Upper Saddle River, N.J.: Pearson/Prentice Hall.

[7] Icove, D. J., Wherry, V. B., & Schroeder, J. D. 1998. *Combating Arson-for-Profit: Advanced Techniques for Investigators* (Second Edition). Columbus, OH: Battelle Press.

He serves on several national and international technical standards-making committees including the *ASTM International Committee E05 on Fire Standards*, *Committee E30 on Forensic Sciences*, and *Committee E58 on Forensic Engineering*.

Dr. Icove visited the site of the fire incident on February 20, 2014 before completing and submitting a formal expert report under *Federal Rules of Civil Procedure, Rule 26(a)(2)(B)*. Specifically, this report: (1) performed technical peer reviews of written reports of the Plaintiff's expert witnesses; (2) determined whether the expert opinions in those reports adequately identify, document, validate  and verify their findings as to the origin, cause, and effects of this fire; and (3) assessed whether the investigations conducted by the Plaintiff's expert witnesses establish relevance and reliability in their methodology, the application of their methodology to the facts and data, and the conclusions derived from their investigations.

In his analysis of this case, Dr. Icove used the National Fire Protection Association (NFPA) "*Guide for Fire and Explosion Investigations*" (*NFPA 921*), the "*Standard for Professional Qualifications for Fire Investigator*" (*NFPA 1033*), and other recognized and generally accepted standards and authoritative sources in the field.

# IV.   ARGUMENTS

## A.   The Expert Opinions by Dr. Icove Are Relevant

The Plaintiff argues that the opinions offered by Defendant's expert witness, David J. Icove, Ph.D., P.E., a Registered Fire Protection Engineer in the State of Alabama, are not relevant since the only pertinent issue in this case is the origin and cause of the fire.

The Defendant strongly disagrees with this argument, as the issues in this case are much broader. The Defendant retained Dr. Icove in this case for several of those issues, which included: (1) conducting a forensic fire engineering analysis of this case; (2) assessing whether the Plaintiff's experts met the professional standards of care per *NFPA 921*, *NFPA 1033*, and related expert treatises; (3) offering expert testimony during preliminary court hearings; and (4) serving as a direct and/or rebuttal trial witness as needed.

Furthermore, the Plaintiff has had ample opportunity to explore the relevancy of Dr. Icove's various expert opinions since the filing of his initial Rule 26 report. His scheduled deposition on May 30, 2014 was cancelled by the Plaintiff and has never been rescheduled.

**B.      Dr. Icove's Opinions Regarding the Reliability of Mr. Wilkerson's and Mr. Williams' Methodologies and Opinions are Relevant**

Dr. Icove routinely serves as an expert witness in both civil and criminal litigation by examining fire scenes, attending evidence examinations, conducting peer reviews of other experts' reports, offering expert testimony, and evaluating the impact of spoliation on complex cases. He has provided an extensive expert report which summarizes the facts of this case, the applicable professional standards of care, and provides detailed peer reviews of both the public and private investigations in this matter. He has also attended several of the depositions in this case.

Dr. Icove's peer review of Mr. Wilkerson's public and Mr. Williams' private investigations, upon which the Plaintiff bases its case, includes an extensive *Fed. R. Evid. Rule 702* analysis of the subject fire as to: (1) the sufficiency of facts and data collected; (2) the reliability of the principles and methodologies used; and (3) a determination of whether the investigators reliably and correctly applied the proper data, principles, and methods to the facts of this case. This also included a detailed analysis of the impact of spoliation in this case and how it prevented the Defendant from assessing critical evidence improperly discarded by the Plaintiff, thereby preventing Defendant from developing and evaluating alternative hypotheses for the fire under the Scientific Method which underlies all properly conducted forensic fire investigations. (Doc. 21, Ex. A, pp. 38-75).

