# IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ALABAMA
## HUNTSVILLE DIVISION

| | |
|---|---|
| **ACADIA INSURANCE CO.,** § | |
| *Plaintiff,* § | |
| v. § | |
| § | **Cause No.: 5:13-cv-00895-CLS** |
| **UNITED STATES OF AMERICA** § | |
| *Defendant.* § | |
| § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DAVID ICOVE**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Acadia Insurance Co., as Subrogee of Yedla Management Co., Inc. & Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites (hereinafter referred to as "Plaintiff" or "Acadia"), files this Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Exclude the Testimony of Dr. David Icove, (Doc. No. 45), and in support thereof would respectfully show the Court the following:

# I. INTRODUCTION

This is a fire case with a clear area of origin and documented evidence of a rational, logical pattern of fire spread. Defendant wishes to distract the Court from the methodical, scientific approach City of Huntsville Fire Investigator Wilkerson and private fire investigator Williams took in concluding that the origin and cause of this fire was the floor of the northwest corner of the balcony to room 2207, and the cause was carelessly discarded cigarettes. Defendant wants the Court to look anywhere else but the area of origin. It wants the Court to look elsewhere because Defendant cannot dispute the fact that there was simply no electrical wiring, no product, no fixture, and no code violation in the area of origin of the fire.

Rather, Defendant wants the Court to focus on code violations later found inside hotel rooms that did not even burn. It wants the Court to focus on lamp fixtures that were not even consumed in the fire. It wants the Court to focus on the *wording* of an experts *Curriculum Vitae* rather than the established qualifications of the expert. It wants the Court to focus on provisions for potential individual civil liability of fire investigators, provisions that aren't even applicable to the State of Alabama, much less this case.[1] David Icove is Defendant's tool of distraction. There is no question Icove is a very educated and qualified fire investigator, who seems to make a living attacking and criticizing the work of duly

---

[1] Because there was no electrical wiring, no product, no fixture and no code violation in the area of origin, there was no evidence to collect and no spoliation of evidence. This issue has been extensively briefed for the Court. Doc. 26

qualified civil servants and private fire investigators. This does not deem Icove's testimony relevant or admissible. In its Response, Defendant does not cite one case that would allow Icove to testify when his only opinions attack and criticize opposing experts' work. Defendant also failed in its Response to identify one opinion offered by Icove as to the cause and origin of this fire. Instead, Defendant points to hypotheses revised by Icove that have already been considered by Plaintiff's experts. As such, Icove's opinions are irrelevant and should be excluded.

## II. ARGUMENT & AUTHORITIES

### A. Defendant Did Not Establish The Relevance of Icove's Testimony.

At the outset, Defendant seems to suggest Plaintiff (and this Court) should not at this time be entitled to disclosure of all of Icove's opinions because Plaintiff has not deposed Icove. See Doc. 45 p.10, 16, 19. This is inconsistent with Rule 26. Federal Rule of Civil Procedure 26(a)(2)(B) requires disclosure, by written report, of "all" opinions the expert will express. Rule 26(a)(2)(E) and Rule 26(e) require Defendant to supplement that disclosure in a timely manner if the disclosure becomes incomplete. There is no burden on the Plaintiff to depose the expert to learn the expert's opinions. Likewise, there is no requirement in Rule 26 that Plaintiff "ask" Defendant to supplement its expert Disclosures with new opinions, as Defendant suggests. See Doc. 45 p. 19. Indeed, the Plaintiff elected not to bear

the considerable cost of deposing Icove, but instead relies upon his 78 page report. Any opinion or basis therefore that has not been disclosed by Icove in his report should be excluded.

Icove's opinions do nothing more than criticize the work of other experts, and toss up speculative alternative theories. An expert opinion that seeks only to "Monday morning quarterback" the work of other duly qualified experts is not relevant, and should be excluded. The hypotheses Icove raised in his report were indeed considered, tested, and disproved by both Investigator Wilkerson and Mr. Williams. Deposition testimony in this case has established this well, and is addressed in section "E." *infra.*

**B.     Defendant Failed to Establish The Relevance of Icove's Criticism of Plaintiff's Expert.**

In its Response, Defendant writes: "Specifically, [Icove's report]: (1) performed technical peer reviews of written reports of the Plaintiff's expert witnesses; (2) determined whether the expert opinions of those reports adequately identify, document, validate and verify their findings as to the origin, cause, and effects of this fire; and (3) assessed whether the investigations conducted by the Plaintiff's expert witnesses establish relevance and reliability in their methodology, the application of their methodology to the facts and data, and the conclusions derived from their investigations." Doc. 45 p. 9.

