

FILED
2014 Jul-11  PM 07:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ALABAMA
### HUNTSVILLE DIVISION

| | | |
|---|---|---|
| **ACADIA INSURANCE CO.,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **UNITED STATES OF** | § | **Cause No.: 5:13-cv-00895-CLS** |
| **AMERICA** | § | |
| *Defendant.* | § | |
| | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Acadia Insurance Co., as Subrogee of Yedla Management Co., Inc. & Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites (hereinafter referred to as "Plaintiff" or "Acadia"), files this Response to Defendant's Motion for Summary Judgment (Doc. No. 40), and in support thereof would respectfully show the Court the following:

# I.  FACTUAL BACKGROUND

## A.    Plaintiff's Response to Movant's Statement of Undisputed Facts

Plaintiff would demonstrate that the following are actual undisputed facts, contrary to Defendant's assertions in Section I of Defendant's Motion for Summary Judgment. *See* Doc. 40.

7.    No one was required to stay at the Country Inn & Suites, but they did so because "[i]t was recommended by the program manager at [the training entity]." The training entity provided busses to and from the Country Inn to encourage class attendees to stay there. Doc. 41-1, Deposition Tr. of Siegling at 10:2-10:17.

8.    While not in training, and after their usual work day at Redstone, Siegling and other individuals in bomb class occasionally smoked cigarettes on the balcony of his hotel room, which was located on the second floor. These individuals' identity, job title, and employer are unknown. Doc. 41-1, Deposition Tr. of Siegling at 14-17.

11.    The Fire Investigator's report further noted that agent Siegling had given two statements on September 22, 2010, in which he indicated that he did not remember the last time he smoked cigarettes on his balcony. He stated that he had extinguished his cigarettes in a Styrofoam cup with water. Agent Siegling does not recall whether he smoked on his balcony on the day of the fire. Doc. 33-1 at

Exhibit A, Plaintiff's Exhibit 1 to the Deposition of Daniel Wilkerson at p. 30; Doc. 41-1, Deposition Tr. of Siegling at 21:19-22:6.

12.    Agent Siegling states that he was asleep on the evening of September 22, 2010 and was awakened by the fire alarm. He states that he looked out onto his balcony when he was awakened by the fire alarm and states that he saw no flames. Siegling does not recall if he opened the balcony door when he looked. Doc. 41-1, Deposition Tr. of Siegling at 23:4-24:10.

13.    Agent Siegling states that after he initially checked his balcony for flames, someone then banged on his door and told him that all occupants had to leave the building. Siegling states that he then opened the balcony door, looked out, and saw flames to his left about six feet away. He states that there were no flames on the balcony itself.  Doc. 41-1, Deposition Tr. of Siegling at 23:4-25:22.

**B.    Plaintiff's Additional Undisputed Facts**

1.    Special Agent Michael Siegling occupied Room 2207 of the Country Inn on September 23, 2010, the date of the fire in question. Doc. 41-1, Deposition Tr. of Siegling at 13:22-25.

2.    Michael Siegling was an employee of the Federal Bureau of Investigation for the relevant time period of August 14, 2010 through September 23, 2010.  *See* Doc. No. 26-1 at Exhibit E, Defendant's Responses to Plaintiff's Discovery Requests at pp. 4 – 12.

3.      Siegling chose to attend the HDS bomb training class in order to advance his career as a Special Agent with the FBI. Doc. 41-1, Deposition Tr. of Siegling at 12:1-13:21.

4.      Siegling's attendance of the bomb training class was relevant to and connected with his employment with Defendant Doc. No. 26-1 at Exhibit E Defendant's Responses to Plaintiff's Request for Admission No.s at pp. 6.

1.       Agent Siegling's enrollment in and attendance of the bomb training class in Huntsville, Alabama was in furtherance of his employment with Defendant. Doc. 41-1, Deposition Tr. of Siegling at 12:1-13:21.

2.      Defendant, as Agent Siegling's employer, directly benefitted from Siegling's attendance of the bomb training class in Huntsville, Alabama. Doc. 41-1, Deposition Tr. of Siegling at 12:1-13:21.

5.      Siegling received pay from his employer while training in Huntsville, Alabama.

6.      Siegling's employer, the FBI, received a benefit by Siegling's presence at the training class.  Doc. 41-1, Deposition Tr. of Siegling at 12:1-13:21.

7.      Siegling was not in Huntsville, Alabama for any reason other than the paid FBI training class. Doc. 41-1, Deposition Tr. of Siegling at 7:8-12.

