FILED

2015 Mar-10  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ACADIA INSURANCE CO., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-13-S-895-NE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Acadia Insurance Co., as subrogee of Yedla Management Company, Inc., and Hospitality Enterprises of Huntsville, Inc., commenced this action against the United States of America, asserting a claim of negligence. The action presently is before the court on defendant's motion for summary judgment. Upon consideration, the court concludes that the motion should be denied.

## I.  SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS

The pertinent facts in this case arose from a fire that occurred on the evening

of September 22, 2010, in the "Country Inn & Suites" motel located at 4880 University Drive in Huntsville, Alabama.[1]  That motel, owned by Yedla Management Company, Inc., and its wholly-owned subsidiary, Hospitality Enterprises, Inc., was insured against fire and other perils by plaintiff, Acadia Insurance Company.[2]

Michael Siegling, a special agent of the United States Federal Bureau of Investigation, occupied Room 2207 in the motel on the night of the fire.[3]  In fact, Siegling had occupied that room since August 14 of that year, when he traveled from San Francisco, California, to Huntsville for the purpose of attending a bomb technician certification training program at Redstone Arsenal.[4]  Siegling paid for the room with a "government-issued credit card," and the FBI later reimbursed him "for his lodging expenses related to his travel for the training, including his hotel room."[5] He also remained on the FBI payroll during his time in Huntsville.[6]

---

[1] Doc. no. 15 (Amended Complaint); doc. no. 33-1 (Wilkerson Deposition), at 30.

[2] Doc. no. 15 (Amended Complaint), ¶ 9.

[3] *Id.* ¶¶ 11–12.

[4] Doc. no. 26-1 (Defendant's Responses to Discovery Requests), at 5, ECF 58.  "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically.  *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009).  Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header."  *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page numbers with the letters "ECF."

[5] Doc. no. 26-1 (Defendant's Responses to Discovery Requests), at 5, ECF 58.

[6] *Id.* at 4, ECF 57.

Daniel R. Wilkerson, a fire investigator with the Huntsville Fire Department, conducted an investigation of the fire scene on September 22, and determined that the origin of the fire was the balcony of Room 2207.   Wilkerson found discarded "Marlboro Light" cigarettes on the ground underneath the balcony of Room 2207, as well as a pack of the same brand of cigarettes in the interior of that room.[7]   Fire Investigator Wilkerson ultimately concluded that the cause of the fire was Siegling's "careless use of smoking materials."[8]

### III.  DISCUSSION

Plaintiff contends that defendant is liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"), for Michael Siegling's negligent conduct in starting the fire at the Country Inn & Suites.[9]   Defendant contends that it cannot be held liable under the FTCA because Michael Siegling was acting outside the scope of his employment when he allegedly discarded cigarettes on the balcony of Room 2207.[10]   The FTCA "waived the sovereign immunity of the United States for certain torts committed by federal employees" acting within the scope of their employment.  *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citing 28 U.S.C. § 1346(b)).   "The question of whether an employee's conduct was

---

[7] Doc. no. 33-1 (Wilkerson Deposition), at 82–83.

[8] Doc. no. 21-13 (Fire Department Report), at ECF 6.

[9] Doc. no. 15 (Amended Complaint).

[10] *See* doc. no. 40 (Summary Judgment Brief).

4

within the scope of his employment [under the FTCA] 'is governed by the law of the state where the incident occurred.' " *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996) (quoting *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1541 (11th Cir. 1990)).  Here, the fire occurred in Alabama and, thus, Alabama law applies.  The Alabama Supreme Court has repeatedly held that:

> The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.

*Nelson v. Johnson*, 88 So. 2d 358, 361 (Ala. 1956); *see also, e.g.*, *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642 (Ala. 1970) (same); *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990) (same).  "Such conduct, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment." *Rochester-Hall Drug Co. v. Bowden*, 118 So. 674 (Ala. 1928); *see also Solmica*, 232 So. 2d at 642 (same).

Neither Alabama courts nor federal courts applying Alabama law have directly addressed whether smoking cigarettes falls within an employee's scope of employment.  Even so, the Alabama Supreme Court has advised that each case "must be governed by its own peculiar facts."  *AVCO Corp. v. Richardson*, 234 So. 2d 556,

559 (Ala. 1970).  Here, Siegling occupied Room 2207 for the sole purpose of attending an extensive and lengthy course of training on the United States' Redstone Arsenal near Huntsville, Alabama, that would help him become a "Special Agent Bomb Technician."[11]  He paid for the motel room using a government-issued credit card that he was strictly forbidden from using for "personal expenses."[12]  The FBI ultimately reimbursed Siegling for the motel room and other travel expenses he incurred while traveling to, and attending, the training.[13]  Further, defendant admits that the training was "relevant to [Siegling's] position with the FBI," that he attended the training "to acquire information that would benefit his position," and that he remained on the FBI's payroll during his time in Huntsville.[14]

The Eleventh Circuit's opinion in *Flohr*, in which the court held that employees of the United States Army were acting within the scope of employment under California law when they were involved in a car accident while driving to dinner, is instructive:

> The men were in California at the instruction of the United States Army to attend a conference related to their work.  The Army paid for all of their expenses while they were away, including their meals and the cost of renting an automobile.  The men appear to have received no instructions to drive or not to drive to any particular location for their

---

[11] Doc. no. 41-1 (Siegling Deposition), at 12.

[12] *Id.* at 9.

[13] Doc. no. 26-1 (Defendant's Responses to Discovery Requests), at 5, ECF 58.

[14] *Id.* at 6, ECF 59.

meals.  It is reasonable to assume that the Army expected the men to use the automobile it provided to drive not only to and from the conference but also to a place where they could purchase meals, which were also paid for by the Army.  The men's conduct was not "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  Rather, the activity "may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the Army.  The enterprise in this case was the sending of Army personnel to California for several days to attend meetings related to the Army's business.

*Flohr v. Mackovjak*, 84 F.3d 386, 391–92 (11th Cir. 1996) (internal citations omitted).  *See also Edgewater Motels, Inc. v. Gatzke*, 277 N.W. 2d 11 (Minn. 1979) (holding that an employee who occupied a motel room during a business trip was acting in the scope of his employment when he caused a fire in the motel by negligently discarding cigarettes).

Granted, Alabama law governing the scope of employment may not be as broad as that of California or Minnesota.  Even so, this court, confronted with facts similar to those described in *Flohr* and *Gatzke*, concludes that plaintiff in the instant case has, at the very least, raised an issue of fact as to whether Siegling was acting within the scope of his employment when he allegedly discarded smoking materials on the balcony of Room 2207.  Indeed, the Alabama Supreme Court has held:

> In cases where the deviation [from the employer's business] is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business.  So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on

his own. *Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.*

*Land v. Shaffer Trucking, Inc.*, 275 So. 2d 671, 674–75 (Ala. 1973) (alteration and emphasis supplied, internal quotation marks omitted). In short, this court concludes that Michael Siegling's conduct falls between the two "extremes" identified by the Alabama Supreme Court and, therefore, a genuine issue of material fact exists as to whether that conduct falls within the scope of his employment. Accordingly, defendant's motion for summary judgment is due to be denied.

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, it is ORDERED that the motion for summary judgment filed by the United States of America is DENIED.

**DONE** and **ORDERED** this 10th day of March, 2015.

United States District Judge