IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ACADIA INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL ACTION NO. <br> 5:13-CV-00895-CLS |

**DEFENDANT UNITED STATES' MOTION *IN LIMINE*
TO EXCLUDE AND/OR LIMIT THE TESTIMONY
OF PLAINTIFF'S FIRE ORIGIN AND CAUSE EXPERTS**

The Defendant United States of America, in the above-styled cause, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama, and Jack Hood and Jason R. Cheek, Assistant U.S. Attorneys, and pursuant to the Court's Pretrial Order (Doc. 74) of October 15, 2015, moves the Court *in limine* to exclude and/or limit the expert testimony of Plaintiff's fire origin and cause experts, City of Huntsville Fire Department Officer Daniel Wilkerson and Private EFI Global Investigator Roderick Williams as follows:

A. **Prevailing Standards of Professional Care for Fire Investigations**

1. The parties agree that the prevailing standards of professional care for conducting fire investigations include the 2014 Editions of National Fire Protection

1

Association (NFPA) "*Guide for Fire and Explosion Investigations*" (NFPA 921) and the "*Standard for Professional Qualifications for Fire Investigator*" (NFPA 1033).

**B.     Plaintiff's Experts Are Using An Unreliable and Discredited Methodology**

2.     In the Pretrial Order (Doc. 74), Plaintiff *for the first time* (now in 2015), states that both of its experts collectively will testify as follows:

> Before reaching their independent conclusions, each fire expert systematically tested the following hypotheses as a potential cause of the fire: (1) Arson; (2) Vandalism; (3) Electrical; (4) Defective appliance or fixture; (5) Drop-down fire patterns from an ignition source on the 3rd floor; (6) Weather; (7) Code violations; and (8) Discarded smoking materials. All potential sources of ignition have been eliminated except for carelessly discarded smoking materials.

3.     The preceding language summary was never used by either Wilkerson or Williams in Plaintiff's written Rule 26 disclosures or in Wilkerson's deposition. This approach uses the "process of elimination" to support what is referred to as a *negative corpus* theory to prove their hypotheses as to the origin and cause of the fire. This methodology has been discredited by numerous courts and has been severely restricted under the NFPA 921. *E.g.*, *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 443-44 (E.D. Pa. 2013) ("[The expert's] reasoning impermissibly relies on . . . this untestable "negative corpus" even

though the NFPA 921 protocol that he purports to have followed specifically identifies his approach as inconsistent with the scientific method.").

4.  The process of determining the ignition source for a fire, by eliminating all ignition sources found, known, or believed to have been present in the area of origin, and then claiming such methodology is proof of an ignition source for which there is no evidence of its existence, is referred to as *negative corpus*.  *Negative corpus* has typically been used in classifying fires as incendiary, although the process has also been used to characterize fires classified as accidental. *See* NFPA 921 (2011); *see also* 5 David L. Faigman, et al., *Modern Scientific Evidence: The Law And Science Of Expert Testimony* § 39:65, at 291 (2011-2012 Ed.) (*quoting* Technical Committee On Fire Investigations, National Fire Protection Association, *NFPA 921: Guide For Fire and Explosion Investigations* § 18.6.5 (2011 ed.)); *see also Somnis v. Country Mut. Ins. Co.*, 840 F. Supp.2d 1166, 1172-73 (D. Minn. 2012) (allowing fire investigator to testify about the absence of accidental causes, but excluding opinion testimony that "the absence of an accidental explanation suggests the fire was incendiary").

5.  This *negative corpus* approach is a fundamentally flawed procedure as recognized by NFPA 921 § 19.6.5.  It is also inappropriate and a practice deemed both improper and unethical by NFPA 921 for use by fire investigators:

> The process of determining the ignition source for a fire, by eliminating all ignition sources found, known, or believed to

3

> have been present in the area of origin, and then claiming such methodology is proof of an ignition source for which there is no supporting evidence of its existence, is referred to by some investigators as *negative corpus*. Negative corpus has typically been used in classifying fires as incendiary, although the process has also been used to characterize fires classified as accidental. *This process is not consistent with the scientific method, is inappropriate, and should not be used because it generates untestable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited*.

