FILED

2016 Jan-12  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



FILED

JAN 1 1 2016

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

ACADIA INSURANCE CO.,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

CIVIL ACTION NO.
5:13-CV-00895-CLS

## DEFENDANT'S MOTIONS FOR JUDGMENT
## AT THE CLOSE OF PLAINTIFF'S EVIDENCE
## AND AT THE CLOSE OF ALL OF THE EVIDENCE

NOW COMES Defendant United States of America, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama, and Jack Hood, Assistant United States Attorney, and pursuant to the Pretrial Orders of record and pursuant to Rules 15, 16, and 52 of the Federal Rules of Civil Procedure, files the following Motion for Judgment as a Matter of Law at the Close of Plaintiff's Evidence and Motion for Judgment as a Matter of Law at the Close of All of the Evidence.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................1

II.   FACTUAL SUMMARY .....................................................................1

III.  STANDARD OF REVIEW ................................................................2

IV.   ARGUMENTS ..................................................................................3

   A.  The FBI Agent's Smoking Cigarettes Was Not Within the Scope of His Federal Employment and the Court Therefore Lacks Subject Matter Jurisdiction.........................................................................................3

   B.  Plaintiff's Fire Origin and Cause Expert Evidence Is Speculative and Unreliable Under Rule 702 of the Federal Rules of Evidence. ...........8

   C.  Plaintiff Has Failed to Establish Negligence Under Alabama Law............13

   D.  Plaintiff's Spoliation of Evidence Unfairly Prejudiced the Defendant.......14

   E.  Additional Defenses. ....................................................................20

V.    CONCLUSION ..............................................................................22

# I.   INTRODUCTION

This is a property damage action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680 (2006),  which was filed by Plaintiff Acadia Insurance Co. ("Acadia" or "Plaintiff")  arising out a fire at the Country Inn & Suites on September 22, 2010, in Huntsville, Madison County, Alabama. Plaintiff contends that the fire was caused by an FBI agent's negligent smoking of cigarettes. Defendant contends the Plaintiff's cause and origin evidence is speculative and not reliable within the meaning of Federal Rule of Evidence 702, and further that the said FBI agent's smoking while off duty was conduct that could not be considered acting within the scope of his federal employment. Therefore, the Court lacks subject matter jurisdiction.

# II.   FACTUAL SUMMARY

The parties in the Pretrial Order (Doc.74) agreed to the following facts:

1.     This is a claim pursuant to the FTCA wherein plaintiff Acadia Insurance Company ("Acadia") alleges that on September 22, 2010, while in the course and scope of his employment with the Federal Bureau of Investigation (FBI), Special Agent Michael Siegling ("Siegling") negligently discarded a cigarette on the balcony of his hotel room, causing a fire that resulted in damage to the Country Inn and Suites located at 4880 University Drive, Huntsville, Alabama.

2.      Defendant United States of America ("United States") denies liability and contends that smoking in the circumstances was not within the scope of the FBI agent Siegling's federal employment and that plaintiff's expert proof of fire causation is speculative.

3.      Plaintiff Acadia insured the Country Inn & Suites against the damages giving rise to this lawsuit.  As subrogee of Yedla Management Company, Inc. and Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites, under its insurance contract and Alabama law, plaintiff Acadia seeks  to recover the damages it paid as a result of the loss from the United States.

4.      In the event the Court, by trial on the merits, finds the United States liable for plaintiff Acadia's damages, the parties have stipulated to damages in the amount of $950,000.00, exclusive of court costs and applicable interest recoverable under federal law.

### III.    STANDARD OF REVIEW

Rule 52(c) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c).  Although judgment under Rule 52(c) occurs during the middle of trial, it is treated as if it were an adjudication on the merits.  *See Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1504 (11th Cir. 1993).  While the district court's conclusions of law are reviewed de novo, its findings of fact are not disturbed unless they are clearly erroneous.  *Id.*

## IV.    ARGUMENTS

### A.    The FBI Agent's Smoking Cigarettes Was Not Within the Scope of His Federal Employment and the Court Therefore Lacks Subject Matter Jurisdiction.

1.  At that time of the fire, FBI Agent Michael Siegling was staying at the County Inn & Suites, due to a temporary training assignment to the FBI's bomb school located at the Redstone Arsenal.  His usual duty station was in Oakland, CA, and he was supervised from the San Francisco Field Office. Michael Siegling charged the cost of the room at the hotel to his government-issued credit card and the FBI reimbursed him for this expense.

