FILED
2016 Jan-15  PM 07:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ALABAMA
### HUNTSVILLE DIVISION

| | | |
|---|---|---|
| **Acadia Insurance Co**., | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | Cause No.: 5:13-cv-00895-CLS |
| **United States of America** | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT AT THE CLOSE OF PLAINTIFF'S EVIDENCE AND AT THE CLOSE OF ALL OF THE EVIDENCE**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Acadia Insurance Co., as Subrogee of Yedla Management Co., Inc. & Hospitality Enterprises of Huntsville, Inc. d/b/a Country Inn & Suites (hereinafter referred to as "Plaintiff" or "Acadia"), files this Response in Opposition to Defendant's Motion for Judgment at the Close of Plaintiff's Evidence and at the Close of all of the Evidence (the "Motion"), and in support thereof would respectfully show the Court the following:

# TABLE OF CONTENTS

I.   Summary of the Argument.............................................................3

II.  Argument & Authorities ............................................................4

    A.   Mr. Siegling Was in the Course & Scope of His Employment with the FBI When He Negligently Caused the Subject Fire. .....................4

    B.   The Methodology By Which Wilkerson and Williams Reached Their Conclusions Are Sufficiently Reliable Pursuant to FED. R. EVID. 702 and 703. ...............................................................................6

        1. Fire Marshal Wilkerson's Opinion is Based Upon a Reliable Foundation........................................................................9

        2. Roderick Williams Opinion is Based Upon a Reliable Foundation....................................................................................15

    C.   Mr. Siegling Is Negligent Under Alabama Law. .......................................17

    D.   No Evidence of Spoliation Exists. ..............................................18

III. Conclusion.................................................................................18

# I. SUMMARY OF THE ARGUMENT

In its Motion, Defendant reasserts the same arguments made in Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 37 (Doc. #22), Motion for Summary Judgment (Doc. #39), Motion to Exclude the Testimony of Plaintiff's Expert Roderick Williams (Doc. #29), and Defendant's Motion to Exclude the Testimony of Daniel Wilkerson (Doc. #30), each of which this Court denied.[1] For a third time, Defendant's assert that alleged spoliation of the evidence should prohibit Plaintiff's recovery.

Based upon current Alabama law, and the evidence presented in this case, Special Agent Siegling was in the course and scope of his employment with Defendant, at the time his negligently discarded cigarette ignited a fire on his hotel room balcony at the Country Inn & Suites. There was no other reason for Siegling to occupy a room at the hotel but for the benefit of the Defendant.

City of Huntsville Fire Marshal Dan Wilkerson and private fire investigator Roderick Williams conducted independent investigations, and reached the same conclusion as to the fire's origin and cause. Both gentlemen are duly qualified. Each expert reached his opinion utilizing the scientific method called for in NFPA 921, Guide for Fire and Explosion Investigations. No expert relied on a "*negative corpus*" to reach his opinion. Instead, each expert relied upon available burn

---

[1] *See* Docs. #69, 70, & 71, on file in this matter.

patterns, the witness statement, and physical evidence at the scene.  As a necessary part of the scientific method, each expert considered and eliminated other potential causes of the fire.

There is no evidence of bad faith that would support any finding of spoliation of evidence.  The Defendant did not request to view the fire scene or any relevant evidence for seventeen (17) months after Defendant was placed on formal notice of claim, and for (8) months after this lawsuit was filed.

By a preponderance of the evidence, the evidence in this case establishes that it is more likely than not, that Special Agent Siegling's carelessly discarded cigarette ignited a fire on his hotel room balcony, causing the damages complained of in this case.

## II. ARGUMENT & AUTHORITIES

As the issues brought forth in Defendant's Motion for Judgment have already been brief by both parties *ad nauseum*, Plaintiff will respond briefly to each of Defendant's arguments.

### A. Mr. Siegling Was in the Course & Scope of His Employment with the FBI When He Negligently Caused the Subject Fire.

Plaintiff refers the Court to its briefing on this subject matter (Doc. # 51).

The question of whether a federal employee was acting within the scope of his employment and whether the claim is subject to FTCA are governed by the laws of the state where the incident occurred. *Singleton v. Burchfield*, 362 F. Supp.2d

1291, 1294 (M.D. Ala. 2005). Under Alabama law, if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of his employment, is deemed by law to be an act done within the scope of his employment. *Singleton*, 362 F. Supp.2d at 1295.

Defendant asserts that the act of smoking a cigarette is not in the furtherance of one's employment.   Neither the 11th Circuit, nor any Alabama court has so limited its focus.  The question is whether Special Agent Siegling's use of the hotel room at the Country Inn & Suites was in the furtherance of his employment.  It was, and Siegling was negligent in the use of that hotel room.

