FILED

2016 Jan-25  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ACADIA INSURANCE CO., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. CV-13-S-895-NE** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND FINAL JUDGMENT

This action is based upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA").   The plaintiff's claim arose out of a fire that occurred on September 22, 2010, at the "Country Inn and Suites" in Huntsville, Alabama:  a hotel owned and operated by Yedla Management Company, Inc., and Hospitality Enterprises of Huntsville, Inc.  The plaintiff, Acadia Insurance Company, is the subrogee of those entities.  It contends that the fire was caused by an agent of the Federal Bureau of Investigation who, while lodged as a guest at the hotel, negligently discarded smoking materials on the balcony outside his second-floor hotel suite.

This court conducted a bench trial on January 11, 2016.  The United States filed "Motions For Judgment At The Close Of Plaintiff's Evidence And At The Close Of All Of The Evidence."[1]  *See* Fed. R. Civ. P. 52(c).  The court denied the motion

---

[1] Doc. no. 89.

at the close of plaintiff's evidence.[2]  This opinion addresses the renewed motion at the

close of all of the evidence,[3] and is based upon consideration of the pleadings,

evidence, and briefs of counsel.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 52(c) provides that:

> If a party has been fully heard on an issue during a nonjury trial
> and the court finds against the party on that issue, the court may enter
> judgment against the party on a claim or defense that, under the
> controlling law, can be maintained or defeated only with a favorable
> finding on that issue. The court may, however, decline to render any
> judgment until the close of the evidence. A judgment on partial findings
> must be supported by findings of fact and conclusions of law as required
> by Rule 52(a).[4]

Fed. R. Civ. P. 52(c).

> "A Rule 52(c) motion may be granted if . . . based on the evidence
> before it, the court finds, after resolving the credibility issues and
> weighing the evidence, for the defendant." *Denson v. United States*, 574
> F.3d 1318, 1334 n. 48 (11th Cir. 2009). "In addressing a Rule 52(c)
> motion, the court does not view the evidence in the light most favorable
> to the nonmoving party, as it would in passing on a Rule 56 motion for

---

[2] Trial Transcript, at 149.

[3] *See id.* at 234-35 (stating that the court would take the renewed motion for judgment at the close of all of the evidence under advisement).

[4] Rule 52(a) states, in pertinent part, that:

> In an action tried on the facts without a jury or with an advisory jury, the court
> must find the facts specially and state its conclusions of law separately. The findings
> and conclusions may be stated on the record after the close of the evidence or may
> appear in an opinion or a memorandum of decision filed by the court. Judgment must
> be entered under Rule 58.

Fed. R. Civ. P. 52(a)(1).

summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as factfinder." *United States v. $242,484.00*, 389 F.3d 1149, 1172 (11th Cir. 2004). Under Rule 52(c), "the court must weigh the evidence and may consider the witnesses' credibility." *Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1504 (11th Cir. 1993).

*IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1295 (M.D. Fla. 2013), *aff'd*,

589 F. App'x 479 (11th Cir. 2014).

## II. FACTS

Michael Siegling is a resident of California and a Special Agent for the Federal Bureau of Investigation ("FBI"). He attended a six-week training course on hazardous devices conducted at Redstone Arsenal near Huntsville, Alabama, from August 10 through September 24, 2010.[5] The FBI did not *require* Siegling to attend the training course, but the instruction furthered Siegling's employment with the FBI by providing him with specialized skills.[6] The FBI paid for the course, paid Siegling's salary during his weeks of training, and reimbursed the costs of his travel, lodging, and food.[7]

Siegling occupied Suite 2207 on the second floor of one wing to the Country Inn and Suites from the date of his arrival in Huntsville through the date of the fire

---

[5] Trial Transcript, at 137; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 35, Fact No. 72. The United States disputed part of Fact No. 72, but not the portion relied upon here.

[6] Trial Transcript, at 138-39; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 4, Fact Nos. 21-22.