Dr. Icove's opinions as to the reliability of both Mr. Wilkerson's and Mr. Williams' investigations are that they both failed to meet many of the professional standards of care in conducting witness interviews, collecting and preserving evidence, and documenting their conclusions. They also both failed to apply the Scientific Method to identify, consider, and test alternative hypotheses for the fire. Dr. Icove in his report noted several plausible hypotheses not adequately explored by either investigator. (Doc. 21, Ex. A, pp. 3-5; 73-77)

Expert opinions as to methodologies and opinions are routinely offered in fire litigation cases. Dr. Icove routinely provides written and testimonial expert opinions as to the reliability of fire investigators' methodologies and opinions[8] as well as the impact of spoliation of evidence.[9] Dr. Icove's opinions as to the reliability of Mr. Wilkerson's and Mr. Williams' methodologies and opinions are clearly relevant in this case, since they form the very foundation for Plaintiff's

---

[8] In the case of *State of Tennessee V. Reginald Fowler*, No. E2009-00293-CCA-R3-CD, Court Of Criminal Appeals Of Tennessee, At Knoxville, 2010 Tenn. Crim. App. Lexis 807, Dr. Icove conducted a peer review of both the Plaintiff's and Defendant's investigations and provided expert testimony in rebuttal as to his findings and conclusions.

[9] In the case of *Continental Casualty Company, a/s/o Downey Trees v. Peterson Pacific Corp.*, Case No. 2:08-cv-0240-WCO, Doc. 95, filed August 17, 2010, U.S. District Court for the Northern District of Georgia, Gainesville Division, Dr. Icove provided an expert report on the peer review of both the Plaintiff's and Defendant's experts' findings and conclusions.

proposed expert testimony in this case and are the opinions upon which this case has been filed.

### C. Dr. Icove's Opinions as to a Fire Investigator's Potential Liability for Spoliation of Evidence Are Relevant

Fire investigators worldwide are strongly cautioned in *NFPA 921*, *NFPA 1033*, and other expert treatises that their actions or omissions regarding the proper handling, documentation, and preservation of physical evidence at a fire scene may lead to potential civil or criminal liability, particularly if spoliation of evidence occurs.[10] (Doc. 21, pp. 54-56).

When Mr. Williams processed the fire scene without waiting for the proper notification and participation of potential interested parties, and then performed destructive examinations of critical evidence to purportedly eliminate them as potential sources of ignition, and then discarded this evidence so that no other forensic investigator could examine them *in situ*, he violated all recognized standards of care for forensic investigations. In addition to causing irreparable

---

[10] *NFPA 921* (2014 Edition, pt. 12.3.5.3) states "***Criminal and civil courts have applied various remedies when there has been spoliation of evidence***. *Remedies employed by the courts may include discovery sanctions, monetary sanctions, application of evidentiary inferences, limitations under the rules of evidence, exclusion of expert testimony, dismissal of a claim or defense, independent tort actions for the intentional or negligent destruction of evidence, and even prosecution under criminal statutes relating to obstruction of justice. **Investigators should conduct their investigations so as to minimize the loss or destruction of evidence and thereby to minimize allegations of spoliation**.*" (*emphasis added*)

harm to his client's case in this action, he may have placed himself, his firm, and his client in harm's way for potential liability arising out of this case.

Furthermore, the designated technical peer reviewer on Mr. Williams' initial expert report dated October 10, 2010 (YEDLA002942-002989), but not on his final declaration (Doc. 26-1), is Mr. E. Metts Hardy, Regional Vice President of EFI. Mr. Hardy has recently offered an expert affidavit (Doc. 21-17) regarding the risk private investigation firms face for the mishandling, loss, or spoliation of evidence in becoming targets of lawsuits or claims against their professional liability insurance carriers.