This is precisely the testimony that was excluded in *United States v. Zhou*, 06-CR-286 (JAP), 2008 WL 4067103 (D.N.J. Aug. 25, 2008). See Doc. 42 p. 6 for briefing on *Zhou*. As outlined by Defendant above, Icove's report is a criticism of Plaintiff's experts, which is irrelevant. Defendant did not cite one precedent where a court has found "expert" opinion testimony relevant that seeks only to attack and criticize an opposing expert. Instead, Defendant cites two other instances where Icove himself sought to criticize an opposing expert. This is not precedent. Icove's opinions regarding the reliability of Plaintiff's experts should be excluded.

**C.   Defendant Failed To Establish The Relevance Of Individual Liability For Alleged Spoliation.**

Defendant cited no authority to establish relevance to this lawsuit as to whether or not an expert might be subject to individual liability for spoliation of evidence. Even if spoliation occurred in this case—and it did not—whether there might be individual civil liability to City of Huntsville Fire Investigator Wilkerson or private fire investigator Williams is irrelevant. Although the issue of any alleged spoliation has been fully briefed, Defendant alludes to spoliation as a basis to establish Icove's testimony is relevant. Spoliation did not occur, and even if it did, Defendant cites no case law requiring expert testimony to establish spoliation. This is yet another example of Defendant, through Icove, seeking to divert the Court's attention away from the documented area of origin, the burn patterns, the

normal flow of fire upward and out from its point of origin, the witness statements, the physical evidence including the remains of discarded cigarettes directly below the area of origin, and the complete lack of any other potential source of ignition inside the area of origin, including electrical, product, fixture, lightning strike, or code violation.  There was simply no electrical wiring or fixtures within the area of origin to collect.

### D. Defendant Failed To Establish Relevant Opinions Regarding Investigator Wilkerson's and Mr. Williams' Qualifications.

It is unclear from Defendant's Response whether or not Defendant still seeks to offer opinions from Icove regarding the qualifications of Plaintiff's experts.  See Doc. 45 p. 15-16.  Both Investigator Wilkerson and Mr. Williams have the requisite knowledge, education, training, experience, and certifications to render their opinions in this case.  Icove has nothing to add regarding these qualifications that could assist the Court as the gatekeeper and tryer of fact.  Any opinion he offers regarding the same should be excluded.

### E. Defendant Failed To Establish Icove's Opinions Regarding Causation Are More Than Speculation.

In reality, Icove does not offer an opinion as to the cause and origin of this fire.  Instead, Icove tosses up potential alternative hypotheses. See Doc. 45 p. 16-17.  The written reports, witness statements, and sworn deposition testimony in this

case establish these hypotheses were directly considered, tested, and eliminated by Plaintiff's experts.

The first hypothesis suggested by Icove was the potential for a fire to originate near or within the electrical wiring leading to the outside lighting fixture of the balcony to room 2207.  Doc. 45 p. 16.  Defendant admits Plaintiff's experts considered this hypothesis and eliminated it as a potential source of ignition. Sworn testimony in this case shows why.

It is important to note the location of the light fixture.  The light fixture was located immediately to the top right of the balcony door, if you're facing the door from the exterior.  See Doc. 33-1 at Exhibit A, p. 50:17-20; Doc. 29-4 p. 53 Investigator Wilkerson examined the light fixture and testified (1) the light fixture was still intact after the fire; (2) there was a lack of fire damage to the light fixture itself; and (3) there was a lack of burn pattern to building material surrounding the light fixture. See Doc. 33-1 at Exhibit A,  pp. 50:22-51:16.

Investigator Wilkerson also interviewed FBI Agent Siegling who occupied room 2207 that night.  See. Doc. 33-1 at Exhibit A, p. 56:15-18; Doc. 26-1 at Exhibit B, pp. 35-36.  On September 22, 2010, the very night of the fire, when the facts were fresh on his mind, Mr. Siegling told Investigator Wilkerson when he walked out on his balcony and saw fire, he saw fire to the lower left of his balcony.  See Doc. 33-1 at Exhibit A., p. 56:5-9.  Mr. Siegling did not say anything about

fire being above him.  See id.  The light fixture would have been directly above Mr. Siegling when he walked out on the balcony.

Almost four years after the fire, Mr. Siegling gave his deposition testimony. Although his recollection has suffered with time, his deposition testimony likewise establishes the fire did not start at the light fixture.  Mr. Siegling testified that when he walked out on the balcony, he saw fire to the left of him "about six feet away." See Doc. 41-1 at pp.31:20-32:2. The light fixture was not six feet to Siegling's left. It was directly over his head.  The light fixture hypothesis has been considered, tested, and eliminated.