8.       Siegling paid for his room at the Country Inn with a credit card issued to him by his employer, Defendant. Siegling was only permitted to use this card for

authorized government travel or expenses, particularly for agents. This card's usage is subject to strict rules, can be used only for government-sanctioned training events, and cannot be used for personal expenses. Its use is scrutinized by the financial office within Siegling's employer's division. Doc. 41-1, Deposition Tr. of Siegling at 8:20-10:1.

**C.**    **Plaintiff's Disputed Facts**

1.    Agent Siegling was acting in the course and scope of his employment with Defendant throughout his stay at the Country Inn.  Doc. 41-1, Deposition Tr. of Siegling at 8:20-10:1, 12:1-13:21; Exhibit E Defendant's Responses to Plaintiff's Request for Admission No.s at pp. 6.

## II.    ARGUMENT & AUTHORITIES

The only issue in Defendant's Motion for  Summary Judgment is whether FBI Special Agent Michael Siegling was acting within the course and scope of his employment while staying at an employer-funded hotel for the purpose of attending training in furtherance of his employment. *See* Doc. # 40 at p.7. The question of whether a federal employee was acting within the scope of his employment and whether the claim is subject to FTCA are governed by the laws of the state where the incident occurred. *Singleton v. Burchfield*, 362 F. Supp.2d 1291, 1294 (M.D. Ala. 2005). Under Alabama law, if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of his

employment, is deemed by law to be an act done within the scope of his employment. *Singleton*, 362 F. Supp.2d at 1295.

In *Singleton*, an Air Force employee received a temporary duty assignment to attend a five-week "leadership school" in Alabama. *Id*. at 1293.  While in town for  the conference, the employee had authorized use of a Department of Defense vehicle to travel from the training school to various places in town for "sustenance" of the employee. *Id*.  After the training session one day, the employee took the vehicle to a restaurant for dinner. While driving through town to the restaurant, the employee was involved in an accident with a civilian. *Id.* at 1294. The civilian filed suit for property damage and personal injury. In holding the employee to be acting within the scope of his employment, the court reasoned that the employee was engaged in actions during his training period that conferred a benefit on his employer, and that his conduct was not "impelled by motives that are wholly personal." *Id.* (quoting *Solmica of the Gulf Coast, Inc. v. Braggs*, 232 So.2d 638 (Ala. 1970)).  "The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in the furtherance of his employment, is deemed by law to be an act done within the scope of the employment. *Id. (*quoting *Solmica of the Gulf Coast, Inc. v. Braggs*, 232 So.2d 638 (Ala. 1970).

The *Singleton* court specifically found its conclusion was consistent with the Eleventh Circuit's opinion in *Flohr v. Mackovjak*, 84 F.3d 386, 392 (11th Cir. 1996). In that case coming out of the Northern District of Alabama, the Eleventh Circuit found an army officer on a temporary duty assignment to attend a conference in California was within the scope of his employment in similar situation. *Flohr*, 84 F.3d 386. Although the case was governed by California law, the *Singleton* court found the Eleventh Circuit's analysis of the policies behind the decision are equally applicable in Alabama. *Singleton*, 362 F. Supp.2d 1295 (citing *Flohr*, 84 F.3d 392).

In *Flohr,* the defendant army officer was stationed at Redstone Arsenal in Huntsville, Alabama. Mr. Flohr, the plaintiff, was a civilian engineer also working at the Redstone Arsenal. The plaintiff, defendant, and a third man were given a wee-long temporary duty assignment to attend a conference in California. The Army gave the men a per diem allowance for their expenses, including cost of meals. Flohr obtained a rental car for their use at government expense. There were no restrictions on their after-hours use of the rental car. *Flohr*, 84 F.3d 388.

After a day at the conference, the three men returned to their hotel, changed clothes, and then drove to a restaurant in another town for dinner. After dinner the army officer driving the rental car made an improper left turn and the car was

struck.  Flohr was injured.  *Id.* When Flohr brought suit, the United States sought to establish that the army officer was indeed in the course and scope of his employment at the time of the collision.  The district court held the he was not. The Eleventh Circuit disagreed and reversed. *Id.*

The *Flohr* court noted that tortuous conduct that violates an employees' official duties or disregards the employer's express orders may nonetheless be within the scope of employment.  *Id.* at 391.  So may acts that do not benefit the employer, or are willful or malicious in nature. *Id.*