NFPA 921 § 19.6.5 (emphasis added).

6. The use of the *negative corpus* approach by Plaintiff's experts introduced significant analytical gaps in their investigations in that they failed to thoroughly examine all of the potential causes of the fire in this case.

7. Their approaches are flawed for several reasons: (1) they prematurely limited the focus of their investigation to an area of fire origin tightly confined to the corner of a balcony floor; (2) they examined and discarded evidence near a tightly defined and limited area; (3) they failed to conduct and/or record more than one interview (missing several other smokers); (4) they failed to properly collect and preserve any physical or testimonial evidence; and (5) they failed to recognize obvious fire, building, and electrical code violations.

8. These failures to recognize, document, and analyze all of the potential hypotheses in a fire investigation is a violation of the "scientific method" and contrary to the accepted standards of professional conduct as

set forth in NFPA 921 and other prevailing standards of care. NFPA 921 states that even when two unresolved hypotheses exist, the investigator's finding of the fire's cause must be listed as "undetermined." NFPA 921 § 4.3.6.

9. Simply put, Wilkerson and Williams must both acknowledge that there is no evidence that Siegling discarded a lit cigarette on to the wooden floor of the balcony of room 2207 where they claim the fire started. Yet, they both opine Siegling started the fire there.

10. The opinions of Wilkerson and Williams lack a reliable factual foundation — there is simply no evidence that any federal employee, including Siegling, was smoking in the area where the fire started, or that any federal employee discarded a lit cigarette sufficient to start the fire. Having no proper factual predicate, the opinions are, simply, unreliable. The conclusions reached by Wilkerson and Williams rest on not just one assumed fact.

11. Wilkerson and Williams opine that the subject fire was caused by Siegling's careless use of smoking materials based on their claimed elimination of all other sources of ignition for the fire. This methodology employed by both is known as *negative corpus* and is rejected in the fire investigation community.

12. Wilkerson and Williams both employed the *negative corpus* methodology to reach their conclusions in this action. They claim to have

eliminated other sources of ignition for the fire, ignoring the presence of other Building 2 smokers. Then they conclude that, based on the single fact that Siegling is a smoker, he must have started the fire when he discarded a cigarette into or onto unknown flamable materials on the floor of his balcony. There is no evidence to support that conclusion, and there is no evidence to support the quite lengthy laundry list of inferences upon which that conclusion is based. Because the methodology utilized by Wilkerson and Williams in this action is rejected by the fire investigation community, their opinions should be limited to the extent they rely on this flawed methodology.

WHEREFORE, the defendant United States moves the Court for an Order *in limine* excluding and/or limiting any expert opinions by Wilkerson and Williams relating to the origin and cause of the fire.

Respectfully submitted,

**JOYCE WHITE VANCE**
**UNITED STATES ATTORNEY**

<u>**s/ Jack Hood**</u>
Jack Hood
Assistant United States Attorney
U.S. Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

<u>**s/ Jason R. Cheek**</u>
Jason R. Cheek
Assistant United States Attorney
U.S. Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2104
(205) 244-2181 (fax)
jason.cheek@usdoj.gov

<u>Of Counsel:</u>

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: <u>Jayme.Kantor@ic.fbi.gov</u>

## **CERTIFICATE OF SERVICE**

I hereby certify that on <u>December 1, 2015</u>, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

> Carl L. Evans, Esq.
> Paul A. Grinke, Esq.
> Attorneys for Plaintiff
> McCathern, P.L.L.C.
> Regency Plaza
> 3710 Rawlins Street
> Suite 1600
> Dallas, TX  75219
> Phone: 214/741-2662
> Facsimile:  214/741-4717
> Email: cevans@mccathernlaw.com
>            pgrinke@mccathernlaw.com

> **s/ Jack Hood**
> Jack Hood
> Assistant United States Attorney