2.  The training was not a requirement for his employment as an FBI Special Agent, but the training was required for certification as a bomb technician.

3.  There were approximately 30 members of the bomb school training class also staying at the Country Inn & Suites. Agent Siegling was the only FBI agent in the training class, and there may have been an ATF agent in the class. These were the only two federal employees staying in Building 2 of the Country Inn & Suites.

3

4.  The remainder of the 28 or so individuals in the bomb class staying in Building 2 were from state and local government units, and their rooms were reimbursed by their state and local units, not the United States or its agencies.

5.  No one was required to stay at the Country Inn & Suites, but they did so out of convenience because the hotel ran a shuttle bus for the class back and forth to Redstone.

6.  While not in training, and after their usual work day at Redstone, Siegling and several state and local individuals in bomb class occasionally smoked cigarettes on the balcony of his hotel room, which was located on the second floor.

7.  State and local individuals also occasionally smoked on the balcony of the room next door to that of agent Siegling.

8.  The cause of the September 22, 2010 fire, as determined by the Huntsville Fire Investigator, was "careless use of smoking materials" on the balcony floor area of Room 2207, the room in Building 2 that was occupied by agent Siegling.

9.  The Fire Investigator's report further noted that agent Siegling had given two statements on September 22, 2010, in which he indicated that he had smoked several cigarettes on the balcony one or two days prior to the fire, but not on the day of the fire. He stated that he had extinguished his cigarettes in a Styrofoam cup with water.

10. Agent Siegling was asleep on the evening of September 22, 2010, when he was awakened by the fire alarm. He looked out onto his balcony and saw no flames.

11. After a short while someone banged on his door saying that all occupants had to leave the building. Siegling, again looked out the door to his balcony and saw flames up and to his left about six feet away. There was no fire on the balcony itself.

12. Although federal law controls the question of whether someone is a federal employee for purposes of the FTCA, state law governs the question of whether the employee acted within the scope of his or her federal employment when the tort occurred. *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir. 1990) ("[W]hether an employee's actions are within the scope of his employment for purposes of the [FTCA] is an issue governed by the law of the state where the incident occurred.").

13. Alabama's Supreme Court has stated that, when determining whether an individual acted within the scope of employment, "the dispositive question is whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer." *Hulbert v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 22, 24 (Ala. 1998); *see Nelson v. Johnson*, 88 So. 2d

358, 361 (Ala. 1956).  "[I]f an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment." *Solmica of the Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642–43 (Ala. 1970).  Conversely, Alabama's Supreme Court holds that conduct is not within the scope of employment if it is "impelled by motives that are wholly personal or to gratify his own feelings or resentment , but should be in promotion of the business of his employment" *Id.* (citing *Rochester-Hall Drug Co. v. Bowden*, 118 So. 2d 674 (Ala. 1928)).

14. "Whether an alleged wrong is committed by the employee during his regular working hours is not dispositive of the question of whether the employee was acting within the scope of his employment. *Hulbert*, 723 So. 2d at 24. Instead, the dispositive question is whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer. *Id.*  Stated differently, "[r]esponsibility of the master for acts of the servant does not arise simply from the circumstance that at the time of the injury the person inflicting it was in the employment of another.  The act inflicting the injury must have been done in pursuance of authority, either express or implied.  'That is, it must be an act which is fairly incident to the employment, in other words, an act which the master has set in motion.'"  *Ala. Fuel & Iron Co. v. Powaski*, 166 So.

6

782, 783 (Ala. 1936) (quoting *Goodloe v. Memphis, etc., R.R. Co.*, 18 So. 166, 167

(Ala.1895)); *Saenzpardo v. United Framing Const. Co.*, No. CIV.A. 10-00049-CG-

M, 2011 WL 5037414, at *3–*4 (S.D. Ala. Oct. 21, 2011).

15. FBI agent Siegling's smoking while off duty and off of his federal

employer's premises conferred no benefit whatsoever upon his employer.   Those

actions were impelled by purely personal motives. Moreover, they were not slight

deviations from work, as in a "smoke break."  Instead, Siegling's smoking at the

Country Inn and Suites was separated by time and distance from his federal

employment.  That is, when he was smoking in the hotel, he was not being paid by

his federal employer or engaging in activities that furthered his employers

business.  The hotel was also not federal property.  At those times, the FBI was not

supervising Siegling's conduct and had no control over his activities.