Like the government employees in *Singleton v. Burchfield*, 362 F. Supp.2d 1291, 1294 (M.D. Ala. 2005), and *Flohr v. Mackovjak*, 84 F.3d 386, 392 (11th Cir. 1996), Mr. Siegling was acting within the course and scope of his employment while staying at the Country Inn to attend a bomb-training course. The government funded Siegling's stay at the Country Inn via a government-issued credit card which could be used or reimbursed for certain training-related expenses. There are strict rules for the use of this card.  This card could not be used for personal expenses of employees, could be used only for government-sanctioned training events, and is scrutinized by the financial office within the division to ensure employees are using it properly before reimbursement to the employee.  As a result, like the employee in *Singleton*, Siegling's travel to and from, and hotel

accommodations during, the training class in Huntsville were sanctioned and funded by the U.S. government, and caused Siegling to be within the course and scope of his employment with the government during his stay.

Furthermore, like the employees in *Singleton* and *Flohr,* the U.S. government benefitted from Siegling's attendance of the training class, and Siegling's attendance was not impelled by motives that were wholly personal. *See* 362 F. Supp.2d at 1295; 2002 WL 31973731; 1995 WL 708109. This fact is evidenced both by the fact that Siegling admits that he attended specifically in order to advance his career with the F.B.I., and by the fact that the government agreed to reimburse Siegling for travel and lodging expenses incurred while attending the training class. Thus, as was the case in *Singleton*, Siegling's attendance of this training class and stay at the Country Inn directly benefitted his employer, and "the United States ought equitably to bear the losses arising out of such participation." *Singleton*, 362 F. Supp.2d at 1295.

## B. The Methodology By Which Wilkerson and Williams Reached Their Conclusions Are Sufficiently Reliable Pursuant to FED. R. EVID. 702 and 703.

As detailed extensively in Plaintiff's Response to Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 37 (Doc. #26); and Plaintiff's Response in Opposition to Defendant's Motion in Limine (Doc. #77), any allegations concerning perceived shortcomings in Mr. Williams' or Officer Wilkerson's fire

investigation do not render Officer Wilkerson or Mr. Williams unqualified fire cause and origin experts. Doc. # 26, #26-1, #32, #32-1, #33, #33-1, #43, #44, and #71; *Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc.*, 901 So.2d 84 (Ala. 2004); *S.E.C. v. Goble*, 682 F.3d 934, 947-48 (11th Cir. 2012).

Fire is by definition the destruction of evidence.  It may be virtually impossible to conduct a perfect investigation into the origin and cause of a fire.  Perfection is not the test.  The test is whether a duly qualified investigator utilized a reliable methodology in conducting the investigation, and reached his conclusion based upon a reasonable degree of scientific probability.  Fire Marshal Wilkerson and Mr. Roderick Williams, both certified by the State of Alabama to conduct fire origin and cause investigations, did just that.  Three cases from sister district courts in the 11th Circuit regarding the reliability of fire origin and cause experts are illustrative:

### *Ledbetter v. Blair Corp.*

In *Ledbetter v. Blair Corp.,* 2012 U.S. Dist. LEXIS 88789 (M.D. Ala. June 27, 2012), Defendant moved to exclude the testimony of Dr. James Munger regarding the cause and origin of a fire. 2012 U.S. Dist. LEXIS 88789, at *37. Munger's testimony was specifically formulated based upon the standards set forth in NFPA 921. *Id.* Defendant argued that Munger did not apply NFPA 921 reliably to the facts of the case because: (1) Munger determined the fire's origin before the

fire's source; (2) Munger utilized a process of elimination ("negative corpus") to define the fire's ignition source; and (3) Munger failed to properly investigate other potential causes of the fire. *Id.* The court found Munger did cite to various guidelines within NFPA 921 regarding the scenario when there is no physical evidence of an ignition source, regarding point and area of origin determinations where a single point cannot be identified, and regarding the role of ignition sequence in determining fire cause. The court found Munger also adequately explained how the process of elimination plays a legitimate and integral role under NFPA 921 for selecting a final hypothesis.    *Id*. at *38-39. The court held that Munger had "good grounds" for his conclusions, that Munger's testimony was reliable under *Daubert* standards and Federal Rule of Evidence 702.  *Id*. at *39.