[7] Trial Transcript, at 138.

that rendered that wing of the hotel uninhabitable.[8]   Siegling and the other students in the training course were not required to stay at the Country Inn and Suites, but chose to do so for convenience, because a bus transported the students between the hotel and their training classes on Redstone Arsenal each day.[9]

Siegling sometimes smoked cigarettes on the balcony outside Suite 2207 in the evenings, after the end of classes, either alone or joined by other students in the training course.  He did not recall whether anyone else was present on the balcony or smoked cigarettes with him on September 22, the night of the fire.[10]  He also did not state, nor was he specifically asked during trial, whether he smoked a cigarette on the balcony on the night of the fire.  Siegling maintained a practice of extinguishing his cigarettes in a Styrofoam cup half-filled with water when he smoked on the balcony.[11]

Siegling testified that he considered himself to be "off-duty" in the evening hours, after each day of training classes was completed, with the exception that he sometimes studied for examinations on course materials in his hotel room during the evening hours.[12]  Siegling possessed a government-issued credit card to pay for his

---

[8] *Id.* at 137; doc. no. 79 (Amended Statement of Agreed and Disputed Facts), at 4, Fact No. 24.

[9] Trial Transcript, at 148.

[10] *Id.* at 139-40, 143.

[11] *Id.* at 144.

[12] *Id.* at 147.

lodging, but he was not authorized to use that card to purchase cigarettes.[13]

## III. DISCUSSION

The government's Rule 52 motion is primarily based upon two arguments. First, the government asserts that the United States should not be held liable for any damages caused by Agent Siegling because he was not acting within the line and scope of his employment when he discarded cigarettes on the balcony of his hotel suite in the evenings after class. Second, the government argues that, even if it could be held liable for Siegling's negligent acts, those acts did not cause the fire.[14]

The causation evidence presented at trial was a classic "battle of the experts." The Huntsville Fire Department officer and plaintiff's expert witness who investigated the scene both opined that the fire was caused by smoking materials negligently discarded on the balcony of Suite 2207.[15] Defendant's expert witness, in contrast, presented evidence that the methodology employed by plaintiff's witnesses was unreliable, and the investigation conducted by each witness was incomplete.[16]

---

[13] *Id.*

[14] The United States divided this argument into three parts: *i.e.*, (1) plaintiff's expert evidence about the cause and origin of the fire is speculative and unreliable under Federal Rule of Evidence 702; (2) plaintiff failed to establish negligence under Alabama law; and (3) plaintiff's spoliation of evidence unfairly prejudiced the government. *See* doc. no. 89 (Defendant's Motions For Judgment At The Close Of Plaintiff's Evidence And At The Close Of All Of The Evidence), at 8-19. The essence of each argument is that there is not sufficient evidence of causation.

[15] *See* Trial Transcript, at 14-87 (Testimony of Daniel Wilkerson), 88-136 (Testimony of Roderick Williams).

[16] *See id.* at 149-234 (Testimony of David Icove).

According to defendant's expert, neither the Fire Department investigator nor plaintiff's expert witness possessed sufficient information to determine the cause of the fire, so they both should have characterized the cause as "undetermined."[17]  Even so, defendant's expert personally believed that the fire originated on the third-floor balcony *above* Suite 2207 and "dropped down" to the balcony outside Siegling's second-floor suite.[18]

Despite alarming deficiencies in the investigations conducted by both the Huntsville Fire Department Investigator and plaintiff's expert witness, this court is inclined to conclude that plaintiff established by a preponderance of the evidence that the fire, more likely than not, was caused by the negligent manner in which Agent Siegling discarded his cigarette butts.

It is not necessary to actually reach that conclusion, however.  Even if Agent Siegling *was* smoking on his balcony on the evening of September 22, 2010, and even if his negligent use of smoking materials *did* cause the fire, there is no basis in Alabama law for holding the United States liable for Agent Siegling's negligence.

The Federal Tort Claims Act waives the sovereign immunity of the United States for certain torts committed by federal employees who act within the line and scope of their employment.  *E.g.*, *Federal Deposit Insurance Corp. v. Meyer*, 510

---

[17] *Id.* at 195.
[18] *Id.* at 185, 188, 195.

U.S. 471, 475 (1994) (citing 28 U.S.C. § 1346(b)).  "The question of whether an employee's conduct was within the scope of his employment 'is governed by the law of the state where the incident occurred.'"  *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996) (quoting *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1541 (11th Cir. 1990)) (alteration supplied).  Here, the fire occurred in Alabama and, thus, the law of that State applies.

The Alabama Supreme Court has repeatedly held that:

> The rule which has been approved for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.