Furthermore, engineering firms and their employees are being cautioned that if a party cannot pursue a claim because of spoliation of evidence, they may in turn file a lawsuit against the employee who committed the spoliation. The lawsuit would attempt to recover the damages that may have been recovered from the responsible party if the evidence had been preserved.[11]

Clearly, Dr. Icove's opinions regarding a fire investigator's potential liability for spoliation of evidence are relevant in this case because they are based upon standards of professional care applicable to the fire investigation field. These

---

[11] See R.A. Dean (2004). *Litigation: Legal Issues Involved in Failure Analysis*, Journal of Failure Analysis and Prevention, Volume 4(2), April 2004, pp. 7-16.

standards of professional care are detailed in *NFPA 921*, *NFPA 1033*, and are recognized in sworn testimony by EFI's senior supervisory management.

### D.   Dr. Icove's Opinions Regarding Mr. Williams' Qualifications Are Relevant

In the field of fire investigation, as in virtually all other professional fields, "*Every day is test day.*" The Plaintiff's statement that Dr. Icove's expert report observes that the evaluation of this case does not directly concern the knowledge, skill, experience, training, and education of the investigator and is not material to the analysis is indeed, correct. But not for the reasons presumed by Plaintiff.

The fact is, no matter how well trained, educated, and skilled a professional may be, every day is still "*test day*" and mistakes are made. A renowned surgeon makes the wrong incision, a skilled dentist misjudges the depth of a cavity, or a highly qualified fire investigator fails to ask the right questions during an interview-and mistakes are made.

Dr. Icove's analysis in this case is whether or not both Mr. Williams, based upon his October 12, 2010 and February 18, 2014 reports, correctly applied the requisite knowledge and skills to investigating *this* fire scene. The core question was this – "why did Mr. Williams, given the opportunity to provide a current (and accurate) curriculum vitae (CV) in his 2014 report, not update his CV to reflect his most recent training and education so that Dr. Icove could make this evaluation?"

Therefore, Dr. Icove's assessment of Mr. Williams' non-disclosure of his most recent education and training was simply due diligence in his evaluation. Again, the Plaintiff had the opportunity to ask Dr. Icove about this in order to clarify the issue during his scheduled deposition on May 30, 2014 and then chose to simply cancel it.

### E.   Dr. Icove's Opinions Regarding Causation Are Not Speculative Based Upon His Report and Newly Revealed Sworn Testimony

The Plaintiff incorrectly argues that Dr. Icove failed to proffer any opinions or hypotheses regarding the fire's origin and cause in his March 19, 2014 expert report. Not only did Dr. Icove offer several hypotheses regarding the potential origin and cause for the fire, but newly revealed testimonial evidence through the depositions of witnesses in this case has bolstered one of these hypotheses – that the fire originated on the third level and propagated down to the second level.

In Dr. Icove's report, he offered two hypotheses regarding the ***origin*** of the fire which were not thoroughly addressed until additional testimony revealed details not previously known to anyone in this case (Doc. 21, Ex. A, p. 39).

- **Hypothesis #1 – A fire originating in the electrical wiring and exterior lamp fixture on the second floor deck of Room 2207.**

The first hypothesis considered by Dr. Icove was the potential for a fire to originate near or within the electrical wiring leading to the outside lighting fixture of the deck from Room 2207. Although both Mr. Wilkerson and Mr. Williams

disregarded this fixture as a potential source of ignition, both spent a considerable amount of time examining this hypothesis.

Mr. Wilkerson asked an electrical inspector to examine the fixture, and Mr. Williams took the time to remove it from the wall, disassemble it, destructively cut loose the wiring, and then…discarded it. Although both investigators considered this hypothesis, they both stated it was outside the area of fire origin, and thus could not have started the fire.

Due to the improper destructive disassembly and subsequent discarding of this evidence, which constitutes classic spoliation, this hypothesis can never be definitively pursued now.

- **Hypothesis #2 – A fire originated on the third level outside of Room 2307 and then propagated to the second level outside of Room 2207.**

This second hypothesis is backed up by the only eyewitness report on the evening of the fire: from the responding District Fire Chief, Michael D. Dodson, (YEDLA002966). Chief Dodson observed upon arrival that the balconies of the second and third floors (Rooms 2207 and 2307) were completely engulfed in flames. This was known to Mr. Wilkerson, yet he made no mention of it in his written reports.