The second hypothesis offered by Icove is that the fire originated on the third level balcony of room 2307, and then traveled against the laws of nature and burned downward to the second floor balcony of room 2207.  See Doc. 45, p. 17. This hypothesis was likewise tested and eliminated by the experts because (1) clear burn patterns suggest the fire originated on the balcony of room 2207, and traveled upward; (2) the natural flow of fire once ignited is to travel upward and out, not downward; and (3) room 2307, the room directly above room 2207, was vacant. In his sworn deposition, Investigator Wilkerson testified as follows:

> Q:     And then let me ask you about another potential hypothesis:  Did you consider the possibility that the fire actually originated on the third floor, either inside the room or outside on the balcony, and that fall down or drop down created the burn patterns on the balcony of Room 2207?

> A: I did. One of the things about the balcony on 2207 is the amount of damage to the underside of that balcony. But also when I interviewed the occupant of Room 2207, he stated that when the fire alarm went off and when he went out on his balcony, he saw fire to the lower left. He didn't mention seeing fire above him.
> So, you know, to me that kind of ruled that out. I would—if that was fall down that come from above him, then if he had went out there, I would imagine that he would have seen the fire above him.
>
> Q: Okay. And the person that you interviewed who was the occupant of Room 2207, do you recall that being Mr. Michael Siegling?
>
> A: That's correct. And there was nobody staying in 2307.
>
> Q: Okay. Thank you. So the room directly above 2207 was vacant at the time of the fire?
>
> A: Correct.

Doc. 33-1 at Exhibit A, pp. 55:22-56:22. Defendant cites Investigator Wilkerson's deposition at pp. 45 and 80 as stating he indicated that fall-down of burning debris from the third level could have ignited the second floor balcony of room 2207. Doc. 45 at pp. 17-18. The cited pages contain no such statement. Investigator Wilkerson's testimony, as quoted herein, is clear.

Defendant points to a statement of District Fire Chief Michael D. Dodson, who observed upon arrival that the balconies of the second and third floors (Room 2207 and 2307) were completely engulfed in flames. Doc. 45 at p. 17. Chief Dodson's note that both the second and third floor balconies of rooms 2207 and 2307 (the only balconies involved in the fire) were engulfed in flames actually

supports the opinions of Investigator Wilkerson and Mr. Williams. There is a reason for the expression, "up in flames." Fire goes up. Of course the fire, originating on the balcony of room 2207, travelled up to the balcony of room 2307, and engulfed both balconies by the time Chief Dodson arrived.

The fact that Icove tosses up the same hypotheses tested by Plaintiff's experts does nothing to assist the Court as the gatekeeper and tryer of fact. The Court will determine the weight and credibility of Investigator Wilkerson, Mr. Williams and Mr. Siegling. Because Icove's opinions are irrelevant and do not assist the Court under Rule 702, his opinions should be excluded.

Respectfully submitted,

**McCathern, P.L.L.C**

By: /s/ *Paul A. Grinke*
    Carl L. Evans
    Alabama State Bar No. 6823-A35C
    Texas State Bar No. 24056989
    cevans@mccathernlaw.com
    Paul A. Grinke
    Texas State Bar No. 24032255
    pgrinke@mccathernlaw.com
    Regency Plaza
    3710 Rawlins Street, Suite 1600
    Dallas, TX 75219
    (214) 741-2662 Telephone
    (214) 741-4717 Facsimile

**ATTORNEYS FOR PLAINTIFF**

PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE THE TESTIMONY OF DR. DAVID ICOVE     PAGE 10
L:\00760\0064 (Yedla)\Pleadings\Drafts\Reply to D's Resp to Mtn to Strike Icove Testimony.doc

## CERTIFICATE OF SERVICE

      I hereby certify that on June 30, 2014, a true and correct copy of the foregoing was served upon the following counsel via e-service:

| | |
|---|---|
| Jack Hood | Jayme Kantor, Esq. |
| Assistant United States Attorney | Assistant General Counsel |
| Attorney for Defendant United States | Federal Bureau of Investigation |
| US Attorney's Office | 935 Pennsylvania Avenue, NW |
| State Bar No. D41J | Suite 10140 |
| 1801 Fourth Avenue North | Washington, DC 20535 |
| Birmingham, AL 35203 | Phone: 202/324-7194 |
| 205-244-2103 | Email: Jayme.Kantor@ic.fbi.gov |
| 205-244-2181 – Fax | |
| Email: Jack.hood@usdoj.gov | |

**ATTORNEYS FOR DEFENDANT UNITED STATES OF AMERICA**

                                                /s/ *Paul A. Grinke*
                                                Paul A. Grinke

PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE THE TESTIMONY OF DR. DAVID ICOVE     PAGE 11
L:\00760\0064 (Yedla)\Pleadings\Drafts\Reply to D's Resp to Mtn to Strike Icove Testimony.doc