In holding that the army officer was in the course and scope of his employment at the time of the collision, the Eleventh Circuit relied upon the fact the men were in California to attend a conference related to their work.  The Army paid for all of their expenses while they were away, including meals and cost of renting an automobile.  The men appeared to have received no instructions to drive or not to drive to any particular location for their meals.  *Id.* It was reasonable to assume that the Army expected the men to use the automobile it provided to drive not only to the conference but to places where they could purchase meals. *Id.*  The court found the activity "may be fairly regarded as typical of or broadly incidental" to the enterprise undertaken by the Army. *Id.*

Courts from other jurisdictions have likewise held employers liable for actions of its employees while they were attending training programs or

conferences in situations similar to *Singleton* and the instant case.  A district court in Oregon found an employee was acting within the scope of her employment when she was in a vehicle accident while traveling to her hotel after finishing her training program for the day.  *State Farm Mut. Auto. Ins. Co. v. Swan*, 2002 WL 31973731 (D. Ore. 2002).  The court reasoned that traveling to Oregon for training was in furtherance of her employer's business and that the employer had some degree of control over its employee while she attended the conference.  *Id.* at \*3. In a similar case in Pennsylvania, the court found the employee to be within the scope of her employment during a seminar because she was sent to Pennsylvania for three days and had to stay in the hotel to complete her business the next day. *Valenzuela v. Thrifty Rent-A-Car*, 1995 WL 708109 (E.D. Pa. 1995).

Like the government employees in *Singleton* and *Flohr*, Agent Siegling was acting within the course and scope of his employment while staying at the Country Inn to attend a bomb-training course in furtherance of his employment. The government funded Siegling's stay at the Country Inn via a government-issued credit card which could "be used or reimbursed for certain training-related expenses. There's [sic] strict rules to be used with this card." Doc. 41-1, Deposition Tr. of Siegling at 9:7-15. This card could not be used for personal expenses of employees, could be used only for government-sanctioned training events, and is scrutinized by the financial office within the division to ensure

employees are using it properly before reimbursement to the employee. *Id*. at 9:7-10:1. As a result, like the employee in *Singleton*, Siegling's travel to and from, and hotel accommodations during, the training class in Huntsville were sanctioned and funded by the U.S. government, and caused Siegling to be within the course and scope of his employment with the government during his stay.

Furthermore, like the employees in *Singleton*, *Flohr, Swan*, and *Valenzuela*, the U.S. government benefitted from Siegling's attendance of the training class, and Siegling's attendance was not impelled by motives that were wholly personal. *See* 362 F. Supp.2d at 1295; 2002 WL 31973731; 1995 WL 708109. This fact is evidenced both by the fact that Siegling admits that he attended specifically in order to advance his career with the F.B.I., and by the fact that the government agreed to reimburse Siegling for travel and lodging expenses incurred while attending the training class. Doc. 41-1, Deposition Tr. of Siegling at 8:20-10:1, 12:1-13:21. Thus, as was the case in *Singleton*, Siegling's attendance of this training class and stay at the Country Inn directly benefitted his employer, and "the United States ought equitably to bear the losses arising out of such participation." *Singleton*, 362 F. Supp.2d at 1295. Defendant's argument to the contrary is disingenuous, and should be summarily rejected.

### III.   CONCLUSION AND PRAYER

The underlying facts are not in dispute, and the facts establish Agent Siegling was in the course and scope of his employment at the time of the fire. Therefore, Defendant's Motion for Summary Judgment should be denied, and the Court should enter a Finding of Fact and Conclusion of Law at trial that Agent Siegling was acting within the course and scope of his employment at the time of the fire.

<div style="margin-left:40%">

Respectfully submitted,

**MCCATHERN, P.L.L.C**

By:  /s/ *Paul A. Grinke*
Carl L. Evans
Alabama State Bar No. 6823-A35C
Texas State Bar No. 24056989
cevans@mccathernlaw.com
Paul A. Grinke
Texas State Bar No. 24032255
pgrinke@mccathernlaw.com
Regency Plaza
3710 Rawlins Street, Suite 1600
Dallas, TX 75219
(214) 741-2662 Telephone
(214) 741-4717 Facsimile

**ATTORNEYS FOR PLAINTIFF**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, a true and correct copy of the foregoing was served upon the following counsel via e-service:

Jack Hood
Assistant United States Attorney
Attorney for Defendant United States
US Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, AL 35203
205-244-2103
205-244-2181 – Fax
Email: Jack.hood@usdoj.gov

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

**ATTORNEYS FOR DEFENDANT UNITED STATES OF AMERICA**

/s/ *Paul A. Grinke*