Consequently, his acts of smoking in a hotel were not within the scope of his

federal employment with the FBI. *See generally HPT IHG Props. Trust v. Shaw

Grp., Inc.*, 227 N.C. App. 454, 744 S.E.2d 496 (2013); *Mosby v. McGee*, No. CIV

07-3905 JRT/RLE, 2009 WL 2171104, at *1 (D. Minn. July 20, 2009); *Minamayor

Corp. v. Paper Mill Suppliers, Inc.*, 297 F. Supp. 524, 526 (E.D. Pa. 1969); *Dobson

v. Don Jan. Roofing Co.*, 392 S.W.2d 153 (Tex. Civ. App.), writ refused, 394

S.W.2d 790 (Tex. 1965); *Merritt v United States*, 332 F.2d 397 (1st Cir. 1964);

*Meredith v. Ringling Bros. Barnum & Bailey Combined Shows*, 321 F.2d 107 (6th

Cir. 1963);*Herr v. Simplex Paper Box Corp.*, 330 Pa. 129, 133-34, 198 A. 309, 311 (1938);  *Kelly v. La. Oil Ref. Co.,* 167 Tenn. 101, 66 S.W.2d 997, 998 (1934). *Accord Restatement (Third) Of Agency § 7.07 (2006)*, Employee Acting Within Scope of Employment; *Restatement (Second) of Agency § 235 (1958)*, Conduct Not for Purpose of Serving Master.

**B.     Plaintiff's Fire Origin and Cause Expert Evidence Is Speculative and Unreliable Under Rule 702 of the Federal Rules of Evidence.**

Plaintiff's fire origin and cause experts, City of Huntsville Fire Department Officer Daniel Wilkerson and private EFI Global Investigator Roderick Williams should have their expert opinions excluded for the following reasons:

**a.     Prevailing Standards of Professional Care for Fire Investigations.**

1.     The parties agree that the prevailing standards of professional care for conducting fire investigations include the 2014 Editions of National Fire Protection Association (NFPA) *"Guide for Fire and Explosion Investigations"* (NFPA 921) and the *"Standard for Professional Qualifications for Fire Investigator"* (NFPA 1033).

**b.     Plaintiff's Experts Are Using An Unreliable and Discredited Methodology.**

2.     In the Pretrial Order (Doc. 74), Plaintiff (in 2015), stated for the first time that both of its experts collectively will testify as follows:

> Before reaching their independent conclusions, each fire expert
> systematically tested the following hypotheses as a potential
> cause of the fire:  (1) Arson; (2) Vandalism; (3) Electrical; (4)
> Defective appliance or fixture; (5) Drop-down fire patterns
> from an ignition source on the 3rd floor; (6) Weather; (7) Code
> violations; and (8) Discarded smoking materials.  All potential
> sources of ignition have been eliminated except for carelessly
> discarded smoking materials.

3.      The preceding language summary was never used by either

Wilkerson or Williams in Plaintiff's written Rule 26 disclosures or in Wilkerson's

deposition. This approach uses the "process of elimination" to support what is

referred to as a *negative corpus* theory to prove their hypotheses as to the origin

and cause of the fire. This methodology has been discredited by numerous courts

and has been severely restricted under the NFPA 921.  *E.g.*, *State Farm Fire &*

*Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 443-44 (E.D. Pa. 2013) ("[The expert's]

reasoning impermissibly relies on . . . this untestable "negative corpus" even

though the NFPA 921 protocol that he purports to have followed specifically

identifies his approach as inconsistent with the scientific method.").

4.      The process of determining the ignition source for a fire, by

eliminating all ignition sources found, known, or believed to have been present in

the area of origin, and then claiming such methodology is proof of an ignition

source for which there is no evidence of its existence, is referred to as *negative*

*corpus*.  *Negative corpus* has typically been used in classifying fires as incendiary,

9

although the process has also been used to characterize fires classified as accidental. *See* NFPA 921 (2011); *see also* 5 David L. Faigman, et al., *Modern Scientific Evidence: The Law And Science Of Expert Testimony* § 39:65, at 291 (2011-2012 Ed.) (*quoting* Technical Committee On Fire Investigations, National Fire Protection Association, *NFPA 921: Guide For Fire and Explosion Investigations* § 18.6.5 (2011 ed.)); *see also Somnis v. Country Mut. Ins. Co.*, 840 F. Supp.2d 1166, 1172-73 (D. Minn. 2012) (allowing fire investigator to testify about the absence of accidental causes, but excluding opinion testimony that "the absence of an accidental explanation suggests the fire was incendiary").