### Nationwide Mut. Ins. Co. v. Nall's Newton Tire

In *Nationwide Mut. Ins. Co. v. Nall's Newton Tire,* 2015 U.S. Dist. LEXIS 106363 (S.D. Ala. Aug. 12, 2015), Defendant attacked the testimony of Bryan Cash and Fire Marshal Jeb Harrison regarding the origin of a fire. 2015 U.S. Dist. LEXIS 106363, at *6-9. Defendant argued that these experts did not follow all of the standards in NFPA 921, and based their conclusions on unreliable evidence. *Id*. The court specifically stated: "The fact that [each expert] did not comply with every NFPA standard does not show that his methodology is unreliable." *Id*. at *10. Accordingly, the court refused to strike these experts' opinions. *Id.*

*Nelson v. GE*

In *Nelson v. GE,* 2006 U.S. Dist. LEXIS 97474 (N.D. Ga. Aug. 1, 2006), Defendant attacked the testimony of two expert witnesses, Mr. Slotter and Mr. Shiver, regarding the cause and origin of a fire. 2006 U.S. Dist. LEXIS 97474, at *23. Defendant asserted that Slotter and Shiver's methodologies were unreliable because they did not stringently follow NFPA 921's guidelines. *Id.* Defendant argued Mr. Slotter and Mr. Shiver did not interview witnesses, did not use arc mapping to trace electrical activity, and did not use fire dynamics to determine growth.  The court found that the experts' lack of compliance with NFPA 921 in some areas did not disqualify their conclusions, and that NFPA 921 is a recognized methodology but is "not binding." *Id*. at *24.  The court noted that NFPA 921 itself states that sometimes not all of the listed types of information will be necessary to determine origin.  Accordingly, the court held that each expert's testimony was sufficiently reliable and denied Defendant's motion. *Id*. at 26.

Like the experts in the above three cases, Fire Marshal Wilkerson and Mr. Williams rendered reliable opinions.

## 1.  Fire Marshal Wilkerson's Opinion is Based Upon a Reliable Foundation.

Daniel Wilkerson was the fire investigator for the City of Huntsville Fire Department who investigated this fire.  He is now the Fire Marshal for the City of Huntsville.   He is not a party to this lawsuit and has no interest in it. He is

certified, and thus qualified, by the State of Alabama to conduct fire investigations and render an official opinion as to the origin and cause of a fire.

As established by his trial testimony, Officer Wilkerson used the scientific method prescribed by National Fire Protection Association (NFPA) 921, a peer-reviewed publication outlining the method for determining the cause and origin of this fire. His opinion itself has been peer reviewed and confirmed by another certified fire investigator, Roderick S. Williams.

During his inspection of the fire scene, Wilkerson identified the problem, defined the problem, collected data, analyzed the data, developed multiple hypotheses and tested them, and reached a final conclusion: the fire was started by the careless discarding of cigarettes by the occupant of Room 2207, Michael Siegling. *See Id*.

Fire Marshal Wilkerson testified this fire was exterior to building 2 of the hotel, and limited to two balconies. He analyzed the burn patterns to the exterior of balconies to room 2207, and 2307 above it. Based upon his knowledge of fire spread, he opined the fire originated in the northwest corner of the balcony to room 2207, spread from that point upward and out. He testified the fire spread up the corner of the balcony to room 2207 to the wood decking underneath the balcony of room 2307 above. He stated the fire, now gaining intense heat, significantly burned the decking underneath the room 2307 balcony, and continued to spread

upward and outward to the balcony of room 2307.  From there, Wilkerson opined the fire began to breach room 2307 and the roof overhang above the balcony to room 2307.  There was no significant spread of the fire into the interior of room 2307, nor onto the roof, nor into the attic space above 2307.

Fire Marshal Wilkerson determined the fire was caused by carelessly discarded cigarettes on the balcony of room 2207 based upon human activity there, his interview of Special Agent Siegling, the burn pattern to the floor of the balcony to room 2207 and his knowledge of flame spread, and physical evidence of discarded smoking materials directly beneath the area of origin—the same type of smoking materials found inside room 2207.

Wilkerson did testify he saw a discarded cigar butt and one cigarette butt of a different brand than Agent Siegling's on the ground below the area of origin. Agent Siegling testified at trial that during his six week stay at the hotel, he did have other agents as guests from time to time smoking on his balcony with him. Siegling mentioned one of those as possibly smoking Winston cigarettes.  One of the cigarette butts below Siegling's balcony after the fire was a Winston brand cigarette.  Importantly, Siegling did *not* testify that anyone other than himself was on the balcony of room 2207 *the evening of the fire*.  He did not identify anyone else at trial.  He did not identify anyone else through written discovery.  He did not identify anyone to Wilkerson when interviewed the night of the fire.  By a

preponderance of the evidence, it is more likely than not that the fire was ignited by Special Agent Siegling's discarded smoking materials on the balcony of room 2207.