*Nelson v. Johnson*, 88 So. 2d 358, 361 (Ala. 1956) (citing *Railway Express Agency v. Burns*, 225 Ala. 557, 52 So. 2d 177 (1950), and *Rochester-Hall Drug Co. v. Bowden*, 218 Ala. 242, 118 So. 674 (1928)); *see also, e.g.*, *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990) (same); *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642 (Ala. 1970) (same).  "Such conduct, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment."  *Rochester-Hall Drug Co. v. Bowden*, 118 So. 674 (Ala. 1928); *see also Solmica*, 232 So. 2d at 642 (same).

Moreover, the fact that "an alleged wrong is committed by the employee during his regular working hours is not dispositive of the question [of] whether the employee was acting within the scope of his employment. . . . *Instead, the dispositive question is whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer*." *Hulbert v. State Farm Mutual Automobile Insurance Co.*, 723 So. 2d 22, 24 (Ala. 1998) (alteration and emphasis supplied, internal citations omitted).

As this court observed in the memorandum opinion and order denying defendant's motion for summary judgment, "[n]either Alabama courts nor federal courts applying Alabama law have directly addressed whether smoking cigarettes falls within an employee's scope of employment."[19]   Rather, the relevant caselaw seemed to be best summarized by the opinion in *Land v. Shaffer Trucking, Inc.*, 275 So. 2d 671 (Ala. 1973), stating that:

> In cases where the deviation [from the employer's business] is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business.  So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own.  Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.

*Id*. at 674-75 (quoting *Engel v. Davis*, 256 Ala. 661, 57 So. 2d 76 (1952)) (alteration

---

[19]  Doc. no. 70 (Memorandum Opinion and Order on Motion for Summary Judgment), at 5 (alteration supplied).

supplied, citations omitted). Thus, absent any case law specifically on point, this court found that the present case — the facts of which fall between the "extremes" sketched in *Land* — presented genuine issues of material fact that prevented the entry of summary judgment.

After weighing all the evidence presented at trial and reviewing the additional briefs submitted by the parties, the court concludes that Michael Siegling's act of smoking cigarettes on the balcony outside his second-floor hotel suite during the evening hours, after the conclusion of his daily training classes, was not within the line and scope of his employment as an FBI agent, even though the costs of the training course and his hotel accommodations were paid for by the FBI, and even though the training course gave Siegling skills that furthered his employment with the FBI. Moreover, despite the lack of any Alabama cases directly on point, courts in other jurisdictions have held, under similar circumstances, that smoking-related negligent acts were not performed within the line and scope of an employee's employment.

For example, the District of Minnesota confronted somewhat similar facts in *Mosby v. McGee*, No. CIV 07-3905 JRT/RLE, 2009 WL 2171104 (D. Minn. July 20, 2009). In that case, the pastor of a Connecticut church lodged in the private home of a friend while attending a religious conference held in Minnesota. The costs of that

conference were paid for by his church.  *Id.* at *1.  Like Agent Siegling, the pastor regularly smoked on the deck of the home in the evenings, at the end of each conference day.  While doing so one evening, the pastor accidentally kindled a fire by discarding the ashes of his pipe in a planter on the deck.  *Id.*  The homeowners sued the pastor and his church for negligence, seeking to recover damages they incurred as a result of the fire.  *Id.*  The district court, applying Minnesota law, held that *the church* could not be held vicariously liable for its pastor's negligence, because he "was smoking after the conference events were over for the day, at a time when he was not doing anything traceable to his work responsibilities, in a place that had no formal connection to his employment for [the church]."  *Id.* at *4 (alteration supplied).   The court expressed concern that a contrary finding would "hold employers responsible for any and all actions taken by traveling employees," and would constitute an "expansive view of vicarious liability" for which there was "no basis in the law."  *Id.*

In *Minamayor Corp. v. Paper Mill Suppliers, Inc.*, 297 F. Supp. 524 (E.D. Pa. 1969), a salesman employed by the defendant, a Michigan company, lodged in the room of a hotel owned by the plaintiff company while he was in Pennsylvania "for the purpose of soliciting orders and contacting customers or prospective customers for defendant."   *Id.* at 525.   The salesman's travel expenses were paid by his

employer.  The salesman "had no fixed working hours but was subject to call at any time" while traveling on his employer's business.   *Id.*  A fire in the salesman's hotel room caused substantial property damage and killed the salesman, whose body was discovered in the bathroom of the hotel room.  *Id.*  There was little evidence regarding the cause of the fire, but the court seemed to presume that the fire was related to cigarettes.  Operating under that assumption, and applying Pennsylvania law, the district court held that the employer could not be held vicariously liable because the salesman's "conduct in rising, shaving and apparently lighting a cigarette were neither acts within the scope of his employment or negligent conduct during the course thereof."  *Id.* at 526.  Like the District of Minnesota in *Mosby*, the Eastern District of Pennsylvania in *Minamayor* expressed concern over expanding the doctrine of vicarious liability so broadly that "employers are responsible for all acts of their salesmen while on the road without regard to whether such acts are related in any way to the employer's business."  *Id.*