During the deposition of Mr. Wilkerson, more information was uncovered that he did not record in his investigative narrative regarding the fire. During his

deposition (Exhibit 1, pp. 45, 80), he indicated that fall-down of burning debris from the third level could have ignited the second floor balcony of Room 2207.

More significant testimonial evidence comes from the May 16, 2014 deposition of FBI Special Agent Siegling. After being awakened that evening by someone knocking on his door, Mr. Siegling opened the door to his balcony and saw fire to his left about six feet away. He described the flames as coming down from above at about head-level (Doc. 36-2; pp. 30-31).

*NFPA 921* (2014 Edition, pt. 1.3.2) and *NFPA 1033* (2014 Edition, pt. 4.1.2) both require the use of all elements of the "*Scientific Method*"[12] when investigating a fire. In its application, a broad and virtually limitless number of hypotheses for a fire are examined, evaluated, documented, and ultimately accepted or discarded. The documentation process ensures the integrity of the investigation and the validity of the acceptance or rejection of potential hypotheses.[13]

---

[12] *NFPA 921*, 2014 Edition, pt. 3.3.144, states the **Scientific Method** is "*The systematic pursuit of knowledge involving the recognition and definition of a problem; the collection of data through observation and experimentation; analysis of the data; the formulation, evaluation and testing of a hypothesis; and, when possible, the selection of a final hypothesis.*"

[13] *NFPA 921*, 2014 Edition, pt. 11.3.5.2, states "*Efforts to photograph, document, or preserve evidence should apply not only to evidence relevant to an investigator's opinions, but also to evidence of reasonable **alternate hypotheses that were considered and ruled out**.*" (*emphasis added*).

In cases where, as here, two or more unresolved plausible hypotheses exist, *NFPA 921* (2014 Edition, pts. 19.6.5.1 & 19.7.4) <u>requires</u> that a finding of "undetermined"[14] be made for the fire's cause.

Since all of this evidence predated the scheduled deposition of Dr. Icove for May 30, 2014, the Plaintiff in this case could have explored these hypotheses with him. With the Plaintiff's decision to cancel his deposition, they lost out on Dr. Icove's assessment and analysis of the hypotheses for the origin and cause of the fire and could have asked him to prepare a supplementary report addressing these findings.

Therefore, there is ample support for Dr. Icove's opinion, using accepted professional standards in fire investigation and to a relative degree of engineering certainty, that the cause of this fire should be listed as <u>undetermined</u>. This opinion is not speculative in any manner, since it is based upon well-founded, universally agreed-upon scientific and professional standards.

Dr. Icove's testimony will assist the trier of fact under the applicable *Daubert* and Rule 702 standards, and his expert opinion should be allowed.

---

[14] *NFPA 921*, 2014 Edition, pt. 19.7.4, on undetermined fires states "*The final opinion is only as good as the quality of the data used in reaching that opinion. If the level of certainty of the opinion is only "**possible**" or "**suspected**," the fire cause is unresolved and should be classified as "**undetermined.**" This decision as to the level of certainty in data collected in the investigation or of any hypothesis drawn from an analysis of the data rests with the investigator.*" (*emphasis added*).

# V.   CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that Plaintiff's Motion to Exclude the Testimony of Defendant's Expert, David J. Icove, Ph.D., P.E., be denied.

Respectfully submitted,

JOYCE WHITE VANCE
UNITED STATES ATTORNEY

**s/ Jack Hood**
Jack Hood
Assistant United States Attorney
U.S. Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

Of Counsel:

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Carl L. Evans, Esq.
Paul A. Grinke, Esq.
Attorneys for Plaintiff
McCathern, P.L.L.C.
Regency Plaza
3710 Rawlins Street
Suite 1600
Dallas, TX  75219
Phone: 214/741-2662
Facsimile:  214/741-4717
Email: cevans@mccathernlaw.com
       pgrinke@mccathernlaw.com

**s/ Jack Hood**
Jack Hood
Assistant United States Attorney