5.      This *negative corpus* approach is a fundamentally flawed procedure as recognized by NFPA 921 § 19.6.5.  It is also inappropriate and a practice deemed both improper and unethical by NFPA 921 for use by fire investigators:

> The process of determining the ignition source for a fire, by eliminating all ignition sources found, known, or believed to have been present in the area of origin, and then claiming such methodology is proof of an ignition source for which there is no supporting evidence of its existence, is referred to by some investigators as *negative corpus*. Negative corpus has typically been used in classifying fires as incendiary, although the process has also been used to characterize fires classified as accidental. *This process is not consistent with the scientific method, is inappropriate, and should not be used because it generates untestable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited.*

NFPA 921 § 19.6.5 (emphasis added).

10

6.    The use of the *negative corpus* approach by Plaintiff's experts introduced significant analytical gaps in their investigations in that they failed to thoroughly examine all of the potential causes of the fire in this case.

7.    Their approaches are flawed for several reasons: (1) they prematurely limited the focus of their investigation to an area of fire origin tightly confined to the corner of a balcony floor; (2) they examined and discarded evidence near a tightly defined and limited area; (3) they failed to conduct and/or record more than one interview (missing several other smokers); (4) they failed to properly collect and preserve any physical or testimonial evidence; and (5) they failed to recognize obvious fire, building, and electrical code violations.

8.    These failures to recognize, document, and analyze all of the potential hypotheses in a fire investigation is a violation of the "scientific method" and contrary to the accepted standards of professional conduct as set forth in NFPA 921 and other prevailing standards of care.  NFPA 921 states that even when two unresolved hypotheses exist, the investigator's finding of the fire's cause must be listed as "undetermined."  NFPA 921 § 4.3.6.

9.    Simply put, Wilkerson and Williams must both acknowledge that there is no evidence that Siegling discarded a lit cigarette on to the wooden floor of the

balcony of room 2207 where they claim the fire started. Yet, they Wilkerson

opines and Williams suggests that Siegling started the fire there.

10.     The opinions of Wilkerson and Williams lack a reliable factual

foundation — there is simply no evidence that any federal employee, including

Siegling, was smoking in the area where the fire started, or that any federal

employee discarded a lit cigarette sufficient to start the fire. Having no proper

factual predicate, the opinions are unreliable. The conclusions reached by

Wilkerson and Williams rest on not just one assumed fact.

11.     Wilkerson and Williams both employed the *negative corpus*

methodology to reach their conclusions in this action. They claim to have

eliminated other sources of ignition for the fire, ignoring the presence of other

Building 2 smokers. Then they conclude that, based on the single fact that Siegling

is a smoker, he must have started the fire when he discarded a cigarette into or onto

unknown flamable materials on the floor of his balcony. There is no evidence to

support that conclusion, and there is no evidence to support the quite lengthy

laundry list of inferences upon which that conclusion is based. Because the

methodology utilized by Wilkerson and Williams in this action is rejected by the

fire investigation community, their opinions should be limited to the extent they

rely on this flawed methodology.

**C.    Plaintiff Has Failed to Establish Negligence Under Alabama Law.**

1.   Even if this Court were to find that Siegling was acting within the scope of his employment, Plaintiff case fails because it has not established a duty and a breach of that duty.

2.   The FTCA looks to the "law of the place where the act or omission occurred" in determining the United States' liability.  28 U.S.C. § 1346(b); *id.* § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . .").

3.   Because the allegedly negligent act or omission in this case occurred in Alabama, the law of this state applies in determining whether the United States may be held liable and to what extent.

4.   In order to demonstrate a prima facie cause of action for negligence under Alabama law, a plaintiff must establish the elements of duty, breach of duty, causation, and damages.  *See, e.g.*, *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (listing prima facie elements of negligence); *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (same).

5.   Plaintiff has failed to establish the relevant duty related to smoking cigarettes.

6.   Plaintiff has failed to establish that the alleged tortfeasor breached that relevant duty.

7. Plaintiff has failed to establish that a cigarette smoked by a federal employee caused the fire in question. As a result, its case fails.

**D.    Plaintiff's Spoliation of Evidence Unfairly Prejudiced the Defendant.**

1. A fire occurred on September 22, 2010 at the Country Inn and Suites, Building 2, located at 4880 University Drive, in Huntsville, Alabama. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 16-17, 20; YEDLA002966).