As part of the scientific method, Fire Marshal Wilkerson testified he considered and eliminated other potential causes.  He testified he eliminated arson or vandalism as a cause of the fire.  Although he chose not to collect samples to send for laboratory testing for the existence of accelerants, he noted the courtyard into which the two burned balconies faced was locked and secured the night of the fire.  He testified he and other fire fighters had difficulty gaining access to the courtyard the night of the fire because a room key was required to open the gates. He noted room 2207 was occupied by a special agent with the FBI.  He noted the room above, room 2307, was not occupied the night of the fire.  He testified the rooms to the right and left of rooms 2207 and 2307 suffered no significant fire damage.  Based upon these facts, Wilkerson eliminated arson and vandalism as a cause of the fire to a reasonable degree of certainty.  He testified that while it is always possible that a vandal from the ground below threw something onto the second floor balcony of room 2207, or that someone from the one neighboring balcony reached around the solid wall and tossed something onto the balcony of room 2207, these scenarios are not plausible.

Wilkerson testified he considered and ruled out electrical failure as the cause of the fire as there were no electrical components present at the origin of the fire. He testified there was no mass of damaged electrical wiring that would justify the process of arc mapping.   There simply was no damaged wiring to arc map. Further, he testified he eliminated the balcony light fixtures over the balcony doors of room 2207 and 2307 as a potential cause, based upon the burn patterns.

Wilkerson testified he considered and eliminated weather conditions as a potential cause of the fire.  Finally, Wilkerson testified he considered whether the fire could have originated on the third floor and that fire could have dropped down to the second floor balcony.  He stated he eliminated this scenario based upon the burn patterns, the lack of human activity on the third floor, the lack of any significant burning to the roof or attic above the third floor, and the basic principles of fire spread.

Fire Marshal Wilkerson utilized the process of elimination as an integral part of the scientific method.  As part of the scientific method, other hypotheses as to the cause of the fire must be tested and eliminated.  Indeed, Defendant's trial exhibit GX 2, a chart regarding the scientific method found in Defendant's expert David Icove's own book, lists in Step 6, "Eliminate all other fire causes, if possible."   Wilkerson testified he did not use a "*negative corpus*" to determine the cause of the fire.

NFPA 921 (2014), cited by Defendant, states:

19.6.5 **Appropriate Use.**  The process of elimination is an integral part of the scientific method.  Alternative hypotheses should be considered and challenged against the facts.  Elimination of testable a hypothesis by disproving a hypothesis with reliable evidence is a fundamental part of the scientific method.  However, the process of elimination can be used inappropriately.  The process of determining the ignition source for a fire, by eliminating all ignition sources found, known, or believed to have been present in the area of origin, and then claiming such methodology is proof of an ignition source *for which there is no supporting evidence of its existence*, is referred to by some investigators as *negative corpus.*

***

(emphasis added)

Fire Marshal Wilkerson testified he did not simply eliminate all other potential causes and opine the ignition source of the fire was carelessly discarded cigarettes with *no supporting evidence of its existence.*  In answering a direct question from this Court, Wilkerson testified he considered as supporting evidence (1) physical evidence of the discarded smoking materials directly below the area of origin that match those found in Siegling's room; (2) burn patterns initiating from the balcony floor directly above those smoking materials; and (3) Special Agent Siegling's interview statement that he did smoke cigarettes on his balcony, discarded them in a Styrofoam cup, but could not remember the last time he was out there.  Because Wilkerson relies upon supporting evidence in addition to his elimination of other potential causes of the fire, he did not rely upon a negative corpus to render his opinion.

Fire Marshal Wilkerson was duly qualified, and his opinion as to the origin and cause of this fire is based upon a reliable foundation.

### 2.  Roderick Williams Opinion is Based Upon a Reliable Foundation

Roderick Williams is qualified, based upon his years of experience, training and certifications to render an opinion as to the origin and cause of the subject fire. He is certified by the State of Alabama to investigate fires. The foundation for his opinions is sound. The methodology he utilized to reach his opinions is sound. He used the scientific method called upon by National Fire Protection Association (NFPA) 921, the guide for performing fire origin and cause investigations that is generally accepted in the scientific community. Mr. Williams identified the problem, defined the problem, collected data, analyzed the data, developed multiple hypotheses and tested each of them, and reached a final conclusion: The fire originated on the floor of the northwest corner of the balcony to room 2207, and was caused by the careless discarding of smoking materials.