In *Merritt v. United States*, 332 F.2d 397 (1st Cir. 1964), the plaintiff leased a dwelling "to the government for use as off-post family housing for military personnel and their dependents."  *Id.* at 398.  "A sergeant, quartered therein, after finishing his duties for the day, negligently set fire to the house by smoking in bed." *Id.*  The First Circuit applied Massachusetts law, and found "nothing in the Massachusetts cases

suggesting that an employee smoking in bed during his off hours is in the course of his employment," despite the fact that the federal government had paid the rent for the dwelling. *Id.* at 398-99. The court rejected the plaintiff's argument that "the fact that the government supplied [the sergeant] with a residence meant that anything he was doing in the residence was in the scope of his employment." *Id.* at 399 (alteration supplied). Other cases cited by the government's attorneys in their pre-trial brief that this court finds persuasive include *Meredith v. Ringling Brothers Barnum & Bailey Combined Shows*, 321 F.2d 107 (6th Cir. 1963) (holding that the circus employer could not be held vicariously liable for an employee who negligently kindled a fire by smoking in the plaintiff's barn, which he presumably had entered for the purpose of urinating); *HPT IHG Properties Trust v. Shaw Group, Inc.*, 744 S.E.2d 496 (N.C. Ct. App. 2013) (finding that an employer could not be held vicariously liable for damages caused by a fire that was started when an employee left a pan of grease unattended on a stove in his hotel room); *Dobson v. Don January Roofing Co.*, 392 S.W.2d 153 (Tex. Civ. App.), *writ refused*, 392 S.W.2d 790 (Tex. 1965) (finding that an employer could not be held vicariously liable for damages caused by an employee who, while replacing shingles on the roof of plaintiff's home, permitted hot cigarette ashes to fall upon the roof and kindle a fire); *Herr v. Simplex Paper Box Corp.*, 330 Pa. 129, 133-34, 198 A. 309, 311 (1938); *Kelly v. Louisiana Oil Refining Co.*, 167

Tenn. 101, 66 S.W.2d 997, 998 (1934).  *See also* Restatement (Second) of Agency §
235 (1958).

This court finds the rationale of the foregoing opinions to be persuasive.  As
in those cases, *even if* this court were to find, as plaintiff contends, that Agent
Siegling negligently discarded smoking materials on the balcony outside his second
floor hotel suite, *and*, that such negligence was the proximate cause of the loss
sustained by plaintiff's insureds, Agent Siegling's negligence, nevertheless, occurred
*after* the conclusion of his training classes for the day, and there is no indication that
he was performing any services for the government while smoking.  There simply is
no connection between Agent Siegling's smoking activities and his employment,
apart from the fact that he smoked on the balcony of a hotel suite paid for by his
employer.  Under the reasoning of the persuasive authorities previously discussed,
that is not enough to impose vicarious liability.  Moreover, this court shares the
concern expressed in some of the persuasive opinions cited above:  *that is*, allowing
plaintiff to recover from the United States under the circumstances of this case would
unreasonably broaden the doctrine of vicarious liability.  Expanding the doctrine in
such a manner would essentially result in an employer being held responsible for
*anything* its employee does while on travel, a result that cannot be the intent of
Alabama law.