2. On September 23, 2010, Plaintiff directed its claim service to investigate the fire and "[t]horoughly address subrogation and salvage." (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 20; YEDLA002912)

3. During the fire origin and cause investigation, Plaintiff's experts examined and abandoned all of the fire debris evidence, electrical wiring, fixtures, and furnishings at the fire scene. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp.21; EFI. p. 5; YEDLA002946)

4. On September 27, 2010, Plaintiff received a report from its claim service that stated: "SUBROGATION: There appears to be the possibility of subrogation." (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 21; YEDLA000470)

14

5. On September 27, 2010, Plaintiff's expert, Investigator Rod Williams, EFI Global, Inc., reported that there was evidence that discarded cigarettes ignited the fire. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with attachments, pp. 21; YEDLA002947)

6. On October 5, 2010, Investigator Daniel Wilkerson, Huntsville Fire Department, concluded that the point and origin of the fire was on the second floor balcony of Room 2207 in Building 2. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 21; YEDLA002966)

7. On October 12, 2010, Plaintiff's expert, Rod Williams, EFI Global, Inc., reported: "[t]here were no items collected during the investigation of this fire" and "There were no safety code violations noted." (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 21; EFI. p. 5; YEDLA002946)

8. On October 21, 2010, Plaintiff's claim service mentioned in a report that wiring on the damaged third floor was not compliant with the electrical code. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 21; YEDLA002525)

9. On June 3, 2011, the City of Huntsville inspected the Country Inn and Suites, Buildings 1 and 3, located at 4880 University Drive, and declared it unsafe

and ordered to be vacated immediately due to numerous building, electrical, and

fire code violations. The serious electrical violations cited included open electrical

splices in walls and corridors and improperly installed lighting fixtures.

(Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21),

Declaration of David Icove with attachments, pp. 21; YEDLA000344-000345;

FBI-000119; FBI-000127)

10. The Defendant's first notice that it was the target of litigation involving the

fire was by way of an Administrative Claim filed by the Plaintiff, on or about

August 1, 2012, with the Federal Bureau of Investigation.  (Government Exhibit A,

Defendant's Rule 26(a)(2) Disclosure (Doc.21), Declaration of David Icove with

attachments, pp. 31; 46-48; Exhibit 4, YEDLA 000919-000920; Government

Exhibit B, Declaration of Lori Lee Holland, FBI Supervisory Paralegal Specialist)

11. Plaintiff's expert opines that the fire originated in the northwest corner of

the balcony of Room 2207 due to improperly discarded cigarettes by the occupant,

Michael Siegling, an agent of the FBI. (Government Exhibit A, Defendant's Rule

26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments,

Plaintiff's Rule 26(a)(2) Disclosure, Exhibit 9, Opinions of Rod

WilliamsYEDLA003164- YEDLA003169)

12. Defendant's expert witness opines that there is a reasonably significant

possibility that the fire was caused by faulty or defective electrical wiring, fixtures,

and furnishings at the fire scene that were examined and discarded by Plaintiff's experts. These experts examined and discarded all of this evidence, which included a lighting fixture and electrical outlet on the second floor balcony of Room 2207, without recognizing and taking into consideration the existing numerous and potential fire-causing code violations later found by the City of Huntsville inspectors during their follow-up examinations of the fire scene. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 40-45; 49-54; 56-59)

13. In response to Defendant's request for production, Plaintiff failed to produce any of the fire debris evidence, electrical wiring, fixtures, and furnishings from the fire scene that were examined by Plaintiff's experts. (Government Exhibit C, Defendant's Combined Discovery to Plaintiff, and entire record of proceedings to date.)

14. In Plaintiff's production of documents all references to "*subrogation*" have been redacted except for the items in paragraphs 2 and 4, *supra*. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 20-21, 26; YEDLA002912; YEDLA000470; and Plaintiff's entire production of documents to date with numerous redactions)

15. Plaintiff's fire cause and origin experts did not meet the standards of professional care in the United States required by the National Fire Protection