Mr. Williams likewise testified, based upon basic fire spread theory, that the fire originated on the floor of the northwest corner of the balcony, gained heat as it rose up the corner walls of the balcony, to the wood decking underneath the balcony directly above to room 2307.  He opined that the fire consumed the underside of the wood decking underneath the balcony to room 2307 and spread

upward from there to the balcony of room 2307, and from there up to the roof eve overhanging that balcony.

Mr. Williams testified he tested alternative hypotheses as well. He properly identified the specific area of origin, isolated the only potential source of ignition in that area of origin as discarded cigarettes, and affirmatively excluded electrical failure, arson, or the weather as a cause. He stated he eliminated, and did not collect, light fixtures to the balconies of 2207 and 2307, because in his opinion both were outside the origin of the fire.  Indeed, the light fixture on the balcony of room 2207, which had been removed from the wall and placed on the balcony floor by the time he arrived, did not show signs of burn damage on its exterior or interior.  He testified there was no damaged electrical wiring to the building to collect.

He based his opinions on his visual examination of the scene, fire patterns, witness interviews by City of Huntsville personnel, and physical evidence including the discarded smoking materials directly below his area of origin that match those smoking materials found in room 2207.  Mr. Williams' opinion was peer reviewed by another certified fire and explosion investigator.

**C. Mr. Siegling Is Negligent Under Alabama Law.**

Mr. Siegling, as an employee of the FBI, had a duty to properly discard of his cigarette during his stay at the subject Country Inn & Suites. The evidence presented at trial and through Mr. Siegling's own testimony demonstrated that Siegling confirmed that when he opened his balcony door and looked to the left, he observed flames to the left on his balcony; that he smoked cigarettes on the balcony of Room 2207, and that he extinguished his used cigarettes in a Styrofoam cup; Marlboro brand cigarettes were found in the area below the balcony of room 2207; Mr. Siegling confirmed that he used Marlboro brand cigarettes; and that although other Mr. Siegling had other guests on his balcony whom smoked cigarettes during his six week stay there, no other person smoked on Mr. Siegling's balcony *except Mr. Siegling on the date of the fire.*

Although an expert witness may lack direct evidence of a cause of a fire, the expert witness may rely upon circumstantial evidence to support his theory. FED. R. EVID. 702; *see Allstate Ins. Co. v. Hugh Cole Builder, Inc*., 137 F. Supp. 2d 1283, 1289 (M.D. Ala. 2001). Here, the circumstantial evidence demonstrates that Mr. Siegling caused the subject fire by carelessly discarding his smoking materials on September 22, 2010.

**D. No Evidence of Spoliation Exists.**

Plaintiff refers the Court to the briefing in its Response to Defendant's Motion to Dismiss (Doc. #26).  Defendant seeks to impose death penalty spoliation sanctions on Plaintiff without providing evidence of: (1) any bad faith on behalf of Plaintiff; (2) any actions on behalf of Plaintiff that demonstrate an intent to actively inhibit Defendant's investigation; or (3) that Defendant requires the evidence to assert a claim or affirmative defense. *See* Doc. #23.  The U.S. Government showed no concern for inspection of the fire scene until January 24, 2014—eight months after this lawsuit was filed; seventeen months after it received formal notice of claim under 28 U.S.C. § 2675; and over three years after the fire.  Defendant cannot provide any evidence, nor cite to any federal or state authority, that would support the imposition of spoliation sanctions on Plaintiff under these facts.

### III.   Conclusion

Based upon the foregoing, Plaintiff respectfully asserts Defendant's Motion for Judgment should be denied.

Respectfully submitted,

**McCathern, P.L.L.C**

By:  /s/ *Paul A. Grinke*
         Carl L. Evans
         Alabama State Bar No. 6823-A35C
         Texas State Bar No. 24056989
         cevans@mccathernlaw.com
         Paul A. Grinke
         Texas State Bar No. 24032255
         pgrinke@mccathernlaw.com
         Regency Plaza
         3710 Rawlins Street, Suite 1600
         Dallas, TX 75219
         (214) 741-2662 Telephone
         (214) 741-4717 Facsimile

         **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2015, 2015, a true and correct copy of the foregoing was served upon the following counsel via e-service:

Jack Hood
Assistant United States Attorney
Attorney for Defendant United States
US Attorney's Office
State Bar No. D41J
1801 Fourth Avenue North
Birmingham, AL 35203
205-244-2103
205-244-2181 – Fax
Email: Jack.hood@usdoj.gov

Jayme Kantor, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Suite 10140
Washington, DC 20535
Phone: 202/324-7194
Email: Jayme.Kantor@ic.fbi.gov

## ATTORNEYS FOR DEFENDANT UNITED STATES OF AMERICA

/s/ *Paul A. Grinke*
Paul A. Grinke