The cases relied upon by plaintiff, while handed-down by Alabama courts, are distinguishable from the present case and have not persuaded this court to reach a different conclusion.  In *Singleton v. Burchfield*, 362 F. Supp. 2d 1291 (M.D. Ala. 2005), the defendant, an employee of the United States Air Force, traveled from his home in North Carolina to Alabama in a government-owned vehicle for a five-week training course.  *Id.* at 1293.  After training one evening, he drove the government-owned vehicle from his on-base lodging to an off-base restaurant to have dinner with fellow classmates.  *Id.* at 1294.  While *en route* to the restaurant, the defendant's vehicle collided with the plaintiff's, causing injuries to both parties.  *Id.*  The district court, applying Alabama law, held that the United States could be held vicariously liable for any damages awarded against the defendant, because he was acting within the line and scope of his employment at the time of the accident.  *Id.* at 1295-96.  The primary factor affecting that decision was the defendant's use of a government-owned vehicle, because, "[u]nder Alabama law, the '[u]se of a vehicle owned by an employer creates an "administrative presumption" that the employee was acting within the scope of his employment.'"  *Id.* at 1295 (quoting *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 48 (Ala. 1995)) (first alteration supplied, second alteration in original). The defendant was allowed to use that vehicle only for limited purposes, one of which was traveling to "reputable eating establishments in reasonable proximity to the

installation." *Singleton*, 362 F. Supp. 2d at 1293-94.  Because the defendant was "[o]perating his government vehicle within the constraints set out by his employer," his actions were "in furtherance of his military duty [and] were of benefit to his employer." *Id.* at 1295 (alterations supplied).

Similarly, in *Flohr v. Mackovjak*, 84 F.3d 386 (11th Cir. 1996), the defendant, a civilian employee of the United States Army and an Alabama resident, traveled to California for a week-long training course.  *Id.* at 388.  The Army paid for his travel expenses, including meals and a rental car, which the defendant was allowed to use without any restrictions.  *Id.*  The defendant used the rental car to drive himself and a passenger to a local restaurant for dinner at the conclusion of the training course one evening.  During the return drive to the hotel, the defendant caused an automobile accident, which resulted in injuries to his passenger, who brought suit.  *Id.*  The Eleventh Circuit, applying California law,[20] held that the Army could be held vicariously liable for the defendant's negligence in causing the accident.  *Id.* at 392. The Court reasoned:

> The men were in California at the instruction of the United States Army to attend a conference related to their work.  The Army paid for all of their expenses while they were away, including their meals and the cost of renting an automobile.  The men appear to have received no instructions to drive or not to drive to any particular location for their

---

[20] Even though the *Flohr* court applied California law, and not Alabama law, the district court noted in *Singleton* that "the [*Flohr*] court's analysis of the policies behind the decision are equally applicable in this case." *Singleton*, 362 F. Supp. 2d at 1295 (alteration supplied).

meals. *It is reasonable to assume that the Army expected the men to use the automobile it provided to drive not only to and from the conference but also to a place where they could purchase meals, which were also paid for by the Army*. The men's conduct was not "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." [*Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1344 (Cal. 1991)]. Rather, the activity "may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the Army. *Id.* The enterprise in this case was the sending of Army personnel to California for several days to attend meetings related to the Army's business.

*Flohr*, 84 F.3d at 391-92 (emphasis and alterations supplied).

Driving a government-provided car to purchase dinner while on work-related travel does not carry the same significance as smoking or discarding cigarettes during a time of day that has absolutely no connection with the employee's duties. There is no "administrative presumption" of employment-relatedness associated with cigarette smoking, as there is with driving a vehicle owned or rented by the government. Moreover, it is much more reasonable for an employer to expect its employee who is on work-related travel to drive to a restaurant to purchase a meal than it is to expect the same employee to smoke cigarettes. Meals are a necessity; cigarettes are not. Finally, and importantly, the United States did not pay for Agent Siegling's cigarettes. In contrast, the government employers paid for the cars and meals in the *Singleton* and *Flohr* cases. Agent Siegling was in fact prohibited from using his government-issued credit card to purchase items like cigarettes.

For all of the foregoing reasons, this court concludes that the Alabama Supreme Court would follow the reasoning of cases from those jurisdictions discussed above, and hold that Agent Siegling was not acting within the line and scope of his employment with the FBI when he smoked and discarded a cigarette on the balcony of his hotel room in the evening after his training course was completed for the day. As such, the United States cannot be held vicariously liable for Agent Siegling's negligence, and plaintiff's Federal Tort Claims Act must be dismissed.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, the government's Rule 52 motion is GRANTED. Judgment is entered in favor of defendant, the United States of America, on all claims asserted by plaintiff. Costs are taxed to plaintiff, and the Clerk is directed to close this file.

**DONE** and **ORDERED** this 25th day of January, 2016.

United States District Judge