17

Association (NFPA) "*Guide for Fire and Explosion Investigations*" (NFPA 921) and the "*Standard for Professional Qualifications for Fire Investigator*" (NFPA 1033). The following are examples of their violations:

a.  The failure to employ and embrace the tenets of the scientific method, particularly when collecting and interpreting data, and considering other potential hypotheses;

b.  The failure to conduct and thoroughly document any oral or written interviews conducted in this matter regarding observations of the development and growth of the fire, with the exception of Investigator Wilkerson's very short statement taken of the occupant of Room 2207 and which had little or no information to contribute to the analysis;

c.  The failure to inquire about any exterior video security system at the motel, in adjoining public or private areas, and through responding public safety personnel which could have pinpointed and documented the origin, cause, spread and development of the fire;

d.  The failure to properly employ the four essential methodologies necessary for determining a fire's origin, cause, and development: (1) witness information, (2) fire patterns, (3) fire dynamics, and (4) arc mapping;

e.  The failure to protect evidence from spoliation through proper scene security, notification to the client of potential interested parties, and

deferring/suspending the processing of the fire scene until all interested parties could arrange to participate;

   f. The failure to recognize and account for other potential hypotheses for the origin and cause of the fire, including numerous fire, building, and electrical code violations which easily could have caused this fire; and

   g. The failure to collect and preserve evidence found at the fire scene to forward that evidence to a competent forensic engineering laboratory for their evaluation. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 72-76)

  16. Based upon the national standards of professional care promulgated by NFPA 921 and NFPA 1033, the Plaintiff's fire and origin experts should have preserved the fire debris evidence, electrical wiring, fixtures, and furnishings from the fire scene that they examined, and they should have put the United States and its agency, as well as other potential interested parties, on notice immediately in September or October of 2010 that there was a fire investigation that might result in a subrogation claim against the United States. (Government Exhibit A, Defendant's Rule 26(a)(2) Disclosure (Doc. 21), Declaration of David Icove with attachments, pp. 46-49; 72-76).

  17. As a result, Plaintiff and its associates unfairly and improperly prejudiced the defense of this case.

**E.     Additional Defenses.**

1. The fire damages sustained by the Plaintiff on or about September 22, 2010, at the Country Inn & Suites in the City of Huntsville, Madison County, Alabama were not proximately caused by or did not arise out of any negligent acts the Defendant's employee.

2. The fire damages claimed by the Plaintiff were proximately caused by, or arose out of, preexisting causes or conditions for which the Defendant is not legally responsible.

3. The evidence in this case conclusively shows that the fire damages claimed by the Plaintiff were not proximately caused by the negligence of the Defendant.

4. The Plaintiff has failed to prove that any negligence by the Defendant was the proximate cause in whole or in part of Plaintiff's fire damages.

5. No legally admitted evidence has been offered or received at trial which would sustain Plaintiff's claims for fire damages.

6. The uncontroverted evidence shows that Plaintiff's claims for fire damages arose out of its spoliation of evidence of which the Defendant had no reasonable notice.

7. The evidence of probative force shows that the Plaintiff is not entitled to recover for the fires damages claimed.

8. The affirmative evidence shows that the Defendant is not legally responsible for the fire damages claimed by Plaintiff.

9. As a matter of law, the Defendant is not legally responsible for the fire damages claimed by the Plaintiff.

10. There is no proof in this case upon which the Court could find that the Plaintiff suffered fires damages as a result of any negligence on the part of the Defendant's employee acting within the scope of his federal employment for which there can be recovery under the laws of Alabama.

11. There is no substantial evidence that Plaintiff suffered fire damages as a result of the Defendant's employee acting within the scope of his federal employment while off duty and smoking.

12. The evidence of probative force shows the Defendant is not legally responsible for the acts of its federal employee while off duty and smoking.

13. The affirmative evidence shows the Defendant is not legally responsible for the acts of its federal employee while off duty and smoking.

14. As a matter of law, the Defendant is not legally responsible for the acts of its federal employee while off duty and smoking.

13. In general, Plaintiff presented no evidence which if believed would authorize a monetary judgment against the Defendant.

21

## V.    CONCLUSION

WHEREFORE, the Defendant United States of America respectfully moves the Court for an order granting judgment in favor of the Defendant pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Respectfully submitted,

JOYCE WHITE VANCE
UNITED STATES ATTORNEY


**s/ Jack Hood**
Jack Hood
Assistant United States Attorney
U.S. Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2103
(205) 244-2181 (fax)
jack.hood@usdoj.gov

Of Counsel:

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on <u>January 11, 2016</u>, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

> Paul A. Grinke, Esq
> Carl L. Evans, Jr., Esq.
> Attorneys for Plaintiff
> McCathern, P.L.L.C.
> Regency Plaza
> 3710 Rawlins Street
> Suite 1600
> Dallas, TX  75219
> Phone: 214/741-2662
> Facsimile:  214/741-4717
> Email: cevans@mccathernlaw.com

I also served the foregoing attorney by hand delivery in open court.

> **<u>s/ Jack Hood</u>**
> Jack Hood
> Assistant